**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | |
|---|---|
| **JANE DOE,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:23-cv-00018-RSB** |
| **THE UNIVERSITY OF VIRGINIA, et al.,** | |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**COMPLAINT PURSUANT TO RULE 12(b)(6)**

Defendants, the Rector and Visitors of the University of Virginia ("UVA" or "University")[1], Emily Babb, and Akia Haynes, through counsel, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint filed by Plaintiff, Jane Doe ("Plaintiff").

**I.      INTRODUCTION**

This case is about UVA's response to Plaintiff's report of sexual abuse by a professor. After Plaintiff reported her year-long sexual relationship with the professor in March of 2020, UVA launched a Title IX investigation that resulted in the professor being prohibited from contacting Plaintiff and an extensive report finding that the professor had sexually abused Plaintiff. After reviewing the report and conducting a hearing, a review panel recommended that the

---

[1] Plaintiff also named "the University of Virginia" and the "UVA Board of Visitors" as defendants, neither of which have been served nor are they proper legal entities subject to suit. The Rector and Visitors of the University of Virginia is the legal entity commonly known as the University of Virginia. Va. Code § 23.1-2200.

professor be terminated. When the professor resigned before he could be terminated, UVA made sure he could never be rehired.

Plaintiff disagrees with how UVA handled the Title IX proceedings and now brings a meritless lawsuit, claiming that the process that prevented the professor from contacting her and ended in him being ineligible to ever work at UVA again discriminated against her on the basis of sex. Not so.

The Complaint alleges violations of Title IX, the Due Process and Equal Protection clauses, and the First Amendment's free speech clause. None of these claims can survive a motion to dismiss. Not only are many of Plaintiff's claims barred by the applicable two-year statute of limitations but Plaintiff's difference of opinion as to the appropriate speed of the Title IX proceedings and proper disciplinary outcome for the professor are insufficient to state a plausible claim under any legal theory. The Complaint should be dismissed in its entirety.

## II.  FACTUAL ALLEGATIONS

This lawsuit arises out of a Title IX investigation that began in March 2020 following a report by Plaintiff, then an undergraduate student at UVA, of sexual misconduct by John Roe ("Roe"), then a professor at UVA, beginning in December 2018. Compl. ¶¶ 181, 197, 202-204.

In the fall of 2018, Plaintiff transferred to UVA to complete her undergraduate studies. *Id.* ¶ 30. Plaintiff graduated from UVA with an undergraduate degree on May 16, 2020. [2] *Id.* ¶ 35.

---

[2] Although not alleged in the complaint, UVA's Spring 2020 graduation date is a matter of public record. Class of 2020 Celebration, https://news.virginia.edu/content/class-2020-celebration (last visited on June 29, 2023). In considering a Rule 12(b)(6) motion, a district court may take notice of matters of public record, such as a public university's academic calendar, graduation ceremony date, and announced responses to the COVID-19 pandemic. *See Wells v. Martin*, No. 7:17-cv-00327, 2018 U.S. Dist. LEXIS 162564, at *5 (W.D. Va. Sept. 24, 2018).

During her time at UVA, Plaintiff was an exemplary student who consistently attended her classes and engaged in class discussions. *Id.* ¶ 34. Plaintiff graduated with a grade point average of 3.98 on a 4.00 scale. *Id.* ¶ 35.

On or around February 17, 2020, Plaintiff informed Professor Asher Biemann ("Biemann") that she had been in a sexual relationship with Roe, Biemann's co-instructor for a two-week "J-Term" course between the fall and spring semesters. *Id.* ¶¶ 45, 54, 181. Plaintiff told Biemann this relationship began in December 2018 and continued during the J-Term course in January 2019. *Id.* Plaintiff and Roe's relationship then continued through February of 2020. *Id.* ¶¶ 173, 175. During this initial conversation with Biemann, Plaintiff did not describe any aspect of her relationship with Roe as not consensual. *Id.* ¶¶ 182, 220. Biemann reported what Plaintiff had told him to the chair of Roe's department, which resulted in Roe's relationship with Plaintiff being reported to the Associate Dean of Students, Laurie Casteen ("Casteen"). *Id.* ¶¶ 185, 188, 190-192.

On February 24, 2020, a week after Plaintiff first spoke with Biemann, Casteen asked Plaintiff to meet with her and Plaintiff agreed. *Id.* ¶¶ 195-197. When they met, Plaintiff told Casteen about some aspects of her relationship with Roe, which Casteen understood Plaintiff to be reporting as a consensual relationship. *Id.* ¶¶ 197-198, 220.

On or around March 11, 2020, Plaintiff informed Casteen that she wanted Roe to be held accountable for his sexual misconduct. *Id.* ¶ 202. Casteen then reported Roe's alleged sexual misconduct to UVA's Title IX office. *Id.* ¶ 203.

UVA was on spring recess from March 7 through March 18, 2020.[3] On March 11, 2020, UVA moved all classes online in response to the COVID-19 pandemic.[4]

On March 31, 2020, UVA notified Plaintiff that it had commenced a formal Title IX investigation regarding Roe's actions towards her. Compl. ¶ 204. On May 29, 2020, the Title IX office notified Plaintiff that it expected to produce a report of its investigation on July 31, 2020, and that it was extending its goal of resolving typical complaints within 60-days of giving notice of the investigation. *Id.* ¶¶ 207, 209; Ex. A at p. 34.[5] The typical timeframe for resolving complaints may be extended for a variety of reasons, including to account for the complexity of a case, the volume of evidence provided by the parties, and to ensure the completeness of the investigation. Ex. A at p. 34.

On June 25, 2020, Defendant Emily Babb ("Babb"), UVA's Title IX Coordinator, issued a mutual no-contact directive prohibiting Plaintiff and Roe from communicating with each other ("No-contact Directive"). Compl. ¶¶ 13, 210.

Despite Plaintiff having graduated from UVA in May 2020 and in person classes having been suspended since March 2020 due to COVID-19, Plaintiff claims that this No-contact

---

[3] 2019-2020 UVA Academic Calendar, https://registrar.virginia.edu/calendar/academic/2019-2020 (last visited June 29, 2023).

[4] Latest Updates on UVA's Response to the Coronavirus, https://news.virginia.edu/content/latest-updates-uvas-response-coronavirus#march-11 (archived communications) (last visited June 29, 2023).

[5] A court may consider a document attached to a motion to dismiss when the document is "integral to and explicitly relied on in the complaint" and when there is no challenge to its authenticity. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-607 (4th Cir. 2015); *see Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396-97 (4th Cir. 2006) ( "[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed."). Here, Plaintiff explicitly relies on UVA's relevant Title IX Policy and procedures to support her claim that the defendants violated Title IX and her due process and equal protection rights. Compl. ¶¶ 207, 249, 263-64, 274. Accordingly, this Court may consider this policy and procedures for reports against UVA employees that are attached as Exhibit A.

Directive, issued on June 25, 2020, caused her to disengage from her classes and to avoid certain areas on campus. *Id.* ¶¶ 35, 210.

On July 31, 2020, the Title IX office informed Plaintiff that the investigation would take additional time due to the amount of evidence she and Roe had submitted. *Id.* ¶ 214. On August 26, 2020, UVA issued its preliminary investigative report. *Id.* ¶ 216. Both Plaintiff and Roe had the right to respond to this preliminary report. Ex. A at p. 36.

In December 2020, Babb left her employment with UVA and Defendant Akia Hayes ("Haynes"), who had been UVA's Deputy Title IX Coordinator, became the Acting Title IX Coordinator. Compl. ¶¶ 12-15.

On April 30, 2021, UVA published a 319-page final investigation report ("Final Report") in which the investigators found that Roe had violated UVA's Title IX policy by harassing and assaulting Plaintiff on multiple occasions. *Id.* ¶¶ 219, 221. Again, both Plaintiff and Roe had the right to respond to the Final Report, and Roe challenged the report's findings. *Id.* ¶ 222; Ex. A at pp. 37-38.

Pursuant to its Title IX Policy when a party contests the findings of the Final Report, UVA convened a Review Panel with three faculty and staff members, and a non-voting chair, and held a hearing on July 1, 2021. *Id.* ¶¶ 222; Ex. A at pp. 37-38. After deliberating, the Review Panel issued a decision on July 7, 2021, that affirmed the findings of the investigators in the Final Report and recommended that Roe be terminated from his position at UVA. Compl. ¶¶ 224-225. Two days later, Roe resigned from UVA. *Id.* ¶ 226.

On August 6, 2021, UVA issued its Final Outcome Letter and announced that Roe could not be hired for any future position at UVA and would be ineligible for professor emeritus status. *Id.* ¶ 227-228. On that same day, Haynes notified Plaintiff that UVA would reimburse her for out-

of-pocket expenses up to $5,000 incurred between March 31, 2020 and December 31, 2021 for counseling and holistic healing services. *Id.* ¶ 229.

After her graduation from UVA in the spring of 2020, Plaintiff moved back to her father's home. *Id.* ¶ 244. Plaintiff's post-graduation employment has been limited to an unpaid internship and a short-term paid consulting position. *Id.* ¶¶ 237-238, 240. Plaintiff attributes her limited post-graduation employment to mental health struggles related to her relationship with Roe and the time-requirements of participating in the Title IX investigation. *Id.* ¶ 234, 237-238.

Plaintiff brings a four-count Complaint alleging: a Title IX, "Deliberate Indifference to Sex Discrimination Pre-assault," claim against UVA (*Id.* ¶¶ 245-258); § 1983 claims for due process and equal protection violations against Defendants Babb and Haynes in their individual capacities (*Id.* ¶¶ 259-284); and a § 1983 claim for First Amendment free speech violations against Babb in her individual capacity (*Id.* ¶¶ 285-296). For each of these claims, Plaintiff alleges she sustained the following injuries: "economic loss, loss of earnings and earnings capacity; mental and emotional distress in the form of anxiety, mental anguish, humiliation, and embarrassment; damage to her good name; and loss of the ordinary pleasures of everyday life." *Id.* ¶¶ 258, 268, 284, 296. Plaintiff seeks compensatory damages, exemplary and punitive damages, costs, and attorney fees. Compl. 34.

## III.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint." *Allen v. Coll. of William & Mary,* 245 F. Supp. 2d 777, 783 (E.D. Va. 2003). In considering the complaint in the light most favorable to the non-moving party, a court must grant

a motion to dismiss if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

While detailed factual allegations are unnecessary, a plaintiff is obligated to provide the "grounds" of her "entitlement to relief," and this requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action in the form of allegations that raise a right to relief above the speculative level. *Id.* at 555. The plaintiff must show that there is more than a mere possibility that a defendant acted unlawfully. *Id.* at 556.

In *Ashcroft v. Iqbal*, the Supreme Court of the United States explained: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009). Not only are legal conclusions not to be accepted as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). Additionally, the task is "context-specific," meaning the Court is allowed to impose on the analysis its "judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--that the pleader is entitled to relief." *Id.*

## IV.     ARGUMENT

### A.     Plaintiff's Claims Are Barred By The Statute Of Limitations And Should Be Dismissed Pursuant To Rule 12(b)(6).[6]

All of Plaintiff's claims are governed by a two-year statute of limitations.[7] As set out below, certain claims in the Complaint, which was filed on April 29, 2023, are barred by this statute of limitations.

#### 1.     Plaintiff's Title IX claim (Count I) alleging pre-assault deliberate indifference is barred because it accrued no later than February 2020.

Plaintiff's Title IX cause of action is governed by a two-year statute of limitations. *Peabody v. Rector & Visitors of the Univ. of Va.*, No. No. 3:21-cv-44, 2022 U.S. Dist. LEXIS 77263, at *10 (W.D. Va. Apr. 27, 2022). The accrual date for such claims is "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id.* (quoting *Nasim v. Warden, Md. House of Corr.*, 64 F. 3d 951, 955 (4th Cir. 1995) (citing *United States v. Kubrick*, 444 U.S. 111, 122-124 (1979)).

Plaintiff styles her Title IX claim as "Deliberate Indifference to Sex Discrimination Pre-Assault." Compl. 26. This Court has held that pre-harassment claims that allege that a university maintained a policy of deliberate indifference that created the risk of sexual harassment accrue on that date of the harassment. *Peabody*, 2022 U.S. Dist. LEXIS 77263, at *12-13. Here, all acts of

---

[6] "The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) (citations omitted). Here, the time bar is apparent on the face of Plaintiff's Complaint.

[7] Our Federal Courts use Virginia's two-year statute of limitations for personal injury claims for Title IX and § 1983 claims. *See Doe v. Old Dominion Univ.*, No. 2:17-cv-15, 2017 U.S. Dist. LEXIS 228131, at *16 (E.D. Va. June 26, 2017) (Title IX); *Lewis v. Richmond City Police Dep't.*, 947 F.2d 733, 735 (4th Cir. 1991) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)) (§ 1983).

sexual harassment or sexual assault by Roe against Plaintiff occurred from December 2018 through February 2020. Compl. ¶¶ 173, 175, 248. Accordingly, all of Plaintiff's pre-harassment or pre-assault Title IX claims against UVA accrued in February 2020 at the latest because Plaintiff possessed sufficient facts about the harm done to her at that time.

To be timely, Plaintiff was required to file her Complaint alleging pre-incident deliberate indifference by February 2022. She failed to do so, and thus Plaintiff's Title IX claim alleging Deliberate Indifference to Sex Discrimination Pre-Assault is barred.

> **2.    Plaintiff's Due Process and Equal Protection claims (Counts II and III) against Babb are barred by the statute of limitations because they accrued no later than December 2020.**

Plaintiff asserts that Babb is liable for denying her due process and equal protection rights due to her actions as UVA's Title IX Coordinator. Compl. ¶¶ 259-284. Babb's role as UVA's Title IX Coordinator ended in December 2020, which is when Haynes became the Acting Title IX Coordinator. *Id.* ¶¶ 12-15. Accordingly, Babb's last action regarding the investigation into Plaintiff's Title IX report occurred no later than December 2020. *Id.* As of that date, Plaintiff would have known about the alleged harm that Babb had done her, such as issuing the "mutual no-contact directive" on June 25, 2020, or not concluding the investigation by December 2020. *Id.* ¶¶ 210, 264-265, 274.

To be timely, Plaintiff was required to file her Complaint alleging violations of her due process and equal protection rights by Babb by no later than December 31, 2022. She failed to do so, and thus Plaintiff's Count II and III are barred as to Babb.

> **3.** **Plaintiff's Due Process claim (Counts II) alleging a deprivation of her bodily integrity is barred by the statute of limitations because it accrued no later than February 2020.**

In Count II, Plaintiff asserts a substantive due process claim against Defendants Babb and Haynes, asserting that she had a liberty interest in "bodily integrity" that they violated. Compl. ¶¶ 263, 265. While courts have recognized a liberty interest in bodily integrity, they have done so only in a limited context. *Hood v. Suffolk City Sch. Bd.*, 760 F. Supp. 2d 599, 601 (E.D. Va. 2010) (collecting cases), *aff'd*, 469 Fed. Appx. 154 (4th Cir. 2012). Acts of sexual assault by a government official can give rise to claims for violations of substantive due process. *Id.* As Plaintiff does not allege that Babb and Haynes sexually assaulted her, or any other facts that show that they violated her bodily integrity, Plaintiff must be relying on Roes' acts of sexual abuse as the deprivations of her bodily integrity. To the extent that Plaintiff could state a claim against Babb and Haynes for deprivations of her bodily integrity based on the actions of Roe, such claims would have accrued no later that February 2020 when Plaintiff ended her relationship with Roe. Compl. ¶¶ 173, 175, 248.

To be timely, Plaintiff was required to file her Complaint alleging violations of her substantive due process right to bodily integrity by no later than February 2022. She failed to do so, and thus the claim in Count II that Plaintiff's substantive due process right to bodily integrity was violated is barred.

> **4.** **Plaintiff's First Amendment claim (Count IV) is barred by the statute of limitations because it accrued when the No-contact Directive was issued on June 25, 2020.**

In Count IV, Plaintiff alleges that Babb violated her First Amendment right to free speech and expression when she issued the No-contact Directive on June 25, 2020. *Id.* ¶¶ 210, 286.

Plaintiff claims that this directive limited her speech, caused her to avoid areas at UVA, and negatively affected her engagement in classes and campus activities. *Id.* ¶ 291.

Plaintiff acknowledges that she was issued the No-contact Directive on June 25, 2020, and that it affected her behavior. *Id.* ¶¶ 210, 213, 286, 291. Accordingly, Plaintiff's First Amendment claim accrued on June 25, 2020, because at that point she knew enough about the harm done to her to bring a lawsuit. *Nasim*, 64 F.3d at 955.

To be timely, Plaintiff was required to file an action alleging a violation of her First Amendment rights based on the issuance of the No-contact Directive by no later than June 25, 2022. She failed to do so, and thus Plaintiff's Count IV is barred.

**B.    Count I Fails to Allege a Claim Under Title IX And Should Be Dismissed Pursuant To Rule 12(b)(6).**

**1.    UVA did not act with deliberate indifference because it investigated the report of Roe's misconduct and took steps to terminate Roe's employment and make sure he could never work at UVA again.**

Title IX prohibits discrimination on the basis of sex in federally funded educational programs. To allege a Title IX violation for sex-based harassment under a deliberate indifference theory, a plaintiff must show (1) that the educational institution receives federal funds, (2) the plaintiff was subjected to harassment based on sex, (3) the harassment was sufficiently severe and pervasive to create a hostile environment in an educational program or activity, and (4) there is a basis to impute liability to the institution.[8] *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). Here, the Complaint fails to sufficiently allege deliberate indifference by UVA to Roe's sexual harassment and assault of Plaintiff such that there is a basis to impute liability to UVA.

---

[8] *See Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007); *see also Doe v. Bd. of Visitors of Va. Military Inst.*, 494 F. Supp. 3d 363, 376 (W.D. Va. 2020) ("[C]ourts analyzing Title IX claims under the deliberate indifference theory use the same framework set out by the Supreme Court in *Davis*[.]")

To state a claim under Title IX for teacher-on-student sexual harassment, a plaintiff must show that the institution "has actual knowledge of discrimination in the [institution's] programs and fails adequately to respond or displays deliberate indifference to discrimination." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 700 (4th Cir. 2007) (citing *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998)) (cleaned up).

An institution is deliberately indifferent "only where [its] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. Even a response to harassment that is so inadequate to be mere negligence is insufficient to constitute "deliberate indifference." *Gebser*, 524 U.S. at 290. Instead, the institution must make an official decision "not to remedy the violation." *Id.* Further, at a minimum, deliberate indifference "must cause [students] to undergo harassment or make them liable or vulnerable to it." *Davis*, 526 U.S. at 645 (cleaned up).

For instance, in *Facchetti v. Bridgewater College*, the court granted the college's motion to dismiss for failure to allege deliberate indifference when the plaintiff alleged that the college quickly interviewed the accused student, held a hearing, and took disciplinary action against the accused, and that the college was not on notice of any prior incidents between the individuals or involving the accused student. 175 F. Supp. 3d 627, 637 (W.D. Va. 2016). In contrast, in *Jennings* v. *University of North Carolina,* the Fourth Circuit held deliberate indifference was a jury issue when the university's response to a student-athlete's complaint of extensive and pervasive sexual harassment by her soccer coach was to tell her that the coach was a "great guy" and that she should "work out her problems directly with him." 482 F. 3d at 701.

Here, Plaintiff alleges that UVA showed deliberate indifference in its response to her report of sexual abuse and harassment by Roe because from March 2020 to August 2021 it failed to:

timely investigate and respond to the harassment; take preliminary measures to protect Plaintiff from Roe; and take "prompt and appropriate action against Roe" when the investigation was completed. Compl. ¶¶ 248-249. Under the facts alleged, UVA's response does not amount to deliberate indifference.

First, Plaintiff contends that the length of time it took to completely resolve her Title IX complaint shows deliberate indifference and, for support, points to UVA's goal of resolving typical investigations in 60 days. Compl. ¶¶ 207, 249; Ex. A. at p. 34. Of note, UVA's timeframe for resolving an investigation specifically provided for extensions for a variety of factors. Ex. A. at p. 34. The failure to meet the aspirational goals of sexual harassment grievance procedures, however, does not prove deliberate indifference under Title IX. *Doe v. Bd. of Educ.*, 605 Fed Appx. 159, 168 (4th Cir. 2015) (explaining procedural shortcomings, including the failure to follow sexual harassment grievance procedures, does not prove deliberate indifference under Title IX). Rather, the question is whether the "substantive steps" of the institution, not its "procedural shortcomings," in response to a complaint show that it was not deliberately indifferent. *Id.*

Here, UVA notified Plaintiff that it had launched a formal investigation on March 31, 2020, the same month she informed Casteen that she wanted Roe to be held accountable. Compl. ¶¶ 202, 204. UVA informed Plaintiff when it needed to extend its deadline to produce a preliminary investigative report, in part due to the volume of evidence submitted by Plaintiff and Roe and in part due to the length of Plaintiff and Roe's relationship. *Id.* ¶¶ 209, 214. This resulted in a 319-page final report, the length of which indicates the complexity of the case, that found credible evidence that Roe had sexually harassed and assaulted Plaintiff. *Id.* ¶¶ 221, 224. Following a hearing, the review panel affirmed the findings of the final report and recommended that Roe be terminated. *Id.* ¶¶ 224-225. When Roe immediately resigned, UVA acted to make sure he was not

13

eligible to be rehired. *Id.* ¶ 227. In sum, UVA's response to Plaintiff's complaint of sexual misconduct by a professor resulted in a report that validated her concerns and the professor no longer working at UVA.

"Whether [the university] could have designed a more victim-friendly system, whether it could have taken steps to protect [the complainant] better, or even whether [the university] followed its own policy to the letter, are not dispositive." *Butters v. James Madison Univ., 208 F. Supp. 3d 745,* 763 (W.D. Va. 2016) (citing *Kelly v. Yale Univ.*, No. 3:01-cv-1591, 2003 WL 1563424, at *5 (D. Conn. Mar. 26, 2003) (recognizing that schools must consider the rights of the accused when determining an alleged victim's entitlement to protection)). The fact that UVA took over a year to fully resolve a Title IX investigation that involved numerous incidents of sexual misconduct that occurred over an approximately fourteen-month period, concluding in a professor being barred from ever working at the University again, is not clearly unreasonable and does not constitute deliberate indifference .

Second, Plaintiff's claim that UVA showed deliberate indifference by not taking preliminary measures to protect her from Roe is contrary to her own allegations and the unique factual circumstances of her case. Compl. ¶ 249. Plaintiff ended her relationship with Roe in February 2020. *Id.* ¶ 173, 175, 248. Almost immediately after Plaintiff informed UVA that she wanted Roe to be held accountable, the University suspended in person classes due to COVID-19. *Id.* ¶ 202. Two months later, Plaintiff graduated and was no longer a UVA student. *Id.* ¶ 35. After graduation, Plaintiff moved back in with her father. *Id.* ¶ 244. Then, as the investigation progressed, UVA directed Roe and Plaintiff to have no contact with each other, which further protected Plaintiff even though she was no longer a student. *Id.* ¶ 210. Considering that neither Plaintiff nor Roe was at UVA for classes due to COVID-19 for the final two months she was a

student, UVA was not deliberately indifferent when it waited until June 25, 2020 to order Roe to have no contact with her.

After the investigation was completely resolved, UVA offered Plaintiff a remedial measure in the form of reimbursement for out-of-pocket expenses up to $5,000 incurred during the investigation and for the following four months for counseling and holistic healing services. *Id.* ¶ 229. While this may not have been Plaintiff's preferred remedy (*Id.* ¶ 230-31), it was not a clearly unreasonable response by UVA.

Finally, Plaintiff alleges that UVA exhibited deliberate indifference because she does not approve of the disciplinary action UVA took against Roe. *See* Compl. ¶¶ 226-227, 249. Under Title IX, however, a complainant's opinion that a sanction imposed was insufficient is not a basis for finding deliberate indifference. *See Facchetti*, 175 F. Supp. 3d at 637-638. In *Davis*, the Supreme Court expressly directed federal courts to "refrain from second guessing the disciplinary decisions made by school administrators." 526 U.S. at 648 (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 342-43, n.9 (1985)); *see also Tigrett v. Rector & Visitors of the Univ. of Va.*, 290 F.3d 620, 629-30 (4th Cir. 2002) ("In the absence of a constitutional or statutory deprivation, the federal courts should be loathe to interfere with the organization and operation of an institution of higher education." (citations omitted). Absent this reluctance, federal courts would not only supplant university administrators in the functioning of the university, but also effectively become appellate courts for all manner of claims brought by individuals who are dissatisfied with the outcome of a university's internal processes.

Although she may disagree with their adequacy, Plaintiff concedes that UVA investigated Roe's misconduct following her complaint, prohibited Roe from contacting her during the investigation, found him responsible for acts of misconduct, recommended his termination, and

15

banned Roe from any future employment with UVA when he resigned before he could be fired. *Id.* ¶¶ 204, 210, 221, 224-225, 227. Given UVA's response to investigate and adjudicate the reported misconduct by Roe and to put in place a directive that prohibited Roe from contacting Plaintiff, it cannot be said that UVA's response was clearly unreasonable. In fact, terminating Roe's employment was the most severe sanction available through the Title IX process. Ex. A at pp. 41-42. Further, UVA's response did not cause Plaintiff to undergo further sexual harassment or assault by Roe or make her more vulnerable to it. UVA's response was reasonable under the circumstances, which included UVA's suspension of in person classes and Plaintiff's graduation shortly after making the complaint against Roe. Plaintiff's dissatisfaction with UVA's adjudication and punishment of Roe is not a basis for finding deliberate indifference.

As shown above, UVA did not choose to not remedy Roe's sexual misconduct towards Plaintiff and its response was not clearly unreasonable, which are required for liability in a deliberate indifference claim. *Davis*, 526 U.S. at 648; *Gebser*, 524 U.S. at 290. For these reasons, Plaintiff fails to state a claim for teacher-on-student sexual harassment under Title IX and this Court should dismiss Count I of the Complaint with prejudice.

> **2.     Plaintiff fails to state a claim that UVA was deliberately indifferent before Roe assaulted her because it only learned of the abuse after it had occurred.**

To the extent that Plaintiff is attempting to assert a claim that UVA was deliberately indifferent to sexual discrimination before Roe sexually harassed and assaulted her, such a claim fails. *See* Compl. 26 (styling Count I as "Deliberate Indifference to Sex Discrimination Pre-Assault"). Plaintiff makes the conclusory allegation that UVA did not prevent the sex discrimination but never provides any necessary factual support. *Id.* ¶ 247.

16

School officials must have actual knowledge of the discriminatory conduct in question against the plaintiff to impose liability. *See Gebser, 524 U.S. at 285; Baynard v. Malone*, 268 F.3d. 228, 237-38 (4th Cir. 2001). Here, Roe's sex-based abuse of Plaintiff occurred from December 2018 through February 2020. *Id.* ¶¶ 173, 175, 248. February 2020 was the first time Plaintiff shared certain aspects of her relationship with Roe with UVA employees, but not that parts of their relationship were nonconsensual. *Id.* ¶¶ 182-182, 197-198, 220. The Complaint does not allege that Roe committed further acts of sexual misconduct after she ended the relationship, reported it to Biemann and Casteen, and the Title IX investigation began. Accordingly, Plaintiff has failed to state any claim that UVA was deliberately indifferent to sexual discrimination before Roe sexually abused Plaintiff.

### 3.       Emotional distress and punitive damages are not available under Title IX and Plaintiff's request for this relief in Count I should be dismissed.

Emotional distress damages are not recoverable for claims brought under antidiscrimination statutes in Spending Clause statutes, such as Title IX. *See Cummings v. Premier Rehab Keller*, P.L.L.C., 142 S. Ct. 1562, 1569-76 (2022); *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-00614, 2023 U.S. Dist. LEXIS 13886, at *8-10 (E.D. Va. Jan 25, 2023). In *Cummings*, the Supreme Court held that the scope of remedies available for private right of action claims under Spending Clause antidiscrimination statutes is analyzed under contract law, and emotional distress damages are generally not available for breach of contract claims. 142 S. Ct. at 1571-72, 1576; *see Barnes v. Gorman*, 536 U.S. 181, 187 (2002). Thus, under antidiscrimination statutes, plaintiffs may only seek statutory damages and damages "traditionally available in suits for breach of contract." *Id.* at 1571 (quoting *Barnes*, 536 U.S. at 187). Indeed, an Eastern District of Virginia Court recently held that emotional distress damages are precluded for alleged Title IX violations pursuant to *Cummings* and its progeny. *Fairfax Cnty. Sch. Bd.*, 2023 U.S. Dist. LEXIS 13886, at

*9-10.

Here, Plaintiff requests compensatory damages for the following injuries: "economic loss, loss of earnings and earnings capacity; mental and emotional distress in the form of anxiety, mental anguish, humiliation, and embarrassment; damage to her good name; and loss of the ordinary pleasures of everyday life." Compl. 34, ¶ 258. She also seeks "exemplary and punitive damages." *Id.* at 34. Since *Cummings*, damages such as "mental and emotional distress in the form of anxiety, mental anguish, humiliation, and embarrassment" and "loss of the ordinary pleasures of everyday life" are not available in Title IX cases and the request for such relief should be dismissed.

Similarly, Plaintiff cannot recover for "damage to her good name," as this type of damages are not available in breach of contract actions. *Smith v. McLaughlin*, 289 Va. 241, 265-66 (2015) (citing *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 156 (2009)); *Isle of Wight Cnty. v. Nogiec*, 281 Va. 140, 148-49 (2011); *Rice v. Cmty. Health Ass'n*, 203 F.3d 283, 288 (4th Cir. 2000). Even if such relief were available under Title IX, which it is not, Plaintiff does not allege any facts that would show that UVA's actions during the Title IX proceedings, in which her complaint against Roe was validated, damaged her reputation in any way.

Finally, punitive damages are not available in private actions brought under Title IX, and as such, Plaintiff's request for exemplary and punitive damages are barred for Count I. *Mercer v. Duke Univ.*, 50 Fed. Appx. 643, 644 (4th Cir. 2002).

When a plaintiff seeks emotional distress or other precluded damages in claims brought under Spending Clause statutes cases post-*Cummings*, district courts have granted motions to dismiss pursuant to Rule 12(b)(6) as to the disallowed type of damages. *Williams v. Colo. Dep't of Corr.*, No. 21-cv-02595, 2023 U.S. Dist. LEXIS 89153, at *15 (D. Colo. May 22, 2023) (dismissing plaintiff's request for emotional distress damages in a Title II of the ADA claim under

Rule 12(b)(6)); *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, No. 3:20-CV-11, 2023 U.S. Dist. LEXIS 10565, at *10 (S.D. Ill. Jan. 20, 2023) (dismissing plaintiff's request for emotional distress damages in Rehab Act and ADA claims under Rule 12(b)(6)); *Mojsoski v. Ind. Wesleyan Univ.*, No. 1:22-cv-00019, 2022 U.S. Dist. LEXIS 215419, at *36-38 (N.D. Ind. Nov. 30, 2022) (granting motion to dismiss under Rule 12(b)(6) in part because plaintiff's request for emotional damages and punitive damages were not available under Title VI).

This Court should follow suit and dismiss Plaintiff's request for emotional damages and exemplary and punitive damages under Title IX.

C.     **Count II Fails to State a Due Process Claim and Should be Dismissed Pursuant to Rule 12(b)(6).**

The Complaint also fails to state a due process claim. To allege a procedural due process claim, a plaintiff must show (1) that she had a property or liberty interest, (2) of which a state actor deprived her, (3) without due process of law. *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1998); *Charlottesville Div. v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 673, 698 (W.D. Va. 2015).

To establish a substantive due process claim, a plaintiff must show that (1) she had a property or liberty interest, (2) the state deprived her of this property or liberty interest, and (3) "the state's action fell so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *MLC Auto., LLC v. Town of So. Pines*, 532 F.3d 269, 281 (4th Cir. 2008). Only "the most egregious official conduct" that "shocks the conscious" is sufficient for a substantive due process violation. *Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311, 323 (4th Cir. 2009).

The Complaint, however, fails to establish that Plaintiff had a recognized property or liberty interest, that she was deprived of any constitutionally protected interest without due process of law, or that there was the necessary shocking official conduct.

      **1.**      **The Complaint fails to allege a deprivation of a protected property interest.**

Without elaboration, Plaintiff claims she has a property interest in "her education." Compl. ¶ 263. "A protected property interest cannot be created by the Fourteenth Amendment, but rather must be created or defined by an independent source." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 239 (4th Cir. 2021) (quoting *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 109 (4th Cir. 2011)). To have a property interest, a plaintiff must have "more than a mere 'unilateral expectation of it' or 'abstract need or desire for it.'" *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Instead, a plaintiff must have a legitimate claim of entitlement to it. *Roth*, 408 U.S. at 577.

Plaintiff's generic assertion to a property interest in her education is unavailing because Virginia has not recognized any right to a university education that could create a property right. *Doe v. Univ. of Va.*, No. 3:22-cv-00064, 2023 U.S. Dist. LEXIS 63108, at *18 (W.D. Va. Apr. 10, 2023); *Doe v. Va. Polytechnic Inst. & State Univ.*, 617 F. Supp. 3d 412, 425 (W.D. Va. 2022). Accordingly, Plaintiff has failed to establish that she has any property interest.

Even if Plaintiff had a recognized property interest in her education, which she does not, she has failed to state a claim that Defendants Babb and Hayes deprived her of it. It is unclear what aspect of her alleged property interest in "her education" that Defendants Babb and Hayes deprived her of, and the conclusory and threadbare allegations that they did are insufficient to state a claim. *Twombly*, 550 U.S. at 555. That she was deprived of any right to her education is particularly implausible because Plaintiff acknowledges, and justly touts, that she obtained her undergraduate

degree from UVA in May of 2020 with an almost perfect grade point average after consistently attending and engaging in her classes. *Id.* ¶¶ 34-35.

To the extent Plaintiff is claiming that UVA's Title IX Policy and unspecified federal Title IX regulations created the requisite property interest that was deprived by Defendants Babb and Haynes (*Id.* ¶ 263), this also fails. To begin with, Plaintiff does not identify any policy or regulation that would provide a basis for any property right. Moreover, our courts have consistently held that a school's policies and procedures do not confer a property interest on a student. *See, e.g.*, *Sheppard.*, 993 F.3d at 239-40 ("Violations of school procedures are insufficient to implicate the interests that trigger a federal due process claim") (quoting *Kowalski v. Berkeley Cnty. Sch.*, 652 F.3d 565, 576 (4th Cir. 2011)); *see Doe*, 2023 U.S. Dist. LEXIS 63108, at *18-19 (dismissing due process claim because former student had no property interest in UVA policy).

Accordingly, Plaintiff's conclusory claim that she was deprived of a property interest in her education fails to state a claim and should be dismissed.

> ## 2. Plaintiff fails to state a claim for the deprivation of a protected liberty interest.

Plaintiff claims she had a liberty interest in "bodily integrity" and free speech and association that Defendants Babb and Haynes harmed. Compl. ¶¶ 263, 265.

Plaintiff is silent on how her right to bodily integrity was affected by Babb and Haynes during the course of the Title IX investigations or otherwise. Courts have recognized a liberty interest in bodily integrity in limited circumstances, such as cases of sexual assault by law enforcement officers and sexual molestation or physical abuse of a student by a teacher. *Hood*, 760 F. Supp. 2d at 601 (collecting cases). There is also a substantive due process right not to be subjected by anyone acting under color of state law to the wanton infliction of physical harm. *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997).

Of course, Plaintiff does not allege that Babb and Haynes inflicted on her any amount of physical abuse or even that she suffered the necessary type of abuse as a result of how they conducted the Title IX proceedings. For these reasons, Plaintiff cannot show that these defendants deprived her of her liberty interest in bodily integrity, and this claim should be dismissed.

### 3. Plaintiff fails to state a claim for the deprivation of her right to procedural due process.

Even if Plaintiff has a recognized property or liberty interest, which she does not, she has not shown that she was deprived of such interest without due process of law. Due process requires some sort of notice and opportunity to be heard when there is a deprivation of a protected interest. *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145-146 (4th Cir. 2018) (citing *Goss v. Lopez*, 419 U.S. 565, 579 (1975)).

UVA, through Babb and/or Haynes, notified Plaintiff of all the steps taken in the Title IX proceeding, such as the initiation of the investigation (Compl. ¶ 204), the issuance of the draft and final reports (*Id.* ¶¶ 216, 219), the date of the review panel hearing (*Id.* ¶ 222), and the final outcome (*Id.* ¶ 228). Plaintiff had the opportunity to be heard throughout this process, including submitting evidence (*Id.* ¶ 214), having the opportunity to respond to the draft and final reports, and to speak at the review panel hearing. Ex. A pp. 36-40. Similarly, Plaintiff had the right challenge the No-contact Directive by contacting UVA's Title IX Coordinator. Ex. A p. 30.

As Plaintiff was afforded notice and the opportunity to be heard throughout the Title IX proceedings, she fails to state a claim for a procedural due process violation.

### D. Count III Fails to State an Equal Protection Claim and Should be Dismissed Pursuant to Rule 12(b)(6).

"In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that [s]he was treated differently from others who were

similarly situated and that the unequal treatment was the result of discriminatory animus." *Sheppard*, 993 F.3d at 238 (quoting *Equity in Athletics, Inc.*, 639 F.3d at 108). Plaintiff fails to make sufficient allegations with respect to either element.

Fatally, Plaintiff fails to identify anyone similarly situated to herself who was treated differently. The Complaint does not identify any other student who reported a sexual relationship, lengthy or otherwise, with a UVA employee whose Title IX proceeding was handled differently.

Certainly, Roe was not similarly situated to Plaintiff. Plaintiff was the complainant and a student and Roe was the respondent and an employee of UVA. Roe was accused of sexual harassment and assault and Plaintiff was the accuser. As this Court has found, "the subject of an investigation" for "alleged sexual misconduct" is not similarly situated with "his accusers." *Armstrong v. James Madison Univ.*, No. 5:16-cv-00053, 2017 U.S. Dist. LEXIS 25014, at *34 (W.D. Va. Feb. 23, 2017). In *Armstrong*, the plaintiff contended that he was denied equal protection when the university "favored" the complaints of the complainants over his own allegations. *Id.* The court found "such a claim [] entirely frivolous because Armstrong was not similarly situated with [the complainants]." *Id.; see also Doe v. Regents of the Univ. of Minn.*, 999 F.3d 571, 581 (8th Cir. 2021) ("[I]t goes almost without saying that a sexual assault complainant and those she accuses of sexual assault are 'not similarly situated.'"); *Doe v. Trs. of Ind. Univ.*, No. 1:20-cv-02006, 2022 U.S. Dist. LEXIS 59743, *13 (S.D. Ind. Mar. 31, 2022) (holding that the complainant in a Title IX case was not similarly situated to the respondent).

Recently, in *B.R. v. F.C.S.B.*, the plaintiff asserted an equal protection claim against school employees for deliberate indifference to the student-on-student sexual harassment she experienced. No. 1:19-cv-917, 2023 U.S. Dist. LEXIS 40930, at *17-18, 48-49 (E.D. Va. Mar. 10, 2023). The court granted the employees' motion to dismiss this claim because plaintiff failed to show she was

23

treated differently from similarly situated students and that different treatment was the result of discriminatory animus. *Id.* at \*48-49. This Court should follow suit and dismiss the equal protection claim with prejudice.

### E. Plaintiff Fails to Allege a Free Speech and Expression Claim (Count IV).

In Count IV, Plaintiff seeks to hold Babb liable for putting in place the No-contact Directive that prohibited Roe from communicating with her during the course of the Title IX investigation. She alleges the mutual no-contact directive was a "content-based restriction on her speech" and an impermissible prior restraint. Compl. ¶ 33.

To state a claim under the First Amendment, the plaintiff must first identify some speech or expressive conduct that implicates the First Amendment, and second demonstrate that this speech merits constitutional protection. *Dennison v. Cnty. of Frederick*, 921 F.2d 50, 53 (4th Cir.1990), cert. denied, 501 U.S. 1218 (1991).

Here, Plaintiff alleges that the No-contact Directive limited her speech, caused her to avoid areas at UVA, and reduced or eliminated her engagement in classes and campus activities. Compl. ¶ 291. Unquestionably, the only speech the No-contact Directive could possibly have restricted is Plaintiff's communication with Roe as that is the only communication it claimed to prohibit. *Id.* ¶ 210. Plaintiff's claim that the No-contact Directive caused her to avoid certain areas on campus and negatively affected her engagement with classes and activities is negated by the fact that the directive was issued *after* she had graduated from UVA. *Id.* ¶¶ 35, 210. Accordingly, because it is not plausible, Plaintiff fails to state a First Amendment claim on the basis that the No-contact Directive affected her speech or conduct in any way other than communicating with Roe.

To the extent that Plaintiff has a constitutionally protected right to communicate with the professor she asked UVA to hold accountable for abusing her, this claim also fails because the No-

contact Directive was content neutral and set forth permissible time, place, and manner restrictions. *Id.* ¶¶ 202, 210. The right to free speech may be subject to reasonable time, place, and manner restrictions. *See Cox v. New Hampshire*, 312 U.S. 569, 574–78 (1941).

First, the No-contact Directive was content neutral as it only prohibited Roe and Plaintiff from communicating with each other. Compl. ¶ 210. "The principal inquiry in determining content neutrality . . . in time, place, or manner cases . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Here, it has not. The purpose of the No-contact Directive has nothing to do with the content of any speech it may incidentally curtail. The purpose was to prevent further abuse of Plaintiff by Roe and interference with the ongoing investigation. *See* Ex. A p. 30. Notably, Plaintiff was not prohibited from communicating with any other person about Roe or any other topic.

Second, the No-contact Directive is a reasonable time, place, and manner restriction. *See Ward*, 491 U.S. at 788-89. When reviewing content-neutral time, place, and manner restrictions, courts "engage[] in a two-part analysis": (a) "determin[ing] whether the regulation materially advances an important or substantial interest"; and, if so, (b) "ask[ing] whether the regulation is narrowly tailored to serve that interest." *Am. Entertainers, L.L.C. v. City of Rocky Mount, N.C.*, 888 F.3d 707, 716 (4th Cir. 2018) (internal quotation marks, alterations, and citation omitted). Here, the answer to both questions is "yes" because the No-contact Directive was issued in the course of a Title IX investigation following Plaintiff's complaint of sexual assault by Roe and the directive was limited only to Plaintiff and Roe communicating with each other. Moreover, the No-contact Directive only lasted through the resolution of the investigation. Ex. A p. 30.

No-contact orders, in the context of preventing abuse, do not violate the First Amendment because they are not aimed at a particular message. *Compare Baird v. Baird*, 99 Va. Cir. 432, 440 (Wise Cnty. Cir. Ct. 2018) (holding that First Amendment right to freedom of association not violated by protective order) *with Perlot v. Green*, 609 F. Supp. 3d 1106 (D. Idaho 2022) (granting preliminary injunction rescinding no-contact orders issued by school against students and professor because they expressed protected religious views).

For these reasons, Plaintiff's First Amendment claim fails to state a claim and should be dismissed.

**F.     Defendants Babb and Haynes Are Entitled to Qualified Immunity from Counts II-IV.**

Even if the Court finds that Plaintiff has properly alleged constitutional violations of her due process, equal protection, and First Amendment rights, Defendants Babb and Haynes, sued in their individual capacities, are entitled to qualified immunity. Qualified immunity protects government officials sued in their personal capacities from liability in § 1983 actions if the right was not clearly established at the time of the alleged violation. *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 724 (E.D. Va. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)). "Officials lose the protection of the immunity only if it appears that (1) they violated a statutory or constitutional right of the plaintiff and (2) the right was "clearly established" at the time of the acts complained of such that an objectively reasonable official in their position would have known of the right." *McVey v. Stacy*, 157 F.3d 271, 276 (4th Cir. 1998) (citation omitted). Further, even if a clearly-established constitutional right is implicated, qualified immunity still applies if it was "objectively reasonable for the state actor to believe the conduct was lawful under the circumstances." *Herron v. Va.*

*Commonwealth Univ.*, 366 F. Supp. 2d 355, 361 (E.D. Va. 2004) (citing *Davis v. Scherer*, 468 U.S. 183 (1984)).

The qualified immunity doctrine exists so that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Abbas v. Woleben*, No. 3:13CV147, 2013 U.S. Dist. LEXIS 134446, at *17 (E.D. Va. Sept. 19, 2013) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." *Durham v. Jones*, 737 F.3d 291, 299 (4th Cir. 2013). Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," it is important to resolve this issue "early in the proceedings." *Saucier*, 533 U.S. at 200-01 ((quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

For Plaintiff's due process claim, qualified immunity applies at the first step because the Complaint fails to show a violation of Plaintiff's due process rights. Plaintiff fails to show that she had a property or liberty interest required for a due process claim. Qualified immunity also applies at the second step, as no Fourth Circuit or Supreme Court precedent exists that clearly establishes either a property interest or liberty interest in having a Title IX proceeding resolved in a certain period of time and in a certain preferred manner. *See Doe v. Rector & Visitors of George Mason Univ*ersity*, 132 F. Supp. at 724 ("Given the absence of clear and settled authority putting the existence of a protected reputational liberty interest beyond debate in the context of state college and university disciplinary hearings, [defendants] are entitled to qualified immunity.")

Moreover, it is entirely reasonable that Defendants Babb and Haynes had a good faith belief that they provided Plaintiff with all the process required as a complainant. They provided Plaintiff with updates about the investigation (Compl. ¶¶ 203, 209, 214, 216, 219 222, 224, 227), and gave

27

her the opportunity to be interviewed (*Id.* ¶ 208 ), present evidence (*Id.* ¶ 214), review and respond to preliminary and final reports, and participate in the review panel hearing. Ex. A pp. 36-41.

Similarly, Defendants Babb and Haynes are entitled to qualified immunity against Plaintiff's equal protection claim. As detailed above, Plaintiff fails to show that Defendants Babb and Haynes violated her constitutional rights. Because Plaintiff failed to identify similarly situated students and she and Roe are not similarly situated, the Equal Protection Clause was not implicated. Moreover, it is entirely reasonable that Babb and Haynes had a good faith belief that by following UVA's Title IX policy and procedures, including an investigation and review panel hearing that found Roe responsible for acts of sexual misconduct, they were not violating Plaintiff's constitutional right to equal protection.

Finally, Babb is entitled to qualified immunity from the First Amendment claim because it was not clearly established that in the context of a Title IX investigation into allegations of sexual harassment and assault that the First Amendment is violated by the issuance of a mutual no-contact directive between the complainant and the respondent.

The absence of clearly established constitutional rights coupled with Defendants Babb and Haynes' good faith belief that the Title IX procedures that resulted in Roe never being able to work at UVA again properly protected Plaintiff's rights, Babb and Haynes are entitled to qualified immunity.

## V.    CONCLUSION

For the foregoing reasons, Defendants, the Rector and Visitors of the University of Virginia, Emily Babb, and Akia Haynes, respectfully request that this Court grant the Motion to Dismiss pursuant to Rule 12(b)(6), dismiss this case with prejudice, and strike it from the docket.

Respectfully submitted,

**THE RECTOR AND VISTORS OF THE UNIVERSITY OF VIRGINIA, EMILY BABB, AKIA HAYNES**

By Counsel:___/s/ Christopher P. Bernhardt_____
Christopher P. Bernhardt* (VSB No. 80133)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone:     (804) 371-0977
Facsimile:     (804) 371-2087
Email: cbernhardt@oag.state.va.us

Jason S. Miyares
Attorney General of Virginia

Steven G. Popps
Deputy Attorney General

Jacqueline C. Hedblom
Senior Assistant Attorney General/ Trial Section Chief

Christopher P. Bernhardt* (VSB No. 80133)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone:     (804) 371-0977
Facsimile:     (804) 371-2087
Email: cbernhardt@oag.state.va.us
cbrown@oag.state.va.us
*Counsel of Record

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of July, 2023, the foregoing was filed with the Clerk of Court using the CM/ECF system.

By: ___/s/ Christopher P. Bernhardt_____
Christopher P. Bernhardt (VSB No. 80133)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone:     (804) 371-0977
Facsimile:      (804) 371-2087
Email: cbernhardt@oag.state.va.us