Archived - Title IX Policy
For reports from March 30, 2015 - August 13, 2020



**POLICY ON SEXUAL AND GENDER-BASED HARASSMENT
AND OTHER FORMS
OF INTERPERSONAL VIOLENCE**

| | |
|---|---|
| Date: | 07/01/2015 |
| Policy ID # | HRM-041 |
| Status: | Final |
| Policy Type: | University |
| Contact Office: | Equal Opportunity and Civil Rights |
| Oversight Executive: | President of the University |
| Applies to: | Academic Division (including all off-site locations) and Medical Center |

## Table of Contents

I.    STATEMENT OF POLICY ................................................................................ 2

II.   TO WHOM THIS POLICY APPLIES ............................................................... 3

III.  APPLICABLE PROCEDURES UNDER THIS POLICY ................................. 4

    A. WHERE THE RESPONDENT IS A STUDENT ............................................. 4
    B. WHERE THE RESPONDENT IS AN EMPLOYEE ...................................... 4
    C. WHERE THE RESPONDENT IS BOTH A STUDENT AND AN EMPLOYEE ........... 5
    D. WHERE THE RESPONDENT IS A THIRD PARTY ................................... 5

IV.   TITLE IX COORDINATOR .............................................................................. 5

V.    RESOURCES AND REPORTING OPTIONS ................................................... 7

    A. REMEDIAL AND PROTECTIVE MEASURES ......................................... 7
    B. PRIVACY AND CONFIDENTIALITY ....................................................... 7
        Privacy ............................................................................................ 8
        Confidentiality ................................................................................ 8
        Employee Responsibility to Report Disclosures or Information about Prohibited Conduct .......... 8
        A "Confidential Employee" ........................................................... 8
        A "Responsible Employee" ........................................................... 9
        Responsibility to Report Prohibited Conduct where either the Complainant or the Respondent is an Employee .......... 9
        Reporting of Any Prohibited Conduct on Certain University Property .......... 9
        Reporting to Law Enforcement ...................................................... 9
        Clery Act Reporting ..................................................................... 10
    C. CONFIDENTIAL RESOURCES ............................................................... 10
    D. REPORTING ........................................................................................... 10
        1. Law Enforcement .................................................................... 10
        2. The University ......................................................................... 11

VI.   PROHIBITED CONDUCT UNDER THIS POLICY ....................................... 11

A. SEXUAL ASSAULT ................................................................................ 12
   1. Sexual Contact ................................................................................ 12
   2. Sexual Intercourse .......................................................................... 12
   3. Affirmative Consent ........................................................................ 12
B. SEXUAL EXPLOITATION ................................................................... 14
C. INTIMATE PARTNER VIOLENCE ...................................................... 15
D. STALKING .............................................................................................. 15
E. SEXUAL OR GENDER-BASED HARASSMENT ................................ 16
   1. Sexual Harassment .......................................................................... 16
   2. Gender-Based Harassment .............................................................. 16
F. RETALIATION ........................................................................................ 17
G. COMPLICITY ......................................................................................... 17

VII.   VIOLATIONS OF LAW ........................................................................... 17

VIII. PREVENTION AND AWARENESS PROGRAMS ................................ 17

IX.    TRAINING ................................................................................................ 18

X.     RELATED POLICIES .............................................................................. 18

A. STUDENTS .............................................................................................. 18
B. EMPLOYEES ........................................................................................... 18
C. EMPLOYEES AND THIRD PARTIES ................................................... 18

XI.    OBLIGATION TO PROVIDE TRUTHFUL INFORMATION ................ 18

XII.   ANNUAL REVIEW ................................................................................. 18

# I.   <u>STATEMENT OF POLICY</u>

The University of Virginia, consisting of its eleven Schools in Charlottesville, its Medical Center, and all Academic Centers, wherever located (collectively, the "University"), is an institution built upon honor, integrity, trust, and respect.  Consistent with these values, the University is committed to providing a safe and non-discriminatory learning, living, and working environment for all members of the University community. The University does not discriminate on the basis of sex or gender in any of its education or employment programs and activities.  To that end, this policy prohibits specific forms of behavior that violate Title IX of the Education Amendments of 1972 ("Title IX"); Title VII of the Civil Rights Act of 1964 ("Title VII"); and/or the Virginia Human Rights Act.  Such behavior also requires the University to fulfill certain obligations under the Violence Against Women Reauthorization Act of 2013 ("VAWA") and the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act").

The University prohibits Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Sexual or Gender-Based Harassment, Complicity in the commission of any act prohibited by this policy, and Retaliation against a person for the good faith reporting of any of these forms of conduct or participation in any investigation or proceeding under this policy (collectively,

"Prohibited Conduct").  These forms of Prohibited Conduct are unlawful, undermine the character and purpose of the University, and will not be tolerated.

The University adopts this policy with a commitment to: (1) eliminating, preventing, and addressing the effects of  Prohibited Conduct; (2) fostering the University's Community of Trust, in which Prohibited Conduct is not tolerated; (3) cultivating a climate where all individuals are well-informed and supported in reporting Prohibited Conduct; (4) providing a fair and impartial process for all parties; and (5) identifying the standards by which violations of this policy will be evaluated and disciplinary action may be imposed.  Employees or Students who violate this policy may face disciplinary action up to and including termination or expulsion.  The University will take prompt and equitable action to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects.  The University conducts ongoing prevention, awareness, and training programs for Employees and Students to facilitate the goals of this policy.

It is the responsibility of every member of the University community to foster an environment free of Prohibited Conduct.  All members of the University community are encouraged to take reasonable and prudent actions to prevent or stop an act of Prohibited Conduct. The University will support and assist community members who take such actions.

This policy applies to all reports of Prohibited Conduct occurring on or after the effective date of this policy.  Where the date of the Prohibited Conduct precedes the effective date of this policy, the definitions of misconduct in existence at the time of the alleged incident(s) will be used.  The procedures under this policy, however, will be used to investigate and resolve all reports made on or after the effective date of this policy, regardless of when the incident(s) occurred.

## II.    <u>TO WHOM THIS POLICY APPLIES</u>

This policy applies to Students who are registered or enrolled for credit- or non-credit-bearing coursework ("Students"); University employees, consisting of all full-time and part-time faculty, University Staff, Medical Center employees and classified staff, wage (including temps), professional research staff, and post-doctoral fellows ("Employees"); and contractors, vendors, visitors, guests or other third parties ("Third Parties"). This policy pertains to acts of Prohibited Conduct committed by or against Students, Employees and Third Parties when:

    (1) the conduct occurs on University Grounds or other property owned or controlled by the University;

    (2) the conduct occurs in the context of a University employment or education program or activity, including, but not limited to, University-sponsored study abroad, research, on-line, or internship programs; or

    (3) the conduct occurs outside the context of a University employment or education program or activity, but has continuing adverse effects on or creates a hostile environment for Students, Employees or Third Parties while on University Grounds or other property owned or controlled by the University or in any University employment or education program or activity.

**Archived - Title IX Policy**
**For reports from March 30, 2015 - August 13, 2020**

The University's Office for Equal Opportunity and Civil Rights ("EOCR") administers two separate policies that address other forms of discrimination and harassment: (1) the Preventing and Addressing Discrimination and Harassment Policy (the "PADH Policy"), and (2) the Preventing and Addressing Retaliation Policy (together, the "EOCR Policies"). This policy supersedes any conflicting provisions contained in the EOCR Policies. Where Prohibited Conduct violates this policy and also violates either or both of the EOCR Policies, the University's response will be governed by the procedures referenced in this policy. Questions about which policy applies in a specific instance should be directed to the University's Title IX Coordinator at (434) 297-7988.

## III.     APPLICABLE PROCEDURES UNDER THIS POLICY

The specific procedures for reporting, investigating, and resolving Prohibited Conduct are based upon the nature of the Respondent's relationship to the University (Student, Employee, or Third Party). Each set of procedures referenced below is guided by the same principles of fairness and respect for Complainants and Respondents. "Complainant" means the Student, Employee or Third Party who presents as the victim of any Prohibited Conduct under this policy, regardless of whether that person makes a report or seeks action under this policy. "Respondent" means the Student, Employee or Third Party who has been accused of violating this policy.

A Student or Employee determined by the University to have committed an act of Prohibited Conduct is subject to disciplinary action, up to and including separation from the University. Third Parties who commit Prohibited Conduct may have their relationships with the University terminated and/or their privileges of being on University premises withdrawn.

The procedures referenced below provide for prompt and equitable response to reports of Prohibited Conduct. The procedures designate specific timeframes for major stages of the process and provide for thorough and impartial investigations that afford all parties notice and an opportunity to present witnesses and evidence and to view the information that will be used in determining whether a policy violation has occurred. The University applies the Preponderance of the Evidence standard when determining whether this policy has been violated. "Preponderance of the Evidence" means that it is more likely than not that a policy violation occurred.

### A. WHERE THE RESPONDENT IS A STUDENT

The procedures for responding to reports of Prohibited Conduct committed by Students are detailed in Appendix A: Investigating and Resolving Reports of Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence Committed by Students.

### B. WHERE THE RESPONDENT IS AN EMPLOYEE

The procedures for responding to reports of Prohibited Conduct committed by Employees are detailed in Appendix B: Investigating and Resolving Reports of Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence Committed by Employees.

<span style="color:red">**Archived - Title IX Policy**
**For reports from March 30, 2015 - August 13, 2020**</span>

C.  <u>WHERE THE RESPONDENT IS BOTH A STUDENT AND AN EMPLOYEE</u>

- The Student-Respondent procedures (Appendix A) will apply if the Respondent is a full-time Student but not a full-time Employee;
- The Employee-Respondent procedures (Appendix B) will apply if the Respondent is a full-time Employee but not a full-time Student; or
- If there is a question as to the predominant role of the Respondent, the University's Title IX Coordinator will determine which of the procedures applies based on the facts and circumstances (such as which role predominates in the context of the Prohibited Conduct). Further, where a Respondent is both a Student and an Employee, the Respondent may be subject to any of the sanctions applicable to Students or Employees.

D.  <u>WHERE THE RESPONDENT IS A THIRD PARTY</u>

The University's ability to take appropriate corrective action against a Third Party will be determined by the nature of the relationship of the Third Party to the University.  The Title IX Coordinator will determine the appropriate manner of resolution consistent with the University's commitment to a prompt and equitable process consistent with federal law, federal guidance, and this policy.

**IV.  <u>TITLE IX COORDINATOR</u>**

Under Title IX:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

The Title IX Coordinator is charged with monitoring the University's compliance with Title IX; ensuring appropriate education and training; coordinating the University's investigation, response, and resolution of all reports under this policy; and ensuring appropriate actions to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects.  The Title IX Coordinator is available to meet with any Student, Employee, or Third Party to discuss this policy or the accompanying procedures. The University has also designated a Deputy Title IX Coordinator who may assist the Title IX Coordinator in the discharge of these responsibilities.   The Title IX Coordinator and Deputy Title IX Coordinator receive appropriate training to discharge their responsibilities.

Concerns about the University's application of Title IX, VAWA, Title VII, the Clery Act, or the Virginia Human Rights Act may be addressed to the Title IX Coordinator; the United States Department of Education, Clery Act Compliance Division (at clery@ed.gov); the United States Department of Education, Office for Civil Rights (at OCR@ed.gov or (800) 421-3481); and/or the Equal Employment Opportunity Commission (at info@eeoc.gov or (800) 669-4000).

The Title IX Coordinator and Deputy Title IX Coordinator can be contacted by telephone, email, or in person during regular office hours:

**Emily Babb,** Assistant Vice President for Title IX Compliance
Title IX Coordinator
O'Neil Hall, Terrace Level, Room 037
ecb6y@virginia.edu or titleixcoordinator@virginia.edu-
(434) 297-7643

**Akia Haynes**, Deputy Title IX Coordinator
Title IX Office
O'Neil Hall, Terrace Level, Room 036
(434) 924-1696
aah6n@virginia.edu

## V.    RESOURCES AND REPORTING OPTIONS

The University offers a wide range of resources for all Students and Employees to provide support and guidance in response to any incident of Prohibited Conduct.  For comprehensive information on accessing University and community resources, including emergency and ongoing assistance; health, mental health, and victim-advocacy services; options for reporting Prohibited Conduct to the University and/or law enforcement; and available support with academics, housing, and employment:

- Students should refer to the Student Resource Guide (Appendix A-1); Employees should refer to the Employee Resource Guide (Appendix B-1); and

- Third Parties should contact the Title IX Coordinator to discuss available University and/or community resources and reasonably available assistance.

### A.  REMEDIAL AND PROTECTIVE MEASURES

The University offers a wide range of resources for Students and Employees, whether as Complainants or Respondents, to provide support and guidance throughout the initiation, investigation, and resolution of a report of Prohibited Conduct.  The University will offer reasonable and appropriate measures to protect a Complainant and facilitate the Complainant's continued access to University employment or education programs and activities.  These measures may be both remedial (designed to address a Complainant's safety and well-being and continued access to educational opportunities) or protective (involving action against a Respondent).  Remedial and protective measures, which may be temporary or permanent, may include no-contact directives, residence modifications, academic modifications and support, work schedule modifications, interim disciplinary suspension, suspension from employment, and pre-disciplinary leave (with or without pay).  Remedial measures are available regardless of whether a Complainant pursues a complaint or investigation under this policy.  The University will maintain the privacy of any remedial and protective measures provided under this policy to the extent practicable and will promptly address any violation of the protective measures. The Title IX Coordinator has the discretion to impose and/or modify any interim measure based on all available information, and is available to meet with a Complainant or Respondent to address any concerns about the provision of interim measures.

The University will provide reasonable remedial and protective measures to Third Parties as appropriate and available, taking into account the role of the Third Party and the nature of any contractual relationship with the University.

### B.  PRIVACY AND CONFIDENTIALITY

The University is committed to protecting the privacy of all individuals involved in the investigation and resolution of a report under this policy. The University also is committed to providing assistance to help Students, Employees and Third Parties make informed choices.  With respect to any report under this policy, the University will make reasonable

efforts to protect the privacy of participants, in accordance with applicable state and federal law, while balancing the need to gather information to assess the report and to take steps to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects.

Privacy and confidentiality have distinct meanings under this policy.

**Privacy:** Privacy means that information related to a report of Prohibited Conduct will be shared with a limited circle of University Employees who "need to know" in order to assist in the assessment, investigation, and resolution of the report. All Employees who are involved in the University's response to reports of Prohibited Conduct receive specific training and guidance about sharing and safeguarding private information in accordance with state and federal law.

The privacy of Student education records will be protected in accordance with the Family Educational Rights and Privacy Act ("FERPA"), as outlined in the University's FERPA policy. The privacy of an individual's medical and related records generally is protected by the Health Insurance Portability and Accountability Act ("HIPAA"), excepting health records protected by FERPA and by Virginia's Health Records Privacy Act, Va. Code § 32.1-127.1:03. Access to an Employee's personnel records may be restricted in accordance with the Virginia Freedom of Information Act, and, where applicable, Department of Human Resources Management ("DHRM") Policy 6.05 Personnel Records Disclosure and DHRM Policy 6.10 Records Management.

**Confidentiality:** Confidentiality exists in the context of laws that protect certain relationships, including with medical and clinical care providers (and those who provide administrative services related to the provision of medical and clinical care), mental health providers, counselors, and ordained clergy, all of whom may engage in confidential communications under Virginia law. The University has designated individuals who have the ability to have privileged communications as "Confidential Employees." When information is shared by an individual with a Confidential Employee or a community professional with the same legal protections, the Confidential Employee (and/or such community professional) cannot reveal the information to any third party except when an applicable law or a court order requires or permits disclosure of such information. For example, information may be disclosed when: (i) the individual gives written consent for its disclosure; (ii) there is a concern that the individual will likely cause serious physical harm to self or others; or (iii) the information concerns conduct involving suspected abuse or neglect of a minor under the age of 18.

**Employee Responsibility to Report Disclosures or Information about Prohibited Conduct**: An Employee's responsibility to report incidents of Prohibited Conduct is governed by the University's separate reporting policy ("Reporting Policy"). Under the Reporting Policy, every Employee is designated as either a "Confidential Employee" or a "Responsible Employee."

**A "Confidential Employee"** is (1) any Employee who is a licensed medical, clinical or mental-health professional (e.g., physicians, nurses, physicians' assistants, psychologists,

psychiatrists, professional counselors and social workers, and those performing services under their supervision), when acting in that professional role in the provision of services to a patient who is a Student ("health care providers"); and (2) any Employee providing administrative, operational and/or related support for such health care providers in their performance of such services. A Confidential Employee will not disclose information about Prohibited Conduct to the University's Title IX Coordinator without the Student's permission (subject to the exceptions set forth in the Confidentiality section of this policy).

**A "Responsible Employee"** is any University Employee who is not a Confidential Employee. A Responsible Employee is required to report to the University's Title IX Coordinator all relevant details (obtained directly or indirectly) about an incident of Prohibited Conduct that involves any Student as a Complainant, Respondent, and/or witness, including dates, times, locations, and names of parties and witnesses. Responsible Employees include Resident Assistants, Graduate Teaching Assistants, and all other student-employees, when disclosures are made to any of them in their capacities as employees. Responsible Employees are not required to report information disclosed (1) at public awareness events (e.g., "Take Back the Night," candlelight vigils, protests, "survivor speak-outs" or other public forums in which students may disclose incidents of Prohibited Conduct; collectively, "Public Awareness Events"), or (2) during a student's participation as a subject in an Institutional Review Board-approved human subjects research protocol ("IRB Research"). The University may provide information about Students' Title IX rights and about available University and community resources and support at Public Awareness Events, however, and Institutional Review Boards may, in appropriate cases, require researchers to provide such information to all Student subjects of IRB Research.

**Responsibility to Report Prohibited Conduct Where Either the Complainant or the Respondent Is an Employee**: Under this policy, supervisors, management and human resources professionals are required to report to the University's Title IX Coordinator all relevant details about an incident of Prohibited Conduct where either the Complainant or the Respondent is an Employee. Reporting is required when such supervisors, management and human resource professionals know (by reason of a direct or indirect disclosure) or should have known of such Prohibited Conduct. For academic faculty, supervisors include department chairs, deans, and other unit administrators.

**Reporting of Any Prohibited Conduct on Certain University Property**: Consistent with the requirements of Va. Code § 23.1-806 (the "Virginia Reporting Statute"), Responsible Employees are also required to report to the Title IX Coordinator all information obtained, from any source, about alleged Prohibited Conduct that occurs anywhere on University Grounds (including residence halls); on any contiguous (off-Grounds) property owned or controlled by the University; on any property controlled by a Student organization (including fraternity houses) or frequently used by Students, wherever located; and public property (including streets, sidewalks and parking facilities) that is within or immediately adjacent to, and accessible from, Grounds. These reporting obligations, and the Virginia Reporting Statute, are described in the Reporting Policy.

**Reporting to Law Enforcement**: Under the Virginia Reporting Statute, the University is

required to report information about certain allegations of Prohibited Conduct to the law enforcement agencies and the prosecuting authorities who would be responsible, respectively, for investigating and prosecuting such allegations.

**Clery Act Reporting:** Pursuant to the Clery Act, the University includes statistics about certain offenses in its annual security report and provides those statistics to the United States Department of Education in a manner that does not include any personally identifying information about individuals involved in an incident. The Clery Act also requires the University to issue timely warnings to the University community about certain crimes that have been reported and may continue to pose a serious or continuing threat to Students and Employees. Consistent with the Clery Act, the University withholds the names and other personally identifying information of Complainants when issuing timely warnings to the University community.

C. <u>CONFIDENTIAL RESOURCES</u>

Consistent with the definition of Confidential Employees and licensed community professionals, there are a number of resources within the University and Charlottesville communities where Students and Employees can obtain confidential, trauma-informed counseling and support. These resources include the Sexual Assault Resource Agency ((434) 977-7273), pursuant to a separate Memorandum of Understanding with the University; the Shelter for Help in Emergency ((434) 293-8509); and the Family Violence and Sexual Assault Virginia Hotline ((800) 838-8238, or text at (804) 793-9999).

Students can also obtain such counseling at Counseling and Psychological Services within Student Health and at the Women's Center ((434) 982-2903). For a complete list of University and community-based confidential resources for Students, see the <u>Student Resource Guide (Appendix A-1)</u>.

Employees can also obtain such counseling through the Faculty and Employee Assistance Program ((434) 243-2643). For a complete list of University and community-based confidential resources for Employees, see the <u>Employee Resource Guide (Appendix B-1)</u>.

D. <u>REPORTING</u>

There are multiple channels for reporting Prohibited Conduct. A Complainant may choose to report to the University, to law enforcement, to both, or to neither. These reporting options are not exclusive. Complainants may simultaneously pursue criminal and disciplinary action. The University will support Complainants in understanding, assessing and pursuing these options.

**1. Law Enforcement**

Complainants have the right to notify or decline to notify law enforcement. In keeping with its commitment to taking all appropriate steps to eliminate, prevent, and remedy all Prohibited Conduct, the University urges Complainants to report Prohibited

Conduct *immediately* to local law enforcement by contacting:

- 911 (for emergencies)
- Albemarle County Police ((434) 977-9041) (for non-emergencies)
- City of Charlottesville Police ((434) 970-3280) (for non-emergencies)
- University Police ((434) 924-7166) (for non-emergencies)

Police have unique legal authority, including the power to seek and execute search warrants, collect forensic evidence, make arrests, and assist in seeking Emergency Protective Orders. Although a police report may be made at any time, Complainants should be aware that a one-year statute of limitations may apply to certain misdemeanors in Virginia. The University will assist Complainants in notifying law enforcement if they choose to do so.

**2. The University**

The University also urges anyone who becomes aware of an incident of Prohibited Conduct to report the incident *immediately* to the University through the following reporting options:

- By contacting the University's Title IX Coordinator or any Deputy Title IX Coordinator by telephone, email, or in person during regular office hours at their respective locations, email addresses and/or phone numbers listed in Section IV, above; or
- Through *Just Report It*, the University's website for online reporting (which also allows for anonymous reporting).

There is no time limit for reporting Prohibited Conduct to the University under this policy; however, the University's ability to respond may diminish over time, as evidence may erode, memories may fade, and Respondents may no longer be affiliated with the University. If the Respondent is no longer a Student or an Employee, the University will provide reasonably appropriate remedial measures, assist the Complainant in identifying external reporting options, and take reasonable steps to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects.

The University will not pursue disciplinary action against Complainants or witnesses for disclosure of illegal personal consumption of drugs or alcohol where such disclosures are made in connection with a good faith report or investigation of Prohibited Conduct. Complainants may simultaneously pursue criminal and University complaints.

## VI.   <u>PROHIBITED CONDUCT UNDER THIS POLICY</u>

Conduct under this policy is prohibited regardless of the sex, sexual orientation and/or gender identity/expression of the Complainant or Respondent. Prohibited Conduct includes the following

specifically defined forms of behavior: Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Sexual or Gender-Based Harassment, Complicity, and Retaliation.

### A. SEXUAL ASSAULT

Sexual Assault consists of (1) Sexual Contact and/or (2) Sexual Intercourse that occurs without (3) Affirmative Consent.

**1. Sexual Contact** is:

- Any intentional sexual touching
- However slight
- With any object or body part (as described below)
- Performed by a person upon another person

Sexual Contact includes (a) intentional touching of the breasts, buttocks, groin or genitals, whether clothed or unclothed, or intentionally touching another with any of these body parts; and (b) making another touch you or themselves with or on any of these body parts.

**2. Sexual Intercourse** is:

- Any penetration
- However slight
- With any object or body part (as described below)
- Performed by a person upon another person

Sexual Intercourse includes (a) vaginal penetration by a penis, object, tongue, or finger; (b) anal penetration by a penis, object, tongue, or finger; and (c) any contact, no matter how slight, between the mouth of one person and the genitalia of another person.

**3. Affirmative Consent** is:

- Informed (knowing)
- Voluntary (freely given)
- Active (not passive), meaning that, through the demonstration of clear words or actions, a person has indicated permission to engage in mutually agreed-upon sexual activity

Affirmative Consent cannot be obtained by Force. Force includes (a) the use of physical violence, (b) threats, (c) intimidation, and/or (d) coercion.

a) Physical violence means that a person is exerting control over another person through the use of physical force. Examples of physical violence include

hitting, punching, slapping, kicking, restraining, choking, and brandishing or using any weapon.

b) Threats are words or actions that would compel a reasonable person to engage in unwanted sexual activity. Examples include threats to harm a person physically, to reveal private information to harm a person's reputation, or to cause a person academic or economic harm.

c) Intimidation is an implied threat that menaces or causes reasonable fear in another person. A person's size, alone, does not constitute intimidation; however, a person's size may be used in a way that constitutes intimidation (e.g., blocking access to an exit).

d) Coercion is the use of an unreasonable amount of pressure to gain sexual access. Coercion is more than an effort to persuade, entice, or attract another person to have sex. When a person makes clear a decision not to participate in a particular form of Sexual Contact or Sexual Intercourse, a decision to stop, or a decision not to go beyond a certain sexual interaction, continued pressure can be coercive. In evaluating whether coercion was used, the University will consider: (i) the frequency of the application of the pressure, (ii) the intensity of the pressure, (iii) the degree of isolation of the person being pressured, and (iv) the duration of the pressure.

Affirmative Consent cannot be gained by taking advantage of the incapacitation of another, where the person initiating sexual activity knew or reasonably should have known that the other was incapacitated. Incapacitation means that a person lacks the ability to make informed, rational judgments about whether or not to engage in sexual activity.

A person who is incapacitated is unable, temporarily or permanently, to give Affirmative Consent because of mental or physical helplessness, sleep, unconsciousness, or lack of awareness that sexual activity is taking place. A person may be incapacitated as a result of the consumption of alcohol or other drugs, or due to a temporary or permanent physical or mental health condition.

The University offers the following guidance on Affirmative Consent and assessing incapacitation:

A person who wants to engage in a specific sexual activity is responsible for obtaining Affirmative Consent for that activity. Lack of protest does not constitute Affirmative Consent. Lack of resistance does not constitute Affirmative Consent. Silence and/or passivity also do not constitute Affirmative Consent. Relying solely on non-verbal communication before or during sexual activity can lead to misunderstanding and may result in a violation of this Policy. It is important not to make assumptions about whether a potential partner is consenting. In order to avoid confusion or ambiguity, participants are encouraged to talk with one another before engaging in sexual activity. If confusion or ambiguity arises during sexual activity, participants are encouraged to stop and clarify a mutual willingness to continue that activity.

Affirmative Consent to one form of sexual activity does not, by itself, constitute Affirmative Consent to another form of sexual activity.  For example, one should not presume that Affirmative Consent to oral-genital contact constitutes Affirmative Consent to vaginal or anal penetration.   Affirmative Consent to sexual activity on a prior occasion does not, by itself, constitute Affirmative Consent to future sexual activity.  In cases of prior relationships, the manner and nature of prior communications between the parties and the context of the relationship may have a bearing on the presence of Affirmative Consent.

Affirmative Consent may be withdrawn at any time.  An individual who seeks to withdraw Affirmative Consent must communicate, through clear words or actions, a decision to cease the sexual activity.  Once Affirmative Consent is withdrawn, the sexual activity must cease immediately.

In evaluating Affirmative Consent in cases of alleged incapacitation, the University asks two questions:  (1) *Did the person initiating sexual activity know that the other party was incapacitated? and if not,* (2) *Should a sober, reasonable person in the same situation have known that the other party was incapacitated?*  If the answer to either of these questions is "YES," Affirmative Consent was absent and the conduct is likely a violation of this policy.

Incapacitation is a state beyond drunkenness or intoxication. A person is not necessarily incapacitated merely as a result of drinking or using drugs.  The impact of alcohol and other drugs varies from person to person.

One is not expected to be a medical expert in assessing incapacitation.  One must look for the common and obvious warning signs that show that a person may be incapacitated or approaching incapacitation.  Although every individual may manifest signs of incapacitation differently, typical signs include slurred or incomprehensible speech, unsteady gait, combativeness, emotional volatility, vomiting, or incontinence.  A person who is incapacitated may not be able to understand some or all of the following questions: "Do you know where you are?" "Do you know how you got here?" "Do you know what is happening?"  "Do you know whom you are with?"

One should be cautious before engaging in Sexual Contact or Sexual Intercourse when either party has been drinking alcohol or using other drugs.  The introduction of alcohol or other drugs may create ambiguity for either party as to whether Affirmative Consent has been sought or given.  If one has doubt about either party's level of intoxication, the safe thing to do is to forego all sexual activity.

***Being impaired by alcohol or other drugs is no defense to any violation of this policy.***

B.  SEXUAL EXPLOITATION

Sexual Exploitation is purposely or knowingly doing any of the following:

- Causing the incapacitation of another person (through alcohol, drugs, or any other

means) for the purpose of compromising that person's ability to give Affirmative Consent to sexual activity;

- Allowing third parties to observe private sexual activity from a hidden location (e.g., closet) or through electronic means (e.g., Skype or livestreaming of images);
- Engaging in voyeurism (e.g., watching private sexual activity without the consent of the participants or viewing another person's intimate parts (including genitalia, groin, breasts or buttocks) in a place where that person would have a reasonable expectation of privacy);
- Recording or photographing private sexual activity and/or a person's intimate parts (including genitalia, groin, breasts or buttocks) without consent;
- Disseminating or posting images of private sexual activity and/or a person's intimate parts (including genitalia, groin, breasts or buttocks) without consent;
- Prostituting another person; or
- Exposing another person to a sexually transmitted infection or virus without the other's knowledge.

## C.  INTIMATE PARTNER VIOLENCE

Intimate Partner Violence includes any act of violence or threatened act of violence that occurs between individuals who are involved or have been involved in a sexual, dating, spousal, domestic, or other intimate relationship.[1]  Intimate Partner Violence may include any form of Prohibited Conduct under this policy, including Sexual Assault, Stalking, and Physical Assault (as defined below).

Physical Assault is threatening or causing physical harm or engaging in other conduct that threatens or endangers the health or safety of any person.  Physical Assault will be addressed under this policy if it involves Sexual or Gender-Based Harassment, Intimate Partner Violence, or is part of a course of conduct under the Stalking definition.

## D.  STALKING[2]

Stalking occurs when a person engages in a course of conduct directed at a specific person under circumstances that would cause a reasonable person to fear bodily injury or to experience substantial emotional distress.

Course of conduct means two or more acts, including but not limited to acts in which a person directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about another person, or interferes with another person's property.  Substantial emotional distress means significant mental suffering or anguish.

---

[1] Intimate Partner Violence includes "dating violence" and "domestic violence," as defined by VAWA. Consistent with VAWA, the University will evaluate the existence of an intimate relationship based upon the Complainant's statement and taking into consideration the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.

[2] This definition is consistent with VAWA.

Stalking includes "cyber-stalking," a particular form of stalking in which a person uses electronic media, such as the internet, social networks, blogs, cell phones, texts, or other similar devices or forms of contact.

E.  <u>SEXUAL OR GENDER-BASED HARASSMENT</u>

**Sexual Harassment** is any unwelcome sexual advance, request for sexual favors, or other unwanted conduct of a sexual nature, whether verbal, non-verbal, graphic, physical, or otherwise, when the conditions outlined in (1) and/or (2), below, are present.

**Gender-Based Harassment** includes harassment based on gender, sexual orientation, gender identity, or gender expression, which may include acts of aggression, intimidation, or hostility, whether verbal or non-verbal, graphic, physical, or otherwise, even if the acts do not involve conduct of a sexual nature, when the conditions outlined in (1) and/or (2), below, are present.

(1) Submission to or rejection of such conduct is made, either explicitly or implicitly, a term or condition of a person's employment, academic standing, or participation in any University programs and/or activities or is used as the basis for University decisions affecting the individual (often referred to as "*quid pro quo*" harassment); or

(2) Such conduct creates a hostile environment.  A "hostile environment" exists when the conduct is sufficiently severe, persistent, or pervasive that it unreasonably interferes with, limits, or deprives an individual from participating in or benefitting from the University's education or employment programs and/or activities.  Conduct must be deemed severe, persistent, or pervasive from both a subjective and an objective perspective.  In evaluating whether a hostile environment exists, the University will consider the totality of known circumstances, including, but not limited to:

- The frequency, nature and severity of the conduct;
- Whether the conduct was physically threatening;
- The effect of the conduct on the Complainant's mental or emotional state;
- Whether the conduct was directed at more than one person;
- Whether the conduct arose in the context of other discriminatory conduct;
- Whether the conduct unreasonably interfered with the Complainant's educational or work performance and/or University programs or activities; and
- Whether the conduct implicates concerns related to academic freedom or protected speech.

A hostile environment can be created by persistent or pervasive conduct or by a single or isolated incident, if sufficiently severe.  The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the conduct is physical.  A single incident of Sexual Assault, for example, may be sufficiently severe to constitute a hostile environment.  In contrast, the perceived offensiveness of a single verbal or written expression, standing alone, is typically not sufficient to constitute a hostile environment.

F.  <u>RETALIATION</u>

Retaliation means any adverse action taken against a person for making a good faith report of Prohibited Conduct or participating in any proceeding under this policy. Retaliation includes threatening, intimidating, harassing, coercing or any other conduct that would discourage a reasonable person from engaging in activity protected under this policy. Retaliation may be present even where there is a finding of "no responsibility" on the allegations of Prohibited Conduct.  Retaliation does not include good faith actions lawfully pursued in response to a report of Prohibited Conduct.

G.  <u>COMPLICITY</u>

Complicity is any act taken with the purpose of aiding, facilitating, promoting or encouraging the commission of an act of Prohibited Conduct by another person.

## VII.  <u>VIOLATIONS OF LAW</u>

Behavior that violates this policy may also constitute a crime under the laws of the jurisdiction in which the incident occurred.  For example, the Commonwealth of Virginia criminalizes and punishes some forms of Sexual Assault, Intimate Partner Violence, Sexual Exploitation, Stalking, and Physical Assault.  The criminal statutes that may apply in cases of Physical Assault and Intimate Partner Violence  are found in various sections of Chapter 4, Articles 1 (Homicide) and 4 (Assaults and Bodily Woundings), of Title 18.2 of the Code of Virginia.  The criminal statutes relating to Sexual Assault are found in Sections 18.2-61 to 18.2-67.10 of the Code of Virginia. Section 18.2-60.3 of the Code of Virginia defines and identifies the penalty for criminal stalking. Finally, Sections 18.2-386.1 and 18.2-386.2 of the Code of Virginia provide for criminal penalties in some cases of Sexual Exploitation.  This compilation of criminal statutes is not exhaustive, but is offered to notify the University community that, some forms of Prohibited Conduct may also constitute crimes under Virginia law, which may subject a person to criminal prosecution and punishment in addition to any sanctions under this policy.

## VIII.  <u>PREVENTION AND AWARENESS PROGRAMS</u>

The University is committed to the prevention of Prohibited Conduct through regular and ongoing education and awareness programs.  Incoming Students and new Employees receive primary prevention and awareness programming as part of their orientation, and returning Students and

**Archived - Title IX Policy**
**For reports from March 30, 2015 - August 13, 2020**

current Employees receive ongoing training and related education. For a description of the University's Prohibited Conduct prevention and awareness programs, including programs on minimizing the risk of incidents of Prohibited Conduct and bystander intervention, see Appendix C.


## IX.   TRAINING

The University provides training to Students and Employees to ensure they understand this policy and the topics and issues related to maintaining an education and employment environment free from harassment and discrimination.  For a description of the University's training related to this policy, see Appendix C.


## X.   RELATED POLICIES

### A.  STUDENTS

Standards of Conduct: www.student.virginia.edu/~judic/standards-of-conduct.

Rights of Students at the University of Virginia Pursuant to the Family Educational Rights and Privacy Act (FERPA): http://uvapolicy.virginia.edu/policy/STU-002.

### B.  EMPLOYEES

Reporting Policy: http://uvapolicy.virginia.edu/policy/HRM-040.

### C.  EMPLOYEES AND THIRD PARTIES

Preventing and Addressing Discrimination and Harassment: http://uvapolicy.virginia.edu/policy/HRM-009.

Preventing and Addressing Retaliation: http://uvapolicy.virginia.edu/policy/HRM-010.


## XI.   OBLIGATION TO PROVIDE TRUTHFUL INFORMATION

All University community members are expected to provide truthful information in any report or proceeding under this policy.  Submitting or providing false or misleading information in bad faith or with a view to personal gain or intentional harm to another in connection with an incident of Prohibited Conduct is prohibited and subject to disciplinary sanctions under the University's Honor Code and disciplinary action under the appropriate Employee disciplinary policy.  This provision does not apply to reports made or information provided in good faith, even if the facts alleged in the report are not later substantiated.


## XII.   ANNUAL REVIEW

**Archived - Title IX Policy**
**For reports from March 30, 2015 - August 13, 2020**

This policy is maintained by EOCR. The University will review and update this policy, as appropriate, by October 31 of each year. The University will evaluate, among other things, any changes in legal requirements, existing University resources, and the resolution of cases from the preceding year (including, but not limited to, timeframes for completion and sanctions and remedies imposed). The Title IX Coordinator shall certify to the State Council of Higher Education for Virginia that this policy has been reviewed and updated, as appropriate, in accordance with Virginia law.

**Archived - Employee Procedures**
**For reports from March 30, 2015 - August 13, 2020**

**APPENDIX B**

UNIVERSITY OF VIRGINIA

# PROCEDURES FOR REPORTS AGAINST EMPLOYEES

INVESTIGATING AND RESOLVING REPORTS OF SEXUAL AND GENDER-BASED
HARASSMENT AND OTHER FORMS OF INTERPERSONAL VIOLENCE
COMMITTED BY EMPLOYEES UNDER THE TITLE IX POLICY

## Table of Contents

I.   INTRODUCTION ........................................................................................................ 2

II.  REPORTING ............................................................................................................... 2

III. EXPECTATIONS OF COMPLAINANTS AND RESPONDENTS ....................................... 3

IV.  INITIAL ASSESSMENT .............................................................................................. 5

V.   THREAT ASSESSMENT .............................................................................................. 6

    A. EVALUATION PANEL ............................................................................................ 6

    B. HEALTH AND SAFETY THREAT ASSESSMENT ...................................................... 6

        1. Risk Factors ................................................................................................. 6

        2. Disclosure(s) of Information to Law Enforcement ....................................... 7

    C. UNIVERSITY ACTIONS FOLLOWING HEALTH AND SAFETY THREAT
       ASSESSMENT ....................................................................................................... 8

        1. Where the Complainant Wishes to Pursue Formal Resolution..................... 8

        2. Where the Complainant Requests Anonymity, that an Investigation not be Pursued,
          and/or that No Disciplinary Action Be Taken. .......................................... 9

    D. NOTICE TO COMPLAINANT AND RESPONDENT OF UNIVERSITY ACTIONS 10

VI.  UNIVERSITY RESOLUTION ..................................................................................... 11

    A. ALTERNATIVE RESOLUTION ............................................................................. 11

    B. FORMAL RESOLUTION ...................................................................................... 13

        1. Investigation .............................................................................................. 13

        2. Acceptance of Responsibility ..................................................................... 18

        3. Review Panel Meeting ............................................................................... 18

        4. Executive Review; Sanction; Notice of Outcome ....................................... 21

VII. RECORDS RETENTION ............................................................................................ 24

## I.   <u>INTRODUCTION</u>

The University of Virginia (the "University") is committed to providing a safe and non-discriminatory environment for all members of the University community.   The University prohibits Sexual Assault, Sexual Exploitation, Intimate Partner Violence, Stalking, Sexual and Gender-Based Harassment, Complicity and Retaliation (together, "Prohibited Conduct"). These forms of Prohibited Conduct are defined in the <u>University's Policy on Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence</u> (the "Title IX Policy"). This Appendix identifies the procedures (the "Procedures") the University follows when it receives a report alleging Prohibited Conduct by an Employee.  The University uses these Procedures to investigate and adjudicate any such allegations and to impose disciplinary sanctions against Employees found responsible for violating the Title IX Policy.[1]

## II.   <u>REPORTING</u>

The University encourages anyone[2] who experiences or becomes aware of an incident of Prohibited Conduct involving an Employee to *immediately* report the incident to the University through the following reporting options:

- By contacting the University's Title IX Coordinator or Deputy Title IX Coordinator:

    **Emily Babb,** Assistant Vice President for Title IX Compliance/ Title IX Coordinator
    O'Neil Hall, Terrace Level, Room 037
    <u>ecb6y@virginia.edu</u> or <u>titleixcoordinator@virginia.edu</u>
    (434) 297-7643

---

[1] These Procedures should be read in conjunction with the Title IX Policy.  Capitalized terms used and not otherwise defined in these Procedures are defined in the Title IX Policy. For purposes of these Procedures, the following definitions apply: (1) the "Title IX Coordinator" means the Title IX Coordinator, Deputy Title IX Coordinator, and/or any of their respective trained designees; (2) "Supervisor" means the individual or individuals to whom an Employee reports in the context of their employment with the University (for academic faculty, that individual may be the Department Chair, Dean or other unit administrator); and (3) "Human Resources" means University Human Resources, the Health System Human Resources Office of Employee Relations, and/or the Human Resources professional in a particular school/department/unit.

[2] Pursuant to University policy, certain University employees, called "Responsible Employees," are *required* to report to the Title IX Coordinator all information disclosed to them about an incident of Prohibited Conduct.  See "<u>Reporting by University Employees of Disclosures Relating to Sexual and Gender-Based Harassment and Other Forms of Interpersonal Violence</u>."

>  **Akia Haynes**, Deputy Title IX Coordinator/Investigator
>  Title IX Office
>  O'Neil Hall, Terrace Level Room 036
>  (434) 924-1696
>  aah6n@virginia.edu

- Through *Just Report It*, the University's website for online reporting (which allows for anonymous reporting).

A Complainant may choose to make a report to the University to pursue resolution under these Procedures and may also choose to make a report to law enforcement.  A Complainant may pursue either or both of these options at the same time.  As set forth in the Title IX Policy, a Complainant who wishes to pursue criminal action in addition to, or instead of, making a report under these Procedures should contact law enforcement directly:

- 911 (for emergencies)
- Albemarle County Police ((434) 977-9041) (for non-emergencies)
- City of Charlottesville Police ((434) 970-3280) (for non-emergencies)
- University Police ((434) 924-7166) (for non-emergencies)

The University also offers access to confidential resources for individuals who are unsure about whether to report Prohibited Conduct or are seeking counseling or other emotional support in addition to (or without) making a report to the University. The following guides identify confidential resources, both at the University and in the Charlottesville community, and further explain options for reporting Prohibited Conduct to the University and to law enforcement:

- Students may refer to the Student Resource Guide (Appendix A-1);
- Employees may refer to the Employee Resource Guide (Appendix B-1);
- Third Parties may contact the University's Title IX Coordinator.

Complainants are entitled to receive information, assistance and a broad range of support and remedial measures regardless of whether they choose to pursue criminal and/or University disciplinary resolution of Prohibited Conduct.  The Student and Employee Resource Guides outline these resources and remedial measures and describe how to request them.

## III.    EXPECTATIONS OF COMPLAINANTS AND RESPONDENTS

Pursuant to these Procedures, Complainants and Respondents can expect:

A.  Prompt and equitable resolution of allegations of Prohibited Conduct;

B.  Privacy in accordance with the Title IX Policy and any legal requirements;

C.  Reasonably available interim remedial measures, as described in these Procedures and in the applicable  Resource Guide;

D.  Freedom from Retaliation for making a good faith report of Prohibited Conduct or participating in any proceeding under the Title IX Policy;

E.  The responsibility to refrain from Retaliation directed against any person for making a good faith report of Prohibited Conduct or participating in any proceeding under the Title IX Policy;

F.  The responsibility to provide truthful information in connection with any report, investigation, or resolution of Prohibited Conduct under the Title IX Policy or these Procedures;

G.  The opportunity to articulate concerns or issues about proceedings under the Title IX Policy and these Procedures;

H.  Timely notice of any meeting or proceeding at which the party's presence is contemplated by these Procedures;

I.  The opportunity to choose an advisor, including the right to have that advisor attend any meeting or proceeding at which the party's presence is contemplated by these Procedures;

J.  Written notice of an investigation, including notice of potential Title IX Policy violations and the nature of the alleged Prohibited Conduct;

K.  The opportunity to challenge the Investigator or any member of the Review Panel for bias or conflict of interest;

L.  The opportunity to offer information, present evidence, and identify witnesses during an investigation;

M.  The opportunity to be heard, orally and/or in writing, as to the determination of a Title IX Policy violation and the imposition of any sanction(s);

N.  Timely and equal access to any information that will be used during Alternative or Formal Resolution proceedings and related meetings;

O.  Reasonable time to prepare any response contemplated by these Procedures;

P.  Written notice of any extension of timeframes for good cause; and

Q.  Written notice of the outcome of any Formal Resolution proceedings, including the determination of a Title IX Policy violation, imposition of any sanction(s), and the rationale for each.

## IV.   <u>INITIAL ASSESSMENT</u>

Upon receipt of a report of Prohibited Conduct committed by an Employee, the Title IX Coordinator will make an initial assessment of the reported information and respond to any immediate health or safety concerns raised by the report.  In this initial assessment, the Title IX Coordinator will:

A. Assess the Complainant's safety and well-being and offer the University's immediate support and assistance;

B. Inform the Complainant of the right to seek medical treatment, and explain the importance of obtaining and preserving forensic and other evidence;

C. Inform the Complainant of the right to contact law enforcement, decline to contact law enforcement, and/or seek a protective order;

D. Inform the Complainant about University and community resources, the right to seek appropriate and available remedial and protective measures, and how to request those resources and measures;

E. Inform the Complainant of the right to seek Alternative Resolution (where available) or Formal Resolution under these Procedures; ascertain the Complainant's expressed preference (if the Complainant has, at the time of the initial assessment, expressed a preference) for pursuing Alternative Resolution, Formal Resolution, or neither; and discuss with the Complainant any concerns or barriers to participating in any University investigation and resolution under these Procedures;

F. Explain the University's prohibition against Retaliation and that the University will take prompt action in response to any act of Retaliation;

G. Assess the nature and circumstances of the report, including whether it provides the names and/or any other information that personally identifies the Complainant, the Respondent, any witness, and/or any other third party with knowledge of the reported incident;

H. Ascertain the ages of the Complainant and the Respondent, if known, and, if either of the parties is a minor (under 18), contact the appropriate child protective service agency; and

I. Communicate with appropriate University officials to determine whether the report triggers any Clery Act obligations, including entry of the report in the daily crime log and/or issuance of a timely warning, and take steps to meet those obligations.

The Title IX Coordinator will ensure that the Complainant receives a written explanation of all available resources and options and is offered the opportunity to meet to discuss those resources and options.  When a decision is reached to initiate an investigation or to take any other action

under these Procedures that impacts a Respondent (including the imposition of interim protective measures), the Title IX Coordinator will ensure that the Respondent is notified, receives a written explanation of all available resources and options, and is offered the opportunity to meet to discuss those resources and options.

## V.   THREAT ASSESSMENT

Following the initial assessment, the Title IX Coordinator will promptly forward to an Evaluation Panel all information then known about the reported incident of Prohibited Conduct.  Such information includes, if known, the names and/or any other information that personally identifies the Complainant, the Respondent, any witnesses, and/or any other third parties with knowledge of the reported incident.

### A.  EVALUATION PANEL

An Evaluation Panel will evaluate every report of Prohibited Conduct.  The Evaluation Panel will convene (in person, by telephone, or by videoconference) within 72 hours after receiving information from the Title IX Coordinator, as described above, and will convene again, as necessary, to review new information as it becomes available. The Evaluation Panel may include any and all members of the University's Threat Assessment Team and shall include, at a minimum: (1) the Title IX Coordinator, (2) a representative of the University Police Department (the "UPD Representative"), and (3) a representative from the Division of Student Affairs.   In addition, the Evaluation Panel may include a representative from Human Resources or the Office of the Provost, depending on the circumstances of the reported incident and the status of the Complainant and the Respondent.

The Evaluation Panel operates pursuant to Va. Code § 23.1-806 (the "Virginia Reporting Statute") and has access, under Virginia law, to certain otherwise confidential information, including law enforcement records, criminal history record information, as provided in Va. Code § 19.2-389 and § 19.2-389.1; health records, as provided in Va. Code § 32.1-127.1:03; University disciplinary, academic and/or personnel records; and any other information or evidence known to the University or to law enforcement.  The Evaluation Panel may seek additional information about the reported incident through any other legally permissible means.

### B.  HEALTH AND SAFETY THREAT ASSESSMENT

1.   **Risk Factors**. The Evaluation Panel will determine whether the reported information and any other available information provides a rational basis for concluding that there is a threat to the health or safety of the Complainant or to any other member of the University community.  The Evaluation Panel will make this determination based upon a review of the totality of the known circumstances, and will be guided by a consideration of the following factors (the "Risk Factors"):

- Whether the Respondent has prior arrests, is the subject of prior reports and/or complaints related to any form of Prohibited Conduct, or has any history of violent behavior;
- Whether the Respondent has a history of failing to comply with any University No-Contact Directive, other University protective measures, and/or any judicial protective order;
- Whether the Respondent has threatened to commit violence or any form of Prohibited Conduct;
- Whether the Prohibited Conduct involved multiple Respondents;
- Whether the Prohibited Conduct involved physical violence. "Physical violence" means exerting control over another person through the use of physical force. Examples of physical violence include hitting, punching, slapping, kicking, restraining, choking and brandishing or using any weapon;
- Whether the report reveals a pattern of Prohibited Conduct (e.g., by the Respondent, by a particular group or organization, around a particular recurring event or activity, or at a particular location);
- Whether the Prohibited Conduct was facilitated through the use of "date-rape" or similar drugs or intoxicants;
- Whether the Prohibited Conduct occurred while the Complainant was unconscious, physically helpless or unaware that the Prohibited Conduct was occurring;
- Whether the Complainant is (or was at the time of the Prohibited Conduct) a minor (under 18); and/or
- Whether any other aggravating circumstances or signs of predatory behavior are present.

2. **Disclosure(s) of Information to Law Enforcement**.  Pursuant to the Virginia Reporting Statute, the Evaluation Panel is *required* to disclose information about alleged Prohibited Conduct to law enforcement in the following circumstances:

a) If the Evaluation Panel (or, in the absence of consensus within the Evaluation Panel, the UPD Representative) concludes that there is a significant and articulable threat to the health or safety of the Complainant or to any other member of the University community and that disclosure of available information (including the names and any other information that personally identifies the Complainant, the Respondent, any witnesses, and/or any other third parties with knowledge of the reported incident) is necessary to protect the health or safety of the Complainant or other individuals, the UPD Representative will immediately disclose the information to the law enforcement agency that would be responsible for investigating the alleged act of Prohibited Conduct.[3]  The Evaluation Panel will make this determination based upon a review of the totality of the known circumstances and consideration of the list of Risk Factors, as described in Section V.B.1 of these Procedures. The Title IX Coordinator will promptly notify

[3] Where the law enforcement agency that would be responsible for investigating the alleged act of Prohibited Conduct is located outside of the United States, this disclosure is not required by the Virginia Reporting Statute.

the Complainant whenever such disclosure has been made.

b) If the alleged act of Prohibited Conduct constitutes a felony violation of the Code of Virginia, the UPD Representative will so inform the other members of the Evaluation Panel and will, within 24 hours, (i) consult with the appropriate Commonwealth's Attorney or other prosecutor who would be responsible for prosecuting the alleged act of Prohibited Conduct (the "Prosecuting Authority"), and (ii) disclose to the Prosecuting Authority the information then known to the Evaluation Panel.  This disclosure is required by the Virginia Reporting Statute where the alleged act of Prohibited Conduct would violate Article 7 (§18.2-61 et seq.) of Chapter 4 of title 18.2 of the Code of Virginia. Such disclosure will exclude the names and any other information that personally identifies the Complainant, the Respondent, any witnesses, and/or any other third parties with knowledge of the reported incident (the "Identifying Information"), unless the Identifying Information was disclosed to law enforcement under the health and safety exception described in paragraph (a), above, in which case the Identifying Information also will be disclosed to the Prosecuting Authority.  If the UPD Representative declines to so consult with the Prosecuting Authority, any member of the Evaluation Panel who individually concludes that the alleged act of Prohibited Conduct would constitute such a felony violation may consult with the Prosecuting Authority and make the required disclosure(s) in the manner and within the timeframe set forth above.

The Evaluation Panel will reconvene as necessary to continue to evaluate whether any new or additional information received triggers any further obligation(s) under the Clery Act or with respect to any child protective service agency, and will direct the Title IX Coordinator to take such further actions, as necessary.

C.  UNIVERSITY ACTIONS FOLLOWING HEALTH AND SAFETY THREAT ASSESSMENT

Upon completion of the health and safety threat assessment, the Evaluation Panel will determine the course of action under these Procedures, which may include, without limitation, Formal Resolution and/or Alternative Resolution (if available).  Where the Complainant requests that personally-identifying information not be shared with the Respondent, that no investigation be pursued, and/or that no further action be taken, the Evaluation Panel will seek to honor the preferences of the Complainant wherever possible. In all cases, the initial report, the health and safety threat assessment, and the determinations of the Evaluation Panel will be documented and retained by the University in accordance with applicable law.

1.  **Where the Complainant Wishes to Pursue Formal Resolution**. In *every* case in which a Complainant reports Prohibited Conduct and requests an investigation and disciplinary action, the Title IX Coordinator will promptly initiate Formal Resolution under these Procedures.

**2.** **Where the Complainant Requests Anonymity, that an Investigation not be Pursued, and/or that No Disciplinary Action Be Taken.** A Complainant may request that personally-identifying information not be shared with the Respondent, that no investigation be pursued, and/or that no disciplinary action be taken.

The Evaluation Panel will consider the following factors in evaluating such request(s): (1) the totality of the known circumstances; (2) the presence of any Risk Factors, as described in Section V.B.1 of these Procedures; (3) the potential impact of such action(s) on the Complainant; (4) any evidence showing that the Respondent made statements of admission or otherwise accepted responsibility for the Prohibited Conduct; (5) the existence of any independent information or evidence regarding the Prohibited Conduct; and (6) any other available and relevant information.  The University will seek to honor the Complainant's request(s) if it is possible to do so while also protecting the health and safety of the Complainant and the University community.

a)  Determination that a Complainant's Request(s) *Can* be Honored.  Where the Evaluation Panel determines that a Complainant's request(s) (that personally-identifying information not be shared with the Respondent, that no investigation be pursued, and/or that no disciplinary action be taken) *can* be honored, the University may nevertheless take other appropriate steps designed to eliminate the reported conduct, prevent its recurrence, and remedy its effects on the Complainant and the University community.  Those steps may include offering appropriate remedial measures to the Complainant, providing targeted training or prevention programs, and/or providing or imposing other remedies tailored to the circumstances as a form of Alternative Resolution.

At any time, the Complainant may choose to pursue Alternative Resolution (if available) or Formal Resolution under these Procedures.  The Title IX Coordinator also may request that a report be re-opened and pursued under these Procedures if any new or additional information becomes available.[4]

b)  Determination that a Complainant's Request(s) *Cannot* be Honored. Where the Evaluation Panel has determined that a Complainant's request(s) (that personally-identifying information not be shared with the Respondent, that no investigation be pursued, and/or that no disciplinary action be taken) *cannot* be honored (i.e., because honoring the Complainant's request(s) would impede the University's ability to ensure the health and safety of the Complainant and other members of the University community), the Evaluation Panel will direct the Title IX Coordinator to take any appropriate University actions, which may include, without limitation, (i) causing the Respondent's supervisor, in consultation with the relevant Human Resources representative, to impose a No Contact Directive and/or to place the Respondent on pre-disciplinary leave, with or without pay; (ii) initiating an investigation and Formal Resolution under these Procedures; and/or

---

[4] Although a report may be re-opened at any time, the University will only be able to pursue disciplinary resolution and sanctions where the Respondent continues to be a University "Employee."

(iii) arranging, imposing, or extending any other appropriate remedial and/or protective measures.

Where the Evaluation Panel has determined that the University must proceed with an investigation despite a Complainant's request to the contrary, the Title IX Coordinator will make reasonable efforts to protect the privacy of the Complainant. However, actions that may be required as part of the University's investigation will involve speaking with the Respondent and others who may have relevant information, in which case the Complainant's identity may have to be disclosed. In such cases, the Title IX Coordinator will notify the Complainant that the University intends to proceed with an investigation, but that the Complainant is not required to participate in the investigation or in any other actions undertaken by the University.

Where a Complainant declines to participate in an investigation, the University's ability to meaningfully investigate and respond to a report may be limited. In such cases, the Title IX Coordinator may pursue the report if it is possible to do so without the Complainant's participation in the investigation or resolution (e.g., where there is other relevant evidence of the Prohibited Conduct, such as recordings from security cameras, corroborating reports from other witnesses, physical evidence, or any evidence showing that the Respondent made statements of admission or otherwise accepted responsibility for the Prohibited Conduct). In the absence of such other evidence, however, the University will only be able to respond to the report in limited and general ways (i.e., through the provision of remedial measures, targeted training or prevention programs, or other remedies tailored to the circumstances).

## D.  NOTICE TO COMPLAINANT AND RESPONDENT OF UNIVERSITY ACTIONS

The Title IX Coordinator will promptly inform the Complainant of any action(s) undertaken by the University to respond to a health or safety threat to the Complainant or the University community, including the decision to proceed with an investigation. The Title IX Coordinator also will promptly inform the Respondent of any action(s) (including any interim protective measures) that will directly impact the Respondent, and provide an opportunity for the Respondent to respond to such action(s). The Title IX Coordinator retains the discretion to impose and/or modify any interim protective measures based on all available information. Interim protective measures will remain in effect through resolution of the report by the appropriate University executive, unless new circumstances arise which warrant reconsideration of the protective measures prior to the Review Panel Meeting and/or Executive Review. A Complainant or Respondent may challenge interim protective measures or other actions, or failure to impose interim protective measures or take other actions, by contacting the Title IX Coordinator to address any concerns.

Archived - Employee Procedures
For reports from March 30, 2015 - August 13, 2020

## VI.  <u>UNIVERSITY RESOLUTION</u>

These Procedures offer two forms of resolution of reports of Prohibited Conduct: (1) Alternative Resolution (as described in Section VI.A of these Procedures), which includes a variety of informal options for resolving reports, and (2) Formal Resolution, which involves an investigation and review and sanction (if applicable) by a Review Panel and the appropriate University executive (as described in Section VI.B of these Procedures).

### A.  ALTERNATIVE RESOLUTION

The Complainant may seek Alternative Resolution in place of an investigation and Formal Resolution.  The University, however, has the discretion to determine whether the nature of the reported conduct is appropriate for Alternative Resolution, to determine the type of Alternative Resolution that may be appropriate in a specific case and, pursuant to Section V.C of these Procedures, to refer a report for Formal Resolution at any time.  In addition, Alternative Resolution may not be available where the Evaluation Panel has determined that one or more of the Risk Factors listed in Section V.B.1 of these Procedures is present. **Forms of Alternative Resolution that involve face-to-face meetings between the Complainant and the Respondent, such as mediation, are not available (a) in cases involving Sexual Assault, and/or (b) where the Complainant is a Student and the Respondent is an Employee in a position of authority over the Complainant.**

Participation in Alternative Resolution (including any specific form of Alternative Resolution) is voluntary.  The University will not compel a Complainant or Respondent to engage in Alternative Resolution, will not compel a Complainant to directly confront the Respondent, and will allow a Complainant or Respondent to withdraw from Alternative Resolution at any time.  The University may decline the request for Alternative Resolution in any particular case and may terminate an ongoing Alternative Resolution process at any time. Pursuing Alternative Resolution does not preclude later use of Formal Resolution if the Alternative Resolution fails to achieve a resolution acceptable to the parties and the University.  Where the Complainant or the Respondent withdraws from Alternative Resolution or where Alternative Resolution is otherwise terminated for any reason, any statements or disclosures made by the parties during the course of the Alternative Resolution may be considered in a subsequent investigation and Formal Resolution.

With any form of Alternative Resolution, each party has the right to choose and consult with an advisor. The advisor may be any person, including an attorney, who is not otherwise a party or witness to the reported incident(s). The parties may be accompanied by their respective advisors at any meeting or proceeding held as part of Alternative Resolution.  While the advisors may provide support and advice to the parties at any meeting and/or proceeding, they may not speak on behalf of the parties or otherwise participate in, or in any manner disrupt, such meetings and/or proceedings.

Alternative Resolution may involve individual and/or community remedies that are designed to address a report of Prohibited Conduct, such as:

- <u>One-on-One Communication</u>: If a Complainant wishes to address a situation with a Respondent without the direct involvement of a third party, the Complainant may communicate directly with the Respondent.  This form of Alternative Resolution is appropriate only if the Complainant does not feel threatened, there is no risk of physical harm, and the Complainant reasonably believes the Respondent will be receptive to the communication. **Complainants are NOT required to engage in one-on-one communication before seeking third party assistance or other help.**

- <u>Resolution with the Assistance of a Third Party</u>: A Complainant may seek assistance in informally resolving a report of Prohibited Conduct from (i) the Complainant's supervisor, if the Complainant is an Employee; (ii) the Respondent's supervisor; (iii) the Human Resources professional(s) for the department and/or unit of either the Complainant or the Respondent; (iv) University Human Resources Consulting Services or Health System Human Resources Office of Employee Relations; (v) the Office of the Provost (Faculty); (vi) the Office of Equal Opportunity Programs (EOP); (vii) the Title IX Coordinator; or (viii) a trained mediator.  The availability of this form of Alternative Resolution, and any resolution reached through such form of Alternative Resolution, is subject to the agreement of the Title IX Coordinator, the Complainant, and the Respondent.  Any of the foregoing third parties must consult with the Title IX Coordinator before taking action to resolve a report of Prohibited Conduct. This form of Alternative Resolution may not be used where the allegation involves Sexual Assault.

- <u>Interventions and Remedies</u>**:** Alternative Resolution agreements may involve a host of other interventions and remedies, such as actions designed to maximize the Complainant's access to educational, extracurricular, and/or University employment activities; increased monitoring, supervision, and/or security at locations or activities where the Prohibited Conduct occurred or is likely to reoccur; targeted or broad-based educational programming or training for relevant individuals or groups; academic and/or University housing modifications for Student Complainants; workplace modifications for Employee Complainants; one or more of the restorative remedies or other sanctions described in these Procedures, including suspension and termination, in accordance with relevant disciplinary procedures; and/or any other remedial or protective measures that can be tailored to the involved individuals to achieve the goals of the Title IX Policy.

Any form of Alternative Resolution and any combination of interventions and remedies may be utilized.  If an agreement acceptable to the University, the Complainant, and the Respondent is reached through Alternative Resolution, the terms of the agreement are implemented and the matter is resolved and closed.  If an agreement is not reached, and the Title IX Coordinator determines that further action is necessary, or if a Respondent fails to comply with the terms of the Alternative Resolution, the matter may be referred for an investigation and Formal Resolution under these Procedures.

The Title IX Coordinator will maintain records of all reports and conduct referred for Alternative Resolution, which typically will be completed within thirty (30) calendar days.

B. FORMAL RESOLUTION

Formal Resolution is commenced when:

- A Complainant reports that an Employee has engaged in one or more instances of Prohibited Conduct and requests, at any time, an investigation and disciplinary action; or
- Alternative Resolution does not resolve a reported incident of Prohibited Conduct and, in the Title IX Coordinator's discretion, an investigation of the report of Prohibited Conduct is required; or
- At the conclusion of the threat assessment process described in Section V.B of these Procedures, the Evaluation Panel has determined, based upon a review of the totality of the circumstances and guided by a consideration of the Risk Factors, that investigation of the reported conduct is necessary to ensure the health and safety of the Complainant and/or other members of the University community, notwithstanding the Complainant's request that personally-identifying information not be shared with the Respondent, that no investigation be pursued, and/or that no disciplinary action be taken.

1. **Investigation**. Whenever Formal Resolution is commenced, the Title IX Coordinator will designate one or more Investigators from the University's Office for Equal Opportunity and Civil Rights (EOCR) and/or an experienced external investigator to conduct a prompt, thorough, fair, and impartial investigation. All Investigators will receive annual training on issues related to sexual and gender-based harassment, sexual assault, dating violence, domestic violence, and stalking, and on how to conduct an investigation that is fair and impartial, provides parties with notice and a meaningful opportunity to be heard, and protects the safety of Complainants and the University community while promoting accountability.

   a) Notice of Investigation. The Title IX Coordinator will notify the Complainant and the Respondent, in writing, of the commencement of an investigation. Such notice will (1) identify the Complainant and the Respondent; (2) specify the date, time (if known), location, and nature of the alleged Prohibited Conduct; (3) identify potential Title IX Policy violation(s); (4) identify the Investigator; (5) include information about the parties' respective expectations under the Title IX Policy and these Procedures; (6) explain the prohibition against Retaliation; (7) instruct the parties to preserve any potentially relevant evidence in any format; (8) inform the parties how to challenge participation by the Investigator on the basis of bias or a conflict of interest; and (9) provide a copy of the Title IX Policy and these Procedures.

   The Title IX Coordinator will also notify, in writing, the Respondent's supervisor, Human Resources of the appropriate agency, (i.e., University Human Resources or Health System Employee Relations) and, if applicable,

the Human Resources professional of the particular school/department/unit that an investigation has been initiated.  Such notice will inform these individuals that (1) the Title IX Coordinator has received a report alleging that the Respondent has engaged in  Prohibited Conduct under the Title IX Policy; (2) the report will be investigated in accordance with these Procedures; (3) the supervisor and the Human Resources professional are obliged to monitor the relevant environment, depending on the facts of the case, for Retaliation; and (4) information related to the report is confidential (including the identity of the Complainant) and will only be shared as needed to either obtain information pertinent to the investigation or to facilitate fulfillment of the duty of the supervisor and/or Human Resources to address any concerns regarding safety or Retaliation.

b)  <u>Other Forms of Discriminatory and/or Harassing Conduct</u>.  If a report of Prohibited Conduct also implicates other forms of discriminatory and/or harassing conduct prohibited by the University's <u>Preventing and Addressing Discrimination and Harassment</u> (PADH) policy, the Title IX Coordinator will evaluate all reported allegations to determine whether the alleged Prohibited Conduct and the alleged PADH violation(s) may be appropriately investigated together without unduly delaying the resolution of the report of Prohibited Conduct. Where the Title IX Coordinator determines that a single investigation is appropriate, the determination of responsibility for the violation of University policy will be evaluated under the applicable policy (i.e., the Title IX Policy and/or the PADH policy), but the investigation and resolution will be conducted in accordance with these Procedures.

c)  <u>Presumption of Non-Responsibility and Participation by the Parties</u>.  The investigation is a neutral fact-gathering process.  The Respondent is presumed to be not responsible; this presumption may be overcome only where the Investigator and/or Review Panel conclude that there is sufficient evidence, by a Preponderance of the Evidence, to support a finding that the Respondent violated the Title IX Policy. Neither party is required to participate in the investigation or any form of resolution under these Procedures, and the Investigator will not draw any adverse inference from a decision by either of the parties not to participate.

d)  <u>Timeframe for Completion of Investigation; Extension for Good Cause</u>.  Typically, the period from commencement of an investigation through resolution (finding and sanction, if any) will not exceed sixty (60) calendar days.  This timeframe may be extended for good cause, which may exist if additional time is necessary to ensure the integrity and completeness of the investigation, to comply with a request by external law enforcement for temporary delay to gather evidence for a criminal investigation, to accommodate the availability of witnesses, to account for University breaks or vacations, to account for complexities of a case, including the number of witnesses and volume of information provided by the parties, or for other

legitimate reasons.  The Investigator will notify the parties in writing of any extension of this timeframe and the reason for such extension.

e)  <u>Overview of Investigation</u>.  During the investigation, the parties will have an equal opportunity to be heard, to submit information and corroborating evidence, to identify witnesses who may have relevant information, and to submit questions that they believe should be directed by the Investigator to each other or to any witness. The Investigator will notify and seek to meet separately with the Complainant, the Respondent, and third-party witnesses, and will gather other relevant and available evidence and information, including, without limitation, electronic or other records of communications between the parties or witnesses (via voice-mail, text message, email and social media sites), photographs (including those stored on computers and smartphones), and medical records (subject to the consent of the applicable party).

f)  <u>Advisors</u>. Throughout the investigation and resolution process, each party has the right to choose and consult with an advisor. The advisor may be any person, including an attorney, who is not otherwise a party or witness involved in the investigation. The parties may be accompanied by their respective advisors at any meeting or proceeding related to the investigation and resolution of a report under these Procedures.  While the advisors may provide support and advice to the parties at any meeting and/or proceeding, they may not speak on behalf of the parties or otherwise participate in, or in any manner disrupt, such meetings and/or proceedings.

g)  <u>Prior or Subsequent Conduct</u>.  Prior or subsequent conduct of the Respondent may be considered in determining pattern, knowledge, intent, motive, or absence of mistake.  For example, evidence of a pattern of Prohibited Conduct by the Respondent, either before or after the incident in question, regardless of whether there has been a prior finding of a Title IX Policy violation, may be deemed relevant to the determination of responsibility for the Prohibited Conduct under investigation. The determination of relevance of pattern evidence will be based on an assessment of whether the previous or subsequent conduct was substantially similar to the conduct under investigation or indicates a pattern of similar Prohibited Conduct.  Such prior or subsequent conduct may also constitute a violation of the PADH policy and/or other University policy, in which case it may subject the Respondent to additional sanctions.  The Investigator will determine the relevance of this information and both parties will be informed if evidence of prior or subsequent conduct is deemed relevant.

h)  <u>Prior Sexual History</u>.  The sexual history of a Complainant or Respondent will never be used to prove character or reputation.  Moreover, evidence related to the prior sexual history of either of the parties is generally not relevant to the determination of a Title IX Policy violation and will be considered only in limited circumstances.  For example, if the existence of Affirmative Consent is at issue, the sexual history between the parties may be relevant to help

understand the manner and nature of communications between the parties and the context of the relationship, which may have bearing on whether Affirmative Consent was sought and given during the incident in question.  However, even in the context of a relationship, Affirmative Consent to one sexual act does not, by itself, constitute Affirmative Consent to another sexual act, and Affirmative Consent on one occasion does not, by itself, constitute Affirmative Consent on a subsequent occasion. In addition, prior sexual history may be relevant to explain the presence of a physical injury or to help resolve another question raised by the report. The Investigator will determine the relevance of this information and both parties will be informed if evidence of prior sexual history is deemed relevant.

i) <u>Relevance</u>.  The Investigator has the discretion to determine the relevance of any proffered evidence and to include or exclude certain types of evidence. In general, the Investigator will not consider statements of personal opinion, rather than direct observations or reasonable inferences from the facts, or statements as to any party's general reputation for any character trait.

j) <u>Site Visit(s)</u>. The Investigator may visit relevant sites or locations and record observations through written, photographic, or other means.

k) <u>Expert Consultation(s)</u>.  The Investigator may consult medical, forensic, technological or other experts when expertise on a topic is needed in order to achieve a fuller understanding of the issues under investigation.

l) <u>Coordination with Law Enforcement</u>.  The Investigator will contact any law enforcement agency that is conducting its own investigation to inform that agency that a University investigation is also in progress; to ascertain the status of the criminal investigation; and to determine the extent to which any evidence collected by law enforcement may be available to the University in its investigation.  At the request of law enforcement, the Investigator may delay the University investigation temporarily while an external law enforcement agency is gathering evidence. The Investigator will promptly resume the University investigation when notified that law enforcement has completed the evidence-gathering stage of its criminal investigation.

m) <u>Draft Investigation Report</u>.  At the conclusion of the investigation, the Investigator will prepare a Draft Investigation Report summarizing the information gathered and outlining the contested and uncontested information. The Draft Investigation Report will not include any findings. The Complainant and the Respondent will have an opportunity to review the Draft Investigation Report; meet with the Investigator; submit additional comments and information to the Investigator; identify any additional witnesses or evidence for the Investigator to pursue; and submit any further questions that they believe should be directed by the Investigator to the other party or to any witness. The Investigator will designate a reasonable time for this review and response by the parties, not to exceed five (5) calendar days.  In the absence of good cause,

information discoverable through the exercise of due diligence that is not provided to the Investigator during the designated review and response period will not be considered in the determination of responsibility for a violation of the Title IX Policy, and will not be considered by the Review Panel.

n) <u>Final Investigation Report</u>. Unless there are significant additional investigative steps requested by the parties or identified by the Investigator, within five (5) calendar days after receipt and consideration of any additional comments, questions and/or information submitted by the parties during the designated review and response period, the Investigator will prepare a Final Investigation Report, which will include a recommendation as to whether there is sufficient evidence, by a Preponderance of the Evidence, to support a finding of responsibility for a violation of the Title IX Policy (and, where applicable, the PADH policy).  In reaching this recommended finding, the Investigator will consult with the Office of University Counsel.  The Investigator will deliver the Final Investigation Report to the Title IX Coordinator.   The Title IX Coordinator will notify both parties, simultaneously, that the Final Investigation Report is complete and available for review.

o) <u>Recommended Finding(s) of Responsibility</u>.  When the Investigator determines that there is sufficient evidence, by a Preponderance of the Evidence, to support a finding of responsibility on one or more of the allegations, the Respondent may accept or contest such recommended finding(s) by so notifying the Title IX Coordinator, in writing. If the Respondent accepts the recommended finding(s) of responsibility, the Title IX Coordinator will refer the case to the appropriate University executive solely on the issue of sanction, as outlined in Section VI.B.4(b) of these Procedures.  If the Respondent contests one or more of the recommended finding(s), the Respondent may submit to the Title IX Coordinator a written statement explaining why the Respondent contests such finding(s). The Title IX Coordinator will ensure that the Complainant has an opportunity to review and respond in writing to any such statement. The Title IX Coordinator will provide the Final Investigation Report, together with any statements by the parties, to the Review Panel for further proceedings as outlined in Section VI.B.3 of these Procedures.

p) <u>Recommended Finding(s) of No Responsibility</u>.   When the Investigator determines that there is insufficient evidence, by a Preponderance of the Evidence, to support a finding of responsibility on one or more of the allegations, the Complainant may accept or contest the recommended finding(s) by so notifying the Title IX Coordinator, in writing.  If the Complainant accepts the recommended finding(s) of no responsibility, the investigation will be closed and documented in accordance with applicable University policies.  If the Complainant contests one or more of the recommended finding(s), the Complainant may submit to the Title IX Coordinator a written statement explaining why the Complainant contests such finding(s). The Title IX Coordinator will ensure that the Respondent has an opportunity to review and

respond in writing to any such statement. The Title IX Coordinator will provide the Final Investigation Report, together with any statements by the parties, to the Review Panel for further proceedings as outlined in Section VI.B.3 of these Procedures.

q) <u>Impact and Mitigation Statements</u>. Where there is a finding of responsibility on one or more of the allegations, both parties may submit a statement to the Title IX Coordinator for consideration by the Review Panel in determining an appropriate sanction. The Complainant may submit a written statement describing the impact of the Prohibited Conduct on the Complainant and expressing a preference about the sanction(s) to be imposed. The Respondent may submit a written statement explaining any factors that the Respondent believes should mitigate or otherwise be considered in determining the sanctions(s) imposed. The Title IX Coordinator will ensure that each of the parties has an opportunity to review any statement submitted by the other party. The Title IX Coordinator will provide any statement(s) with the Final Investigation Report and the parties' other written submissions to the Review Panel.

r) <u>Timing of Investigation</u>. The investigation typically will be completed within thirty-five (35) calendar days. This period may be extended to account for a previous attempt, if any, at Alternative Resolution, or for other good cause, as described in Section VI.B.1(d) of these Procedures. Any extension, other than for Alternative Resolution, and the reason for the extension, will be shared with the parties in writing.

2. **Acceptance of Responsibility**. The Respondent may, at any time, elect to resolve the Formal Resolution process by accepting responsibility for the Prohibited Conduct, in which case the Title IX Coordinator will refer the matter to the Respondent's executive for imposition of sanction(s).

3. **Review Panel Meeting**. The Title IX Coordinator will appoint a standing pool of trained members of the University community and, at the discretion of the Title IX Coordinator, external professionals with experience adjudicating cases of Prohibited Conduct. The Title IX Coordinator will select (a) three members from this pool to serve on the Review Panel, and (b) an additional member from this pool to serve as the non-voting Meeting Chair. Where the Respondent is an academic faculty member, at least two of the voting members of the Review Panel will be appropriately trained full-time faculty members, one of whom will be appointed by the Executive Council of the Faculty Senate, if possible. The Review Panel will review the Investigator's recommended finding(s) and, if applicable, recommend any appropriate sanction(s) under these Procedures. All persons serving on any Review Panel (or as the Meeting Chair) must be impartial and free from actual bias and conflict of interest.

a) <u>Standard of Review</u>.  If either of the parties contests the Investigator's recommended finding(s) of responsibility (or no responsibility) for an alleged violation of the Title IX Policy, the Review Panel will hold a Meeting to determine (1) whether the concerns stated by the contesting party raise substantial doubt about the thoroughness, fairness and/or impartiality of the investigation; and, if not, (2) whether there is sufficient evidence to support the Investigator's recommended finding(s) by a Preponderance of the Evidence.

b) <u>Notice and Timing of Meeting</u>. Typically, a Meeting will be held within forty-five (45) calendar days from the date of the Notice of Investigation, subject to extension for good cause, as described in Section VI.B.1(d) of these Procedures. The Meeting Chair will notify the parties in writing of the date, time, and location of the Meeting; the names of the Review Panel members and the Meeting Chair; and how to challenge participation by any member of the Review Panel or the Meeting Chair for bias or conflict of interest.  The Meeting will usually be scheduled within five (5) calendar days from the date of the Notice of Meeting, subject to extension for good cause at the discretion of the Title IX Coordinator.  Good cause for extension may include the unavailability of the parties, the timing of semester breaks or University holidays, or other extenuating circumstances.  Any extension, including the reason for the extension, will be shared with the parties in writing.

c) <u>Postponement of Meeting</u>. Permission to postpone a Meeting may be granted provided that the request to do so is based on a compelling emergency and communicated to the Meeting Chair prior to the time of the Meeting.

d) <u>Meeting Format</u>. The Meeting is an opportunity for the parties to address the Review Panel, in person, about issues relevant to the Standard of Review to be applied by the Review Panel. The parties may address any information in the Final Investigation Report, supplemental statements submitted in response to the Final Investigation Report, and any impact and mitigation statements.  Each party has the opportunity to be heard, to identify witnesses for the Review Panel's consideration, and to respond to any questions of the Review Panel. The parties may not directly question each another or any witness, although they may proffer questions for the Review Panel, which may choose, in its discretion, to pose appropriate and relevant questions to the Investigator, the parties and/or any witnesses.  A typical Meeting may include brief opening remarks by the Complainant and/or Respondent, with follow-up questions posed by the Review Panel; information presented by the Investigator or witnesses deemed relevant by the Review Panel, with follow-up questions by the Review Panel of the Investigator or witnesses; and brief concluding remarks by the Complainant and/or Respondent.  The Meeting Chair has the discretion to determine the specific Meeting format.

e) <u>Participation in Meeting</u>.

Archived - Employee Procedures
For reports from March 30, 2015 - August 13, 2020

i. <u>Parties</u>. Both the Complainant and the Respondent have a right to be present at the Meeting. Either party may request alternative methods for participating in the Meeting that do not require physical proximity to the other party, including participating through electronic means.  This request should be submitted to the Meeting Chair at least two (2) calendar days prior to the Meeting.

If, despite being notified of the date, time, and location of the Meeting, either party is not in attendance, the Meeting may proceed and applicable sanctions may be recommended.  Neither party is required to participate in the Meeting in order for the Meeting to proceed.

ii. <u>Investigator or other witnesses</u>.  The Review Panel may request the presence of the Investigator or any other witness it deems necessary to its determination.  The parties may also request the presence of any witness they deem relevant to the determination by the Review Panel.  The Review Panel has absolute discretion to determine which witnesses are relevant to its determination and may decline to hear from witnesses where it concludes that the information is not necessary for its review.

iii. <u>Advisors</u>.  Both the Complainant and the Respondent have the right to be accompanied at the Meeting by an advisor of their choosing.  The advisor may be anyone, including an attorney, who is not otherwise a party or witness. While the advisor may provide support and advice to a party at the Meeting, the advisor may not speak on behalf of the party or otherwise participate in, or in any manner disrupt, the Meeting.  The University reserves the right to remove any individual whose actions are disruptive to the proceedings.

f) <u>Determination by the Review Panel</u>. Where either of the parties has contested the recommended finding(s) of responsibility, the members of the Review Panel will, at the conclusion of the Meeting, determine, by majority vote, (1) whether the concern(s) stated by the contesting party raise substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation; and, if not, (2) whether there is sufficient evidence to support the Investigator's recommended finding(s) by a Preponderance of the Evidence.

If the Review Panel finds that concerns stated by the contesting party raise substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation, it will remand the matter to the Title IX Coordinator with instructions for further investigation or other action.  The instructions may include guidance regarding the scope of information to be further investigated and any appropriate stipulations, including the appointment of a new Investigator.

If the Review Panel finds no cause for substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation, but determines there is

insufficient evidence to support the Investigator's recommended finding, it may remand the matter for further investigation or reject the Investigator's recommended finding(s) and make alternative finding(s), which will be forwarded to the appropriate executive for further review, as described in Section VI.B.4 of these Procedures.

If the Review Panel finds no cause for substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation *and* affirms that there is sufficient evidence to support a recommended finding of responsibility by a Preponderance of the Evidence, such decision will be forwarded to the appropriate executive for further review, as described in Section VI.B.4 of these Procedures. Where the Review Panel has affirmed a recommended finding(s) of responsibility, the Review Panel will also, by majority vote, recommend sanction(s).  The scope of possible sanctions will be dependent upon the employee disciplinary procedures applicable to the Respondent, but will include one or more of the following: informal and formal counseling, progressive disciplinary action, No-Contact Directive, transfer of position, removal of administrative appointment, demotion, suspension, and/or termination of employment.

If the Review Panel finds no cause for substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation *and* affirms a recommended finding of no responsibility, the matter will be considered resolved and the investigation will be closed. The Meeting Chair will provide notice of the decision to the Title IX Coordinator, who will issue a Final Outcome Letter to the parties as outlined in Section VI.B.4(d).  The Title IX Coordinator may nevertheless ensure that remedial measures remain in effect to support a Complainant.

g) <u>Notice of Review Panel Determination</u>.  Within five (5) days of the Review Panel Meeting, the Meeting Chair will notify in writing (which may include email) the Complainant, the Respondent, and the appropriate executive in the Respondent's chain of command (Executive Vice President for academic faculty and other employees reporting directly to an EVP; Vice President for other employees) of the Review Panel's determination of responsibility and the recommended sanction, if applicable.  At the time of this notice, the Meeting Chair will also forward to the appropriate executive a confidential copy of the Final Investigative Report and any accompanying supplemental statements ("Decision Packet").

## 4. **Executive Review; Sanction; Notice of Outcome**

a) <u>Executive Review of Review Panel Decision and Recommended Sanction</u>**.** Upon receipt of notice from the Review Panel and the Decision Packet, the appropriate executive will have seven (7) days to review all the foregoing information, affirm or reject the Review Panel's decision on the finding of

responsibility under the Title IX Policy and, if applicable, determine the sanction(s) in accordance with the disciplinary procedures appropriate for the type of Employee.

b) <u>Sanctions</u>. Where disciplinary action is recommended, such action, as described in Section VI.B.3(f) above, may include one or more of the following: informal and formal counseling, progressive disciplinary action, No-Contact Directive, transfer of position, removal of administrative appointment, demotion, suspension, and termination of employment.

The Title IX Policy prohibits a broad range of conduct, all of which is serious in nature.  The propriety of any particular sanction is reviewed on an individual basis based on the unique facts and circumstances outlined in the Decision Packet.  In keeping with the University's commitment to foster an environment that is safe, inclusive, and free from discrimination and harassment, the Title IX Policy provides the appropriate executive with wide latitude in the imposition of sanctions tailored to the facts and circumstances of the Prohibited Conduct, the impact of the conduct on the Complainant and University community, and accountability for the Respondent.   The imposition of sanctions is designed to eliminate Prohibited Conduct, prevent its recurrence, and remedy its effects, while supporting the University's educational mission and legal obligations.   Sanctions may include educational, restorative, rehabilitative, and punitive components.   Some conduct, however, is so egregious in nature, harmful to the individuals involved or so deleterious to the educational process that it requires severe sanctions, including suspension or termination of employment from the University.

Once the appropriate executive has determined that there is sufficient evidence, by a Preponderance of the Evidence, to support a finding of responsibility under the Title IX Policy, any one or more sanctions may be imposed.  In determining the appropriate sanction(s), the appropriate executive will be guided by a number of considerations, including:

- The severity, persistence or pervasiveness of the Prohibited Conduct;
- The nature or violence (if applicable) of the Prohibited Conduct;
- The impact of the Prohibited Conduct on the Complainant;
- The impact or implications of the Prohibited Conduct within the University community;
- Prior misconduct by the Respondent, including the Respondent's relevant prior disciplinary history, at the University or elsewhere, and any criminal convictions;
- Whether the Respondent has accepted responsibility for the Prohibited Conduct;
- The maintenance of a safe, nondiscriminatory and respectful environment conducive to learning; and
- Any other mitigating, aggravating, or compelling factors.

The executive will consult with other administrators as needed, including Human Resources, the Office of the Provost, and the Title IX Coordinator, to ensure that any disciplinary action is appropriate for the violation and consistent with the disciplinary procedures for the Employee type and prior University action for similar policy violations. The executive will also determine any other appropriate actions, which may include (1) imposing or extending a No-Contact Directive; (2) imposing or extending academic, University housing and/or University employment modifications; (3) other restorative remedies for the Respondent, such as formal referral to the Faculty and Employee Assistance Program and education and training that encourage the Respondent to develop insight about the Prohibited Conduct, learn about the impact of the Prohibited Conduct on the Complainant and the University community, and identify how to prevent that Prohibited Conduct in the future (including community service and mandatory participation in training, education and/or prevention programs related to the Prohibited Conduct); (4) imposing or extending increased monitoring, supervision, and/or security at locations or in connection with activities where the Prohibited Conduct occurred or is likely to reoccur; (5) arranging for conducting targeted or broad-based educational programming or training for relevant persons or groups; and/or (6) imposing any other remedial or protective measures that are tailored to achieve the goals of the Title IX Policy.

Any sanction or combination of sanctions imposed upon a Respondent will be documented in the Respondent's personnel file. Nothing in these Procedures prevents the executive from imposing disciplinary action against a Respondent where the Final Investigation Report demonstrates that the Respondent engaged in other conduct prohibited by the University, regardless of whether the Respondent has been found responsible for violating the Title IX Policy.

c) Notice to the Title IX Coordinator. The executive will notify the Title IX Coordinator in writing of his or her decision, outlining his or her acceptance or rejection of the Review Panel decision, the rationale for the decision, any sanction(s) against the Respondent, the rationale for such sanction(s) (including why the executive did or did not accept the sanction(s) recommended by the Review Panel), and any other remedial actions for the Complainant, the Respondent and/or community to be implemented as a result of the finding.

d) Notice of Final Outcome to Parties. Within two (2) business days of receipt of either the Review Panel or the executive's decision, the Title IX Coordinator shall notify the Complainant and the Respondent, simultaneously, in writing (which may include email) of the final outcome of the investigation and the rationale for the outcome (the "Final Outcome Letter"). The Final Outcome Letter shall include the name of the Respondent; the violation(s) of the Title IX Policy (and, if applicable, the PADH policy) for which the Respondent was found responsible or not responsible, as supported by the rationale set forth in the Final Investigation Report and/or modified by the Review Panel or

executive; the sanction(s) (if applicable) imposed against the Respondent; the rationale for any sanction(s) imposed. The Final Outcome Letter may also identify protective measures implemented with respect to the Respondent or the broader University community. The Final Outcome Letter will not disclose any remedial measures provided to the Complainant. Any such remedial measures will be shortly thereafter shared with the Complainant by separate communication.

The University does not impose any restrictions on the parties regarding re-disclosure of the incident, their participation in proceedings under these Procedures, or the Final Outcome Letter.

e) <u>Decision of Review Panel/Executive is Final.</u> The decision outlined in this notice is final under the Title IX Policy and is not subject to further University appeal or grievance. Nothing in these Procedures abrogates post-adjudication rights as provided by state and federal law (i.e., State Grievance Procedure, under Chapter 30 (§2.2-3000 et. seq.) of Title 2.2 of the Code of Virginia; the Office for Civil Rights; and the Equal Opportunity Employment Commission).

## VII.   RECORDS RETENTION

The University shall retain all records relating to a report of Prohibited Conduct, including investigation files and personnel record documentation of disciplinary or other personnel actions, in accordance with the University's Record Retention and Disposition Schedule.