IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| **JANE DOE,** <br><br> **Plaintiff,** <br><br> v. <br><br> **THE UNIVERSITY OF VIRGINIA, et al.,** <br><br> **Defendants.** | Case No. 3:23-cv-00018-RSB |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

Plaintiff Jane Doe withdrew her claims against Defendants Emily Babb ("Babb") and Akia Haynes ("Haynes"), leaving her Title IX claim against the Rector and Visitors of the University of Virginia ("UVA" or "University") as the only remaining claim.[1]

Plaintiff's Title IX claim fails as a matter of law, and thus must be dismissed for four reasons. First, on the face of the Amended Complaint, Plaintiff's deliberate indifference claims based on the University's alleged actual knowledge of sexual harassment of Plaintiff in December 2018 and February 2020 are barred by the statute of limitations. Such claims, if any, accrued in December 2018 when a professor allegedly personally witnessed Plaintiff being sexually harassed by John Roe, and in February 2020 when Plaintiff shared certain details about Roe's abuse with a professor and a dean. Second, Plaintiff's conclusory allegations are insufficient to plead that the

---

[1] In her opposition, Plaintiff withdrew Count II (substantive and procedural due process § 1983 against Babb and Haynes), Count III (equal protection § 1983 against Babb and Haynes), and Count IV (First Amendment § 1983 against Babb). Pl.'s Resp. to Defs.' Mot. to Dismiss ("Pl.'s Opp."), ECF No. 31 at 1, 10, 28, 29. As Count I, the Title IX claim against UVA, is Plaintiff's only remaining claim, Babb and Haynes do not join in this reply and should be dismissed as parties to this lawsuit.

1

University had actual knowledge that Plaintiff was sexually harassed in December 2018. Third, on March 11, 2020, when Plaintiff notified the University that she desired to file a complaint against Roe for his abuse, UVA promptly launched an investigation that validated Plaintiff's complaint and resulted in Roe's resignation and permanent loss of his ability to work at UVA. The University also issued a no-contact order between Roe and Plaintiff. Thus, as demonstrated by the Amended Complaint, UVA did not act with deliberate indifference, as its response was not clearly unreasonable in light of known circumstances. Finally, even if Plaintiff's Title IX claim were to survive this motion to dismiss, Plaintiff's request for emotional, reputational, and punitive damages are not available under Title IX and thus must be dismissed.

For these reasons, Plaintiff's remaining Title IX claim against UVA should be dismissed.

I.  **ARGUMENT**

   A.  **Plaintiff's Title IX deliberate indifference claim is barred, in part, by the statute of limitations.**

   i.  **Claim based on UVA's alleged actual knowledge as of December 2018.**

Based on the face of the Amended Complaint, Plaintiff's claim that UVA violated Title IX because Asher Biemann ("Biemann"), a UVA professor, allegedly observed another professor, John Roe ("Roe"), sexually harass Plaintiff in December 2018 and did nothing is time-barred. Am. Compl. ¶¶ 174-180, 183, 188.

In her Response, Plaintiff argues that the Court cannot rule on the statute of limitations at the motion to dismiss stage because it is not apparent on the face of the Amended Complaint that Plaintiff knew Biemann had witnessed Roe sexually harassing her in December 2018 and failed to report it. Pl.'s Opp. at 9. Rather, Plaintiff argues that a reasonable inference from the Amended Complaint is that she did not learn that Biemann witnessed Roe flirting with her until she read the final report from UVA's Title IX investigation in April 2021. *Id.* Notably, however, Plaintiff does

2

not allege that she learned that Biemann witnessed any act of abuse in December 2018, such as the alleged flirting incident, from the final report.

Further, to the extent that Plaintiff learned additional information from the final report in April 2021, such information does not toll the accrual date because a plaintiff is not required to know all the facts underlying her claim before it accrues. *See Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995); *V.E. v. Univ. of Md. Balt. Cnty.*, No. 1:22-cv-02338-JRR, 2023 U.S. Dist. LEXIS 70334, at *6 (D. Md. Apr. 21, 2023) (discussing Title IX deliberate indifference claim accrual). Instead, a claim accrues when a plaintiff has sufficient facts about the harm done to her "that reasonable inquiry will reveal [her] cause of action." *Nasim*, 64 F.3d at 955 (citation omitted). Once a plaintiff knows that she has been hurt and who inflicted the harm, she "is on inquiry notice and has a duty to inquire about reasonably discoverable details." *Slaey v. Adams*, No. 1:08cv354, 2008 U.S. Dist. LEXIS 103903, at *26 (E.D. Va. Dec. 23, 2008) (citing *Nasim,* 64 F.3d at 955). "To excuse [the plaintiff] from promptly [making inquiry] by postponing the accrual of his claim would undermine the purpose of the limitations statute." *Nasim*, 64 F.3d at 955 (quoting *United States v. Kubrick*, 444 U.S. 111, 123 (1979)).

Moreover, the allegations in the Amended Complaint contradict Plaintiff's argument. Plaintiff alleges that "[b]ased on his observations during the Vienna trip, in which Roe brought Plaintiff to dinner with another couple and drunkenly came to Plaintiff's hotel room, flirting with her and was turned away, Biemann knew or should have known that Roe was, at a minimum, sexually harassing Plaintiff." Am. Comp. ¶ 188. Indeed, in Plaintiff's view, this flirting incident *objectively* amounted to sexual harassment such that both Plaintiff and Biemann would be on notice that Roe was sexually harassing Plaintiff. Pl.'s Opp. at 12. Thus, if Biemann knew or should have known of sexual harassment in December 2018 based on his observations at one dinner and

3

in a hallway on one occasion, Plaintiff, too, knew or should have known as a participant in the dinner and hallway encounter that Biemann did not report these events as sexual harassment to UVA in December 2018. *See* Am. Compl. ¶¶ 175-176, 179, 183. Biemann's lack of response would have been apparent to Plaintiff.

Furthermore, Plaintiff does not allege that Biemann observed Roe allegedly "flirting" with Plaintiff from a concealed location. Rather, Plaintiff alleges that Biemann "happened to walk by" when Roe was "standing in the hallway outside Plaintiff's hotel room" and "Biemann observed Roe talking to Plaintiff and attempting to flirt with her while he was intoxicated." *Id.* ¶¶ 177-78. To infer that Plaintiff was unaware that Bieman observed the "flirting" incident would be the type of "unwarranted inferences [or] unreasonable conclusions" that are not considered on a Rule 12(b)(6) motion to dismiss. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citation omitted).

Thus, in taking the allegations on the face of the Amended Complaint and all reasonable inferences, Plaintiff's Title IX claim for deliberate indifference from December 2018 to February 2020 is time-barred. *See* Am. Compl. ¶ 275. In December 2018, Plaintiff possessed sufficient facts about the harm done to her and who had harmed her to reveal that she had a cause of action. *Nasim*, 64 F.3d at 955. Her situation is like that of the plaintiff in *V.E. v. University of Maryland Baltimore County*, whose Title IX deliberate indifference claim was time barred because it accrued no later than the fall of 2018 after she reported sexual abuse to the university and there was no appropriate response. 2023 U.S. Dist. LEXIS 70334, at *6-7, 14-16. The court rejected the plaintiff's contention that her claim accrued in 2022 when a report was issued providing additional information about the university's alleged misconduct. *Id.* While Plaintiff may have learned certain details of her alleged claim later from the April 2021 report, that did not prevent her claim from

4

accruing in 2018 because she had a "duty to inquire about reasonably discoverable details." *Slaey*, 2008 U.S. Dist. LEXIS 103903, at *26. Under these facts, Plaintiff had to file her Title IX claim, based on the University's alleged deliberate indifference to Roe's sexual harassment in December 2018, by December 2020, which she did not. Accordingly, pursuant to Rule 12(b)(6), this Court can dismiss Plaintiff's Title IX deliberate indifference claim based on UVA's notice of sexual harassment in December 2018.

### ii. Claim based on UVA's alleged actual knowledge as of February 2020.[2]

Plaintiff's Title IX deliberate indifference claim based on UVA's response to its alleged knowledge of sexual harassment in February 2020 is similarly time-barred on the face of the Amended Complaint. Pl.'s Opp. at 13-14. Plaintiff alleges that UVA had actual notice in February 2020 of Roe's sexual harassment and assault due to her meetings that month with Biemann and Associate Dean of Students Laurie Casteen ("Casteen"). *Id.* Plaintiff concedes she initially reported to Biemann and Casteen that her relationship with Roe was consensual, which undercuts that they received a report of an objective act of sexual harassment that month. Am. Compl. ¶¶ 194, 211, 253. However, the Amended Complaint also alleges that Plaintiff told Biemann on February 18, 2020, "the full extent" of Roe's abuse of her and that Roe's sexual acts with her "were not consensual." *Id.* ¶ 197. Biemann and other UVA officials allegedly did not report this to the Title IX office in February 2020, and UVA did not launch an investigation until March. *Id.* ¶ 207. UVA also allegedly did not provide Plaintiff with any protective measures in the month following her initial conversations with Biemann and Casteen in February 2020. *Id.* ¶¶ 220-221.

---

[2] Plaintiff's response to Defendants' Motion to Dismiss clarified for Defendants that Plaintiff is asserting that UVA's response to its alleged knowledge of sexual harassment in February 2020 amounted to deliberate indifference separate from its allegedly deficient responses to alleged actual knowledge in December 2018 and March 2020. Pl.'s Opp. at 15-16. Accordingly, UVA now addresses this statute of limitations issue separately.

Based on these facts appearing on the face of the Amended Complaint, Plaintiff's Title IX claim based on UVA having actual notice in February 2020, to the extent she has one, accrued in February or no later than March 2020, because at that time Plaintiff was aware she had told "the full extent" of Roe's abuse to Bieman and UVA allegedly failed to respond appropriately because it took no action to investigate or otherwise protect her. *Id.* ¶¶ 198, 220-221. Under these facts, Plaintiff had to file her Title IX claim based on the University's alleged deliberate indifference to her sharing in February 2020 details of Roe's sexual abuse by no later than March 2022, which she did not. Accordingly, pursuant to Rule 12(b)(6), this Court can also dismiss Plaintiff's Title IX deliberate indifference claim based on UVA's notice of sexual harassment in February 2020.

**B.     Plaintiff fails to state a claim for Title IX deliberate indifference because Plaintiff's conclusory allegations fail to establish that UVA had actual knowledge that Roe sexually harassed Plaintiff in December 2018.**

Plaintiff failed to adequately plead that UVA, through Biemann, had actual knowledge that Roe sexually harassed Plaintiff in December 2018. An educational institution can obtain the actual knowledge of sexual harassment required to establish Title IX liability when an official with the necessary authority personally witnesses an act that can objectively be construed as sexual harassment. *See Doe v. Fairfax Cnty Sch. Bd.*, 1 F.4th 257, 265 (4th Cir. 2021). However, Plaintiff's allegations about the dinner and hallway flirting events are insufficient to show that there was more than a possibility that Biemann witnessed Roe committing an act that objectively can be construed as sexual harassment thus providing UVA with actual notice.

As to what constitutes sexual harassment, the Amended Complaint quotes UVA's definition of sexual harassment from its Title IX policy. Am. Compl. ¶ 187. Under this definition, sexual harassment consists of conduct of a sexual nature that occurs under two conditions. *Id.* Immediately after setting out this definition, Plaintiff concludes that Biemann "knew or should

6

have known" that Roe was sexually harassing Plaintiff without any reference to how the dinner and the hallway flirting events met that, or any other, definition of sexual harassment. *Id.* ¶ 188.

Notably, Plaintiff does not allege any conduct that would have put Biemann on notice of sexual harassment during the dinner in December 2018. Indeed, without citing any authority, Plaintiff claims that by virtue of Roe, Biemann and his girlfriend having dinner with Plaintiff, a student, Biemann should have known that Plaintiff was being sexually harassed by Roe. This conclusion lacks factual support.

As for the flirting incident in the hallway, Plaintiff's conclusory allegations fail as a matter of law. Plaintiff does not allege what behavior or words she is relying on to allege that Roe's conduct, which she labels as "flirting," constituted sexual harassment. Rather, without any factual support, Plaintiff alleges that Roe flirted with her, and that the incident "objectively" amounted to sexual harassment and thus UVA was on notice starting in December 2018. *See id.* ¶¶ 177, 178, 188, 275-276; Pl.'s Opp. at 12. There is no allegation that Biemann observed or overheard Roe make any comment to Plaintiff that was sexual in nature, that he observed Roe touch Plaintiff in a sexual manner or make any other sexual gesture towards Plaintiff. Plaintiff cannot survive a motion to dismiss by relying on conclusory allegations that fail to sufficiently allege that Biemann had actual notice of sexual harassment in December 2018.

Plaintiff cites *Carroll K. v. Fayette County Board of Education* to support that she adequately alleged actual notice. Pl.'s Opp. at 11. In this case, the complaint alleged an elementary school teacher witnessed a male student throw the plaintiff female student into a steel pole causing serious injuries and remarked "Oh God. Here we go again!" 19 F. Supp. 2d 618, 620 (S.D. W. Va. 1998). The district court denied the defendant's 12(b)(6) motion because it found that the plaintiff had adequately alleged the defendants had actual notice of student-on-student harassment under

7

Title IX when it alleged the teacher witnessed the plaintiff being thrown into a steel pole by a male student. *Id.* at 621. The basic factual allegations that allowed the plaintiff in *Carrol K.* to sufficiently allege actual notice are absent from the Amended Complaint's allegations about the dinner and hallway flirting incidents.

In short, Plaintiff is asking this Court to make the unwarranted deduction that the "flirting" that Biemann allegedly observed constituted, objectively, an act of sexual harassment of Plaintiff such that UVA was put on actual notice. At the pleading stage, more than conclusory allegations without factual support are required to plausibly suggest that there was an objective act of sexual harassment. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

As the facts alleged are insufficient to show that UVA had actual notice of Roe's sexual harassment of Plaintiff as of December 2018, Plaintiff's claim of deliberate indifference by UVA based on that knowledge fails to state a claim and should be dismissed.

**C.  Plaintiff fails to state a claim for Title IX deliberate indifference against UVA because its response was not clearly unreasonable in light of the known circumstances.**

**i.  UVA's response to what Plaintiff shared in February 2020.**

To the extent that Plaintiff's deliberate indifference claim based on what Plaintiff shared with Biemann and Casteen in February 2020 is not barred by the statute of limitations, the Amended Complaint fails to show that UVA's response met the "high standard" of deliberate indifference. *Fairfax Cnty Sch. Bd.*, 1 F.4th at 271. A response to sexual harassment must be more than mere negligence to constitute "deliberate indifference." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). For an institution to be liable, it must make an official decision "not to remedy the violation." *Id.*

8

As alleged, Plaintiff did not initially share with Biemann and Casteen everything about her experiences with Roe and initially described the relationship with Roe as consensual. Am. Compl. ¶¶ 195, 209-211, 253. Then on February 18, 2020, Plaintiff alleges she told Biemann "the full extent" of Roe's abuse of her and that Roe's sexual acts with her "were not consensual." *Id.* ¶ 197. Rather than do nothing and ignore Plaintiff's report, Biemann immediately reported what Plaintiff had told him to a department chair. *Id.* ¶ 198. Biemann and the department chair then reported what Plaintiff told them to the International Studies office, which resulted in Casteen contacting Plaintiff. *Id.* ¶¶ 203-205. Plaintiff then told Casteen her relationship with Roe was consensual. *Id.* ¶¶ 211, 253.

Plaintiff does not allege that she told Biemann or Casteen that she wanted Roe to be held accountable, through an investigation or otherwise, until her March 11, 2020, request to Casteen. Indeed, the reasonable inference of Plaintiff's allegation that she notified Casteen on March 11, 2020, that she wanted Roe to be held accountable is that Plaintiff previously had not requested such a step. *Id.* ¶ 217. Furthermore, Plaintiff does not allege that she asked Biemann or Casteen for protection from Roe and that they ignored her.

In light of the circumstances alleged to have been known by Biemann and Casteen in February 2020, their response to what Plaintiff chose to share at that time was not "clearly unreasonable." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). Rather than a decision to "not to remedy the violation" reported by Plaintiff, the facts alleged show that Biemann reported what Plaintiff shared with him to other UVA officials and that Casteen reached out to Plaintiff to discuss Roe's actions. Whether Biemann or any other UVA employee should have reported Plaintiff's allegations to the Title IX office sooner or advised Plaintiff in a different manner at most raises the possibility that the University acted negligently. However, negligent

9

responses to actual knowledge of sexual harassment are insufficient to constitute "deliberate indifference." *Gebser*, 524 U.S. at 290. Accordingly, Plaintiff fails to state a claim for Title IX deliberate indifference based on UVA's response to alleged actual knowledge of Roe's sexual abuse in February 2020.

### ii. UVA's response to Plaintiff's March 11, 2020, notice that she wanted Roe to be held accountable.

Similarly, Plaintiff failed to adequately plead that the University's response to her March 11, 2020, request that Roe be held accountable met the "high standard" of deliberate indifference. *Fairfax Cnty Sch. Bd.*, 1 F.4th at 271.

Rather than ignore Plaintiff's allegations of Roe's misdeeds, UVA promptly launched a formal investigation in March 2020 after Plaintiff notified Casteen she wanted Roe to be held accountable. Am. Compl. ¶¶ 217, 219. While UVA did extend its deadline to produce a preliminary investigative report, this was due to the volume of evidence submitted by Plaintiff and Roe and in part due to the length of Roe's alleged sexual harassment of Plaintiff. *Id.* ¶¶ 224, 229. The Title IX investigation resulted in a 319-page final report that found credible evidence that Roe had sexually harassed and assaulted Plaintiff. *Id.* ¶¶ 234-235. Following a hearing, the review panel affirmed the findings of the final report and recommended that Roe receive the most severe sanction available: termination. *Id.* ¶¶ 238-239; ECF 11-1 at 41-42.

Far from allowing Roe to escape professional fallout for his misconduct, even though he resigned before he could be terminated, UVA made sure Roe could not work for UVA again and would not benefit from any honorary status available to retired professors. Am. Compl. ¶ 241. In sum, UVA's response to Plaintiff's complaint of sexual misconduct by Roe resulted in a report that agreed with Plaintiff that she had been a victim of sexual harassment and assault and measures

to ensure that the professor was no longer working at UVA and he would not be able to work there in the future. Such facts are far from meeting the high standard of deliberate indifference.

Plaintiff's argument that UVA was deliberately indifferent because it took more time than the Plaintiff believes was reasonable to conclude the Title IX process likewise fails. Am. Compl. ¶¶ 222, 248, 277; Pl.'s Opp. at 17-18. Courts have recognized that a plaintiff's dissatisfaction with the timeliness of the school's investigation does not itself establish a Title IX violation. *See Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093, 1110 (9th Cir. 2020); *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006) (holding that a university's nine-month delay in holding a hearing did not constitute deliberate indifference under Title IX); *McAvoy v. Dickinson Coll.*, No. 1:20cv1327, 2023 U.S. Dist. LEXIS 172332, at *18 (M.D. Pa. Sep. 26, 2023). For example, in *Karasek v. Regents of the University of Cal*ifornia, the Ninth Circuit affirmed the granting of a 12(b)(6) motion where the complaint failed to show that the university's thirteen-month delay between receiving a report of sexual assault to the imposition of the final sanction constituted deliberate indifference where the university was not idle during those months. 956 F.3d at 1110.

To support her position that the timeline of UVA's Title IX investigation was deliberately indifferent, Plaintiff relies on *Williams v. Board of Regents*. Pl.'s Opp. at 17-18. In *Williams*, the Eleventh Circuit found that the plaintiff student adequately alleged the university's deliberate indifference to an incident of peer-on-peer gang rape in light of an eleven-month delay before a disciplinary hearing. 477 F.3d 1282, 1296-97 (11th Cir. 2007). In that case, the university's police force provided it with the results of a full criminal investigation within three months of the incident, but the university delayed another eight months before holding a disciplinary hearing. *Id.* at 1296. Before the hearing, the university took no corrective action, and, ultimately, it did not discipline any of the alleged assailants. *Id.*

11

In contrast, UVA did not have the benefit of the results of a criminal investigation. Instead, UVA went through its Title IX process, which, although it lasted from March 2020 through August 2021, resulted in an interim ban preventing Roe from contacting Plaintiff and Roe no longer working at UVA. Am. Compl. ¶¶ 219, 225, 239-240, 261. The University's substantive steps in responding to Plaintiff's complaint of sexual harassment is what matters, not whether UVA departed from its aspirational timeline for resolving Title IX claims. *See Doe v. Bd. of Educ.*, 605 Fed App'x. 159, 168 (4th Cir. 2015). "[I]n light of the known circumstances" particular to this case, it cannot be said that the timeline of UVA's response to Plaintiff's complaint was clearly unreasonable and thus, deliberately indifferent. *Davis*, 526 U.S. at 648.

Plaintiff's claim that UVA showed deliberate indifference by waiting until June 2020 to issue the no-contact directive is contrary to the alleged circumstances of her case. Am. Compl. ¶¶ 225, 277; Pl.'s Opp. at 16. Plaintiff ended her relationship with Roe in February 2020, and she does not allege that they had any contact after that time. *Id.* ¶¶ 170, 172, 274. After Plaintiff reported Roe's actions that had taken place over an extended period, some of which were described as consensual, UVA initiated its investigation. Then, as the investigation progressed, UVA directed Roe and Plaintiff to have no contact with each other even though Plaintiff was no longer a student and UVA had suspended in-person classes. *Id.* ¶ 225.

Plaintiff cites *Joyce v. Wright State University* to support that she has adequately pled deliberate indifference due to the timing of the issuance of the no-contact directive. Pl.'s Opp. at 17. In *Joyce*, the court found that the plaintiff adequately alleged deliberate indifference where she notified the university that she had been raped in her dorm room the previous day by a student who lived in her same dormitory and the university waited three days to remove the offender from campus housing. No. 3:17-cv-387, 2018 U.S. Dist. LEXIS 100780, at *2, 16-18 (S.D. Ohio June

12

15, 2018). The circumstances alleged in *Joyce*, that the plaintiff and the offender lived in the same dormitory where the rape occurred and Plaintiff immediately reported the rape, are unlike those presented in this case. Plaintiff lived separately from Roe, Plaintiff had ended her relationship with Roe prior to reporting it, she initially described her relationship with Roe as consensual, and UVA subsequently suspended in-person classes due to COVID-19. Am. Compl. ¶¶ 162, 170, 172, 194-195; ECF No. 23 at 4. Under these facts, UVA's decision to not issue a no-contact directive until June 2020 was not clearly unreasonable.

Plaintiff's preference for a different remedy than the one offered by UVA does not show that the University was deliberately indifferent. *See* Am. Compl. ¶¶ 245-246, 280. Once the investigation was completely resolved, UVA offered Plaintiff a remedial measure in the form of reimbursement for out-of-pocket expenses up to $5,000 incurred during the investigation and for the following four months for counseling and holistic healing services. *Id.* ¶ 244. Plaintiff acknowledges that she did receive "a few sessions with a therapist" during the investigation. *Id.* ¶ 245. While out-of-pocket reimbursement may not have been Plaintiff's preferred remedy (*id.* ¶¶ 245-246), it was not a clearly unreasonable response by UVA.

However, Plaintiff asserts that UVA "effectively offered no counseling or meaningful remedial measure" because she did not seek any counseling or holistic healing services other than "the few sessions a therapist." Pl.'s Opp. at 18-19. Plaintiff relies on *Doe v. Russell County School Board* for support that she has adequately alleged that UVA's offer of reimbursement for counseling and healing services rose to the level of deliberate indifference. *Id.* at 19. In that case, the district court denied the defendant summary judgment on Plaintiff's Title IX deliberate indifference claim based on the school board's response to learning that a school employee had sexually abused the plaintiff elementary school student for over a year. 292 F. Supp. 3d 690, 710

(W.D. Va. 2018). The court found that the plaintiff had presented sufficient evidence from which a jury could conclude that the school board acted with deliberate indifference by failing to offer the plaintiff any counseling or other remedial measures. *Id.* In reaching this decision, the court noted that the plaintiff continued to be a student in the defendant's school district and that there was no evidence of any remedial measure being offered to him. *Id.* In contrast to those circumstances, UVA did offer Plaintiff, a former student, a remedial measure in the form of reimbursement for past or future counseling or healing services. Am. Compl. ¶ 244. Although she may have wanted a different remedial measure, plaintiffs lack the "right to make particular remedial demands." *Doe v. Bd. of Educ. of Prince George's Cnty.*, 982 F. Supp. 2d 641, 657 (D. Md. 2013), *aff'd*, 605 F. App'x 159, 168 (4th Cir. 2015) (quoting *Davis*, 526 U.S. at 648).

Plaintiff's contention that the time requirements for her to participate in the Title IX investigation amounted to deliberate indifference has already been rejected by this Court. Am. Compl. ¶¶ 261-268; Pl.'s Opp. at 20. In *Butters v. James Madison University*, the plaintiff brought a Title IX deliberate indifference claim regarding the university's response to her formal complaint of sexual assault by three other students and complained that the process required her to "testify multiple times, at multiple hearings." 208 F. Supp. 3d 745, 762-63 (W.D. Va. 2016). This Court rejected the notion that evidence that a university could have enacted a more victim-friendly process, or better protected the plaintiff, amounts to a "clearly unreasonable" response. *Id.*

On the facts alleged in the Amended Complaint, the University did not fail to respond to Plaintiff's report of Roe's abuse in March 2020 and its response to that report was not clearly unreasonable, which are required for liability in a deliberate indifference claim. *Davis*, 526 U.S. at 648; *Gebser*, 524 U.S. at 290.

14

\*   \*   \*

For the reasons set out above, Plaintiff fails to state a claim under Title IX that UVA's response to learning of Roe's sexual misconduct in 2020 was deliberately indifferent. Accordingly, this Court should dismiss Count I of the Amended Complaint.

### D. Plaintiff's request for emotional distress, reputational, and punitive damages are not available under Title IX and should be dismissed.

Plaintiff spends numerous pages addressing arguments that the University did not make to obscure that a significant portion of the relief she requested is barred by Fourth Circuit and Supreme Court precedent. The University acknowledges that *Cummings v. Premier Rehab Keller*, *P.L.L.C.*, does not bar Plaintiff from seeking certain economic damages. However, Plaintiff's requests for emotional distress damages, reputational damages, and punitive and exemplary damages, should be struck because such damages are not available under Title IX.

Plaintiff explicitly seeks compensatory damages for "mental and emotional distress" in her Title IX claim. Am. Compl. ¶ 286. Emotional distress damages are not recoverable for claims brought under antidiscrimination statutes in Spending Clause statutes, such as Title IX. *See Cummings v. Premier Rehab Keller*, P.L.L.C., 142 S. Ct. 1562, 1569-76 (2022); *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-00614, 2023 U.S. Dist. LEXIS 13886, at *8-10 (E.D. Va. Jan 25, 2023). Plaintiff agrees, citing a number of out-of-circuit cases supporting this same proposition. Pl.'s Opp. at 22-23.

Accordingly, this Court should dismiss Plaintiff's claim for damages for pain and suffering, physical harm in the form of an eating disorder, mental and emotional distress in the forms of anxiety, mental anguish, humiliation, and embarrassment, and loss of the ordinary pleasures of everyday life. Am. Comp. ¶ 286. These are all emotional damages and not available under Title IX. *See Thomas v. E. Carolina Univ.*, No. 4:22-cv-00030, 2023 U.S. Dist. LEXIS

15

168664, at *18 (E.D.N.C. Sep. 21, 2023) (in Title IX claim, defendants' 12(b)(6) motion to dismiss was granted in part to dismiss plaintiff's claims for emotional pain and suffering, indignity, humiliation, embarrassment, inconvenience); *Doe v. Fairfax Cnty. Sch. Bd.*, 2023 U.S. Dist. LEXIS 13886, at *10 (granting defendant's motion *in limine* to preclude plaintiff from seeking emotional distress damages in Title IX case).

Plaintiff's claims for economic loss and loss of earnings and earnings capacity should also be dismissed because they are all based on Plaintiff's emotional damages, which are not recoverable. Am. Compl. ¶ 286. Plaintiff alleges she has been unable to find stable employment because of the emotional distress and mental health struggles allegedly caused or exacerbated by UVA's response to her report of Roe's behavior. *Id.* ¶¶ 260, 263-264. Such types of damage are simply part of her alleged emotional distress damages. Similarly, Plaintiff's claim for damages because she gave up her plan to attend law school is based on her fear of asking for letters of recommendation, which again arises from her emotional distress. *Id.* ¶ 268. Plaintiff does not allege that any University employee actually rejected her request for a letter of recommendation.

As part of her claim for economic loss damages, Plaintiff now claims that she seeks to recover damages for medical care due to UVA's alleged deliberate indifference. Pl.'s Opp. at 24. However, Plaintiff made no such claim in her Amended Complaint. Am. Comp. ¶ 286. Accordingly, such a claim is not before the Court.

Plaintiff failed to contest that reputational damages are not available in a breach of contract claim and thus not available under Title IX, so her request for damage to her good name should also be dismissed. *Thomas*, 2023 U.S. Dist. LEXIS 168664, at *18 (holding that reputational damages are not available under Title IX and dismissing request for the same) (citing *Rice v. Cmty.*

16

*Health Ass'n*, 203 F.3d 283, 288 (4th Cir. 2000)). Furthermore, Plaintiff never alleged any facts that would show that UVA's actions during the Title IX proceedings damaged her reputation.

Finally, Plaintiff failed to challenge that her request for exemplary and punitive damages (ECF No. 21 at 42) are not available in private actions brought under Title IX. *See Mercer v. Duke Univ.*, 50 Fed. App'x. 643, 644 (4th Cir. 2002). Accordingly, Plaintiff's request for exemplary and punitive damages is barred and should be dismissed.

In sum, this Court should dismiss Plaintiff's claims for the following relief under Title IX: emotional damages, including her requests for mental and emotional distress in the forms of anxiety, mental anguish, humiliation, embarrassment, and the loss of the ordinary pleasures of everyday life; damage to her good name; and exemplary and punitive damages. To the extent that Plaintiff's request for other permitted damages are simply disguised emotional damages, they should be dismissed as well.

## II.     CONCLUSION

For the foregoing reasons, Defendant the Rector and Visitors of the University of Virginia, respectfully requests that this Court grant its Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6), dismiss this case with prejudice, and strike it from the docket.

Respectfully submitted,

**THE RECTOR AND VISTORS OF THE UNIVERSITY OF VIRGINIA**

By Counsel: /s/ Christopher P. Bernhardt
Christopher P. Bernhardt* (VSB No. 80133)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 371-0977
Facsimile: (804) 371-2087
Email: cbernhardt@oag.state.va.us

Jason S. Miyares
Attorney General of Virginia

Steven G. Popps
Deputy Attorney General

Jacqueline C. Hedblom
Senior Assistant Attorney General/ Trial Section Chief

Christopher P. Bernhardt* (VSB No. 80133)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 371-0977
Facsimile: (804) 371-2087
Email: cbernhardt@oag.state.va.us

Amy E. Hensley* (VSB No. 80470)
Associate University Counsel/Assistant Attorney General
Madison Hall
1827 University Avenue
Charlottesville, Virginia 22904
Telephone: (434) 924-3685
Email: aehensley@virginia.edu
*Counsel of Record*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of October, 2023, the foregoing was filed with the Clerk of Court using the CM/ECF system.

By: /s/ Christopher P. Bernhardt
Christopher P. Bernhardt (VSB No. 80133)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 371-0977
Facsimile: (804) 371-2087
Email: cbernhardt@oag.state.va.us
