IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | Civil Action No. 3:23-cv-18 |
|     **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **THE UNIVERSITY OF VIRGINIA,** | ) | |
| *et al.*, | ) | By: Hon. Robert S. Ballou |
| | ) | United States District Judge |
|     **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff, a former student at the University of Virginia, brings this action against the Rector and Visitors of the University of Virginia claiming that she suffered sexual abuse at the hands of a university professor and that the University breached its duties under Title IX to investigate her complaints. I **GRANT**, in part, and **DENY**, in part Defendant's motion to dismiss. Dkt. 22.

**I.      Background**

Plaintiff filed this action relating to the investigation conducted by the University of Virginia ("the University") after she reported having suffered from sexual abuse from one of her professors. The professor's abusive conduct toward Plaintiff began during a J-Term course in Austria and Hungary from December 2018 through January 2019. The abuse continued after they returned to the University and persisted until February 2020 when Plaintiff eventually reported the professor's abuse to the University. The University began an investigation under Title IX which ultimately led to the professor resigning, but the investigation took nearly 500 days to complete. Initially, Plaintiff filed claims against the University, Emily Babb, and Akia Haynes alleging violations of Title IX and asserting Fourteenth Amendment claims for deprivations of

due process and equal protection. Plaintiff amended her complaint (Dkt. 21) and Defendants have filed a motion to dismiss. Plaintiff has now withdrawn all claims except for Count I, asserting a violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88 against the Rector and Visitors of the University of Virginia. All claims against the individual defendants, Emily Babb and Akia Haynes, have been dismissed.[1]

The facts alleged in the Amended Complaint (Dkt. 21) are accepted as true for purposes of this motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Jane Doe transferred to the University in the Fall of 2018 and enrolled in a class taught by Professor John Roe.[2] Early in her tenure as a student, Doe received repeated positive feedback from Roe who praised her and gave her career advice. Roe became a role model and mentor to Doe, but other students noticed the attention she received from Roe and commented about how she received "A" letter grades "easily" and referred to her as a "teacher's pet." Rumors spread about Roe and Doe's relationship, with some female students saying that Roe and Doe flirted with each other. Doe alleges that these rumors even reached the faculty in the department.

During the Fall 2018 semester, Roe convinced Doe to take his J-Term class, a two-week program in Austria and Hungary between the Fall and Spring Semesters. Roe insisted that he and Doe travel on the same flight to Austria arriving ahead of the other students in the program. To

---

[1] "The University of Virginia" was also named as a defendant in this case. However, this defendant has never been served and is not a proper legal entity. The proper legal entity is the named defendant, "the Rector and Visitors of the University of Virginia."

[2] Both parties have used pseudonyms for the plaintiff (Jane Doe) and for the professor found responsible for sexually abusing her (John Roe). In federal court there is no automatic right for parties to use a pseudonym. *See James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993). Rather, district courts may, in their discretion, allow pseudonymous litigation where privacy or confidentiality concerns are sufficiently critical. *Id.* at 238. Before me is a separate pending motion by Plaintiff to proceed by pseudonym and that matter will be addressed in a separate order. However, for sake of clarity—and because I have not been given any other name by which to refer to the plaintiff or the professor—this opinion shall use the pseudonyms utilized by the parties.

this end, Roe booked the flights and hotel so that they traveled together and stayed at the same hotel.

On December 25, 2018, Doe and Roe traveled to Austria together. Two days later, Professor Asher Biemann, the course's co-instructor, arrived in Austria and, that night, Doe, Roe, Biemann, and Biemann's girlfriend had dinner together. Biemann did not object to Roe bringing Doe to dinner and did not ask her whether she was safe or comfortable joining as Roe's date or companion. Doe alleges that later that night she took an electric adapter she had borrowed from Roe back to his room, and while there, Roe sexually assaulted her for the first time.

Doe alleges that, throughout the J-Term course, Roe sexually assaulted her several times, and claims that on one occasion, Biemann saw Roe attempt to drunkenly flirt with Doe at the doorway to her hotel room. Biemann did not intervene or object to Roe's interactions with Doe, nor did he reach out to Doe after the incident to inquire more about the incident or to find out whether she was safe or comfortable with Roe's advances. Biemann later admitted that Roe's behavior was not typical of a professor with a student and also noted that Doe was more reserved and less engaged during the trip than she had been in class. Still, Biemann, who is a Responsible Employee under Title IX and thus required to report incidents of sexual misconduct, did not report Roe's conduct toward Doe to the University's Title IX Office or to anyone, and he took no action, either while on the J-Term trip or after returning to the University.

Roe's sexual abuse of Doe continued through the Spring 2019 semester back in Charlottesville, and on trips to Washington, D.C. In the summer of 2019 Roe broke off relations with Doe, but she alleges that in October 2019 Roe once more pursued her and again began

3

sexually assaulting her. In February 2020, Plaintiff finally ended the relationship with Roe for good when she discovered he was using dating websites.

On February 17, 2020, Doe met with Biemann in his office and disclosed that she and Roe had been in a relationship since the J-Term trip. Doe told him, "I think it was consensual." Biemann also recalled Doe stating that Roe "simply grabbed" her during the first encounter in Austria. Biemann documented Doe's account, but he believed that the relationship was consensual based on her description of the relationship with Roe. Doe returned the next day and disclosed to Biemann the full extent of the relationship, including the fact that it was not consensual. Biemann did not then report Roe to the Title IX office and, instead, spoke with a colleague about the relationship. Doe contends that Biemann and his colleague agreed not to file a Title IX report but instead reported the incident to the International Studies Office. Thereafter, Doe's description of her relationship with Roe was reported this to the Dean of Students, Laurie Casteen, who met with Doe on February 24, 2020. Doe explained to Casteen her relationship with Roe but did not mention the non-consensual nature of the relationship, and Casteen informed her that there was nothing she could do as the relationship was consensual.

On March 11, 2020, Doe reached out to Casteen and said that she wanted Roe held accountable for his conduct toward her. At this point, Casteen reported Doe's complaint about Roe to the Title IX Office which then began an investigation. Doe contends the University did not offer any protective or supportive measures until June 25, 2020, when a "mutual no-contact directive" was implemented—nearly three months following the commencement of the Title IX investigation. On March 31, 2020, Doe was informed that a Title IX investigation is underway. Doe graduated from the University in May of 2020, and on May 29, 2020, the University informed Doe it expected to have the initial report completed by July 31, 2020. However, on July

31, 2020, the University advised Doe that the investigation would take longer due to the amount of evidence. The University issued its preliminary investigation report on August 26, 2020, and eight months later, on April 30, 2021, issued the final investigation findings and report.

A review panel convened at Roe's request on July 1, 2021, and issued its decision on July 7, 2021, recommending the termination of Roe, but he resigned two days later on July 9. The University issued its final outcome letter on August 1, 2021. In total, the University's Title IX investigation and adjudication process took almost 500 days in contrast to its policy which states the investigation should be completed in 35 days and the entire process should be completed in 60 days. Extensions to the investigation deadlines are allowed to the extent of the evidence and investigation required, but the policy states that the investigator shall inform the parties of any extension and the reasons for such.

Plaintiff alleges in the Amended Complaint that the University violated Title IX when it acted with deliberate indifference of the repeated sexual violations of one of its professors because of its failure to report the Title IX violations when Biemann saw them occur in 2018, and or, when Biemann failed to properly make a report to Title IX in 2020, and that the University conspired to draw out the process for nearly 500 days to extend the length of time in which Roe could remain in his position.

## II. Standard of Review

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). However, a complaint does not satisfy this standard with only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. (citations omitted). The

complaint must assert facts that "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### III. Analysis

#### A. Statute of Limitations

As a threshold matter, Defendant argues that Plaintiff's claims concerning Roe's abuse and harassment between December 2018 and February 2020 are time barred under the statute of limitations. Title IX borrows the state statute of limitations in the cause of action most similar to the plaintiff's Title IX claim from the jurisdiction with the most significant relationship to the wrongdoing, and here, the Virginia two-year limitation applies to Doe's claims. *Reid v. James Madison University*, 90 F.4th 311, 318–19 (4th Cir. 2024); *Peabody v. Rector & Visitors of the Univ. of Va.*, No. 3:21-cv-44, 2022 WL 1251318, at *4 (W.D. Va. Apr. 27, 2022).

"Although state law determines the length of the limitation period, accrual of § 1983 claims and Title IX claims is governed by federal law." *Reid*, 90 F.4th at 319. "Under federal law's 'standard rule' of accrual, which is informed by common-law tort principles, a plaintiff's claim accrues when she has a 'complete and present cause of action.'" *Id.* (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). "[A] cause of action accrues when the plaintiff possesses sufficient facts about the harm done to [her] that reasonable inquiry will reveal [her] cause of action." *Id.* (quoting *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995). A Plaintiff has sufficient facts when she knows that she has been hurt and who inflicted the injury. *Nasim*, 64 F.3d at 955. "When the plaintiff becomes aware of these two facts, [she] is on inquiry notice and has a duty to inquire about reasonably discoverable details." *Slaey v. Adams*, No. 1:08-cv-354, 2008 WL 5377937, at *7 (E.D. Va. Dec. 23, 2008) (citing *Nasim*, 64 F.3d at 935). However, "[c]laim accrual does not require" that the plaintiff have "notice or knowledge of all

facts" underlying her claim. *V.E. v. Univ. Md. Balt. Cnty.*, No. 1:22-cv-02338, 2023 WL 3043772, at *3 (D. Md. Apr. 21, 2023). Having filed this present action on April 29, 2023, Doe's claims are only timely if they accrued on or after April 29, 2021.

Doe contends that the University first violated Title IX by failing to report the Doe's sexual harassment during the J-Term in December 2018 and January 2019 after seeing Roe flirt with Doe in the hotel. She asserts that the University again violated Title IX when, Biemann delayed reporting Roe's misconduct after Doe reported to him that she had been involved in a nonconsensual relationship with Roe since 2018. Lastly, Doe argues that the University violated Title IX a third time when it conducted an inadequate investigation and intentionally slowed the process to allow Roe to continue in his role as a professor at the University for as much time as possible before ultimately allowing him to resign rather than be terminated.

    i.    **Failure to Report Alleged 2018 Incident**

First, Doe claims that Biemann violated his duty to her under Title IX by failing to report Roe's sexual harassment during the J-Term. This claim accrues occurs when Doe possessed sufficient facts that reasonable inquiry would have revealed her cause of action. The claim against the University regarding Roe's actions during the J-Term center on the assertion that Biemann had sufficient information to require that he report the interactions between Doe and Roe to the Title IX office. To prevail on this claim, Doe will have to show that Biemann had sufficient knowledge during the J-Term to report Roe to the Title IX office. However, the inquiry at this stage is whether Doe had sufficient knowledge about Biemann's failure to act that would have revealed her cause of action. Doe was not aware until the University released the final investigative report on April 30, 2021, that Biemann was aware of Roe's interaction with her

7

during the J-Term and took no action. Thus, the cause of action on this claim accrued on April 30, 2021, and Doe timely filed this action on April 29, 2023, within the limitation period.

    ii.      **Delay in Reporting in February 2020**

Doe reported to Biemann on February 18, 2020, about her relationship with Roe and that she believed it was nonconsensual. Biemann did not act immediately, and instead spoke with one of his colleagues. Several days later, Biemann passed the information to the Title IX office and on February 24, 2020, Doe met with Casteen who told Doe the matter was out of her hands because of the consensual nature of the relationship. But, Doe later emailed Casteen on March 11, 2020, and told her that she wanted Roe held accountable. At this point in time, Doe was aware that Biemann knew of the nonconsensual nature of her relationship with Roe and that Casteen, as Dean of Students, said that the University was taking no further action. Plaintiff even states in her Complaint that at this point, she "began to process her abuse and the betrayal of the prestigious university it had once been her dream to attend." Amended Compl. at ¶ 214. A reasonable inquiry by Doe at this point would have revealed her cause of action against the University. Accordingly, this claim began to accrue in 2020 and is thus barred by the statute of limitations.

    **B.  12(b)(6)**

Under Title IX "an institution can be held liable [for deliberate indifference] only if an official who has authority to address the alleged discrimination and to institute corrective measures has actual knowledge of discrimination and fails adequately to respond." *Koon v. North Carolina*, 50 F.4th 398, 407 (4th Cir. 2022) (quoting *Jennings v. Univ. of N.C.*, 482 F.3d 686, 700 (4th Cir. 2007) (en banc)) (alterations in original).

An institution is deliberately indifferent "only where [its] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). An institution may be liable under Title IX for sexual harassment when "an official who has the authority to address the alleged harassment and to institute corrective measures, has actual notice or knowledge of the alleged harassment" and fails to adequately respond. *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 264 (4th Cir. 2021) (citing *Davis*, 526 U.S. at 646-52)). The actual notice requirement is objective. *Id.*

The University raises two arguments that Doe fails to state a claim for Title IX deliberate indifference: first, that it did not have actual notice of the sexual abuse/harassment until March 2020, when Doe contacted Casteen and told her she wanted Roe held accountable; and second, there was no deliberate indifference on the part of The University because it investigated Roe's claim as soon as it was aware of the allegations, did so in a reasonable manner, and took reasonable steps following the conclusion of the investigation to terminate Roe and prevent him from ever working at the University again.

Plaintiff argues that there were at least two instances in which the school had actual notice before March 11, 2020. First, Doe contends the school was aware of Roe's inappropriate actions toward her in December 2018, when Biemann had dinner with Roe and Doe and when he saw Roe drunkenly flirting with Doe at her hotel room door. Second, Doe claims the University had knowledge of Roe's actions when Doe spoke with Biemann on February 18, 2020, and disclosed the full extent of Roe's the abuse.

Personally witnessing or receiving a report of an incident satisfies the actual notice requirement. *Id.* at 265 (citing *Doe v. Glaser*, 768 F.3d 611, 614 (7th Cir. 2014)). Doe alleges sufficient facts that the University had actual notice of Roe's actions toward her. Specifically,

Doe relies upon the allegations that Biemann saw Roe's drunken flirting with Doe and that he knew these actions could violate Title IX. Am. Compl. ¶ 187. This objectively constitutes actual notice.

Furthermore, Doe has pled sufficient facts that the University's response to her request to Casteen on March 11, 2020, that she wanted Roe to be held accountable was inadequate. At bare minimum, Doe has pled that Defendant did not provide any protective measures to protect her from Roe for approximately three months into the investigation when it issued a "mutual no-contact directive" prohibiting Roe and Doe from communicating with each other. Am. Compl. ¶ 225, 277. The University's arguments that it had suspended in-person classes because of the COVID-19 pandemic and that there is no evidence Roe and Doe had or attempted to have any contact after February 2020, is unavailing. The COVID-19 pandemic does not alter a university's obligations under Title IX (*Travina v. Univ. of Tex.*, No. A-21-CV-1040-RP, 2022 WL 1308828 (W.D. Tex. May 2, 2022)), and it is not required that Roe and Doe have attempted contact before some protective measures may be necessary. *Joyce v. Wright State Univ.*, No. 3:17-cv-387, 2018 WL 3009105 (S.D. Ohio Jun. 15, 2018).

In *Joyce*, the court found that the plaintiff adequately alleged deliberate indifference where she notified the university that she had been raped in her dorm room the previous day by a student who lived in her same dormitory and the university waited three days to remove the offender from campus housing. *Id.* Here, Doe alleged that she was sexually assaulted repeatedly—for over a year, in multiple locations, in multiple cities, and even multiple countries. Doe alleges that Roe abused her in Austria and Hungary, at Roe's home in Charlottesville, and in Washington D.C.—where Roe drove from Charlottesville to be with her. Am. Compl. ¶¶ 134–46. Doe has plainly alleged that the University was informed that Roe sexually assaulted her in

any number of different locations and traveled for that purpose. I am convinced that Doe has thus sufficiently pled facts to plausibly assert a claim of deliberate indifference under Title IX against the University.

### C. Damages

Defendant asserts that under *Cummings v. Premier Rehab Keller, P.L.L.C.* emotional distress and punitive damages are not available under Title IX. 142 S. Ct. 1562 (2022). While courts in the Western District of Virginia have repeatedly held that a 12(b)(6) motion is not an appropriate tool for addressing damages, they have only held as such where the remedy is "theoretically recoverable under the applicable law." *See e.g.*, *Buchanon v. Santek Env't of Virginia, LLC*, No. 1:21-cv-00006, 2021 WL 1866945, at *4 (W.D. Va. May 10, 2021) (quoting *Debord v. Grasham*, No. 1:14CV00039, 2014 WL 3734320, at *1 (W.D. Va. July 28, 2014). Here, the question is whether emotional distress and punitive damages are theoretically recoverable under Title IX.

In *Cummings*, the Supreme Court held that emotional distress damages are not recoverable for claims brought under antidiscrimination statutes enacted under the Spending Clause such as Title IX. *See Cummings*, 142 S. Ct. at 1569-76; *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-00614, 2023 WL 424265, *3–4 (E.D. Va. Jan. 25, 2023). The Court in *Cummings* specifically held that recovery in private actions brought in accordance with legislative acts passed under the Spending Clause should be limited to those remedies available in actions for breach of contract—which have not traditionally allowed damages for mental anguish. However, the Supreme Court has held that compensatory damages are available for intentional violations of Title IX. *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 70-71, 76 (1992). Courts have continued to hold that *Cummings* does not limit recovery under Title IX for compensatory

11

damages. *A.T. v. Oley Valley Sch. Dist.*, No. CV 17-4983, 2023 WL 1453143, at *4 (E.D. Pa. Feb. 1, 2023) (denying summary judgment and permitting Plaintiffs to proceed to trial on claims for lost income, lost opportunity, fringe benefits, attorney fees, costs, and other non-emotional distress damages); *Doe v. Town of N. Andover*, No. 1:20-CV-10310-IT, 2023 WL 3481494, at *12 (D. Mass. May 16, 2023).

Thus, where Doe seeks compensatory damages, they are theoretically recoverable and should not be dealt with at the 12(b)(6) stage. Here Doe seeks to recover damages for "injuries and damages, including, but not limited to, economic loss; loss of earning and earnings capacity; pain and suffering; physical harm in the form of an eating disorder; mental and emotional distress in the forms of anxiety; mental anguish, humiliation, and embarrassment; damage to her good name; loss of the ordinary pleasures of everyday life." Am. Compl. at ¶ 286. Courts have found that a Title IX plaintiff may recover for both physical injuries and lost opportunities. *See Cummings*. *Doe v. City of Pawtucket*, 633 F. Supp. 3d, 583 (D.R.I. Sept. 29, 2022) (holding claim for medical treatment for injuries remains available following *Cummings*); *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, No. 3:20CV-11-MAB, 2023 WL 348320, at *4 (S.D. Ill. Jan. 20, 2023) (finding "Plaintiffs alleged that they suffered an economic loss in the form of medical expenses, and the Defendant did not present any argument that this type of compensatory damages is not recoverable"); *Chaitram v. Penn Med.-Princeton Med. Center*, No. CV2117583MASTJB, 2022 WL 16821692, at *2 (D.N.J. Nov. 8, 2022) (holding that "*Cummings* does not foreclose compensatory damages under an expectation-interest theory").

Accordingly, I find that Doe has adequately plead a claim for compensatory damages from The University's alleged violations of Title IX. Parsing exactly which damages Doe may claim is not appropriate on a Rule 12(b)(6) motion to dismiss.

IV.     Conclusion

For the reasons stated above, I **GRANT** Defendant's Motion to Dismiss as to Plaintiff's claim arising from Biemann's delay in reporting in February 2020. As to Plaintiff's other claims and any other damages Plaintiff seeks, Defendant's motion is **DENIED**.

Additionally, "The University of Virginia" was named as a defendant in this case. As this is not a proper legal entity, nor has it been served, I **DISMISS** this defendant and the case shall proceed against the proper legal entity "the Rector and Visitors of the University of Virginia."

Entered:  March 29, 2024

*Robert S. Ballou*

Robert S. Ballou
United States District Judge