**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
|                         Plaintiff, | ) |
| v. | ) |
| | )   **Case No. 3:23-cv-00018-RSB** |
| THE RECTOR AND VISITORS OF | ) |
| THE UNIVERSITY OF VIRGINIA, | ) |
| | ) |
|                      Defendant. | ) |
| _____ | ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO EXCLUDE PLAINTIFF'S EXPERT ANDREW C. VERZILLI

For the reasons stated in Defendant the Rector and Visitors of the University of Virginia's ("UVA") motion for summary judgment (ECF No. 66) and corresponding memorandum of law (ECF No 67), UVA is entitled to summary judgment because Plaintiff's Title IX claims fail as a matter of law. Notwithstanding, in accordance with this Court's Scheduling Order (ECF No. 30), UVA, by counsel, respectfully submits this Memorandum of Law in support of its motion to exclude the testimony and report of Plaintiff Jane Doe's retained economics expert, Andrew C. Verzilli ("Verzilli"), M.B.A.

## **INTRODUCTION**

Verzilli is a professional plaintiff's expert, who always testifies that a plaintiff suffered an economic injury because "if [he's] called to court, obviously [he'd] opine to some measure of economic loss." Ex. 1 - Verzilli Dep. 33:16-34:7. Verzilli accepted wholesale information provided by Plaintiff's attorney on which to base his opinions, even though that information is inaccurate. His opinions serve as confusing recitations of Plaintiff's bygone aspirations of being a lawyer, even though Plaintiff has never applied to law school or taken the LSAT, even now more

than four years since she graduated from UVA. Still, Verzilli assumes that but for UVA's Title IX process, Plaintiff would have applied and gotten into *some* law school in Fall of 2020, graduated three years later, passed *some* bar exam, and worked *somewhere* in the United States as *some* kind of attorney.

Aside from his reliance on unsupported speculation, Verzilli did not apply any of Plaintiff's specific goals—becoming a human rights attorney, obtaining a Ph.D., teaching as a professor—in rendering his opinions, even though he admits earnings depend on the type of law an attorney practices and that on average professors earn less than lawyers. Verzilli also did not consider that Plaintiff has not applied to any graduate program since graduating from UVA because she wants job experience and to save money. Verzilli also does not consider that Plaintiff has no plan to attend law school in 2025 or anytime in the future and she is presently studying for the GRE in hopes of going into a foreign affairs or international relations graduate program, not law school.

Plainly, Verzilli has not reliably applied any dependable principles and methods to the facts of this case. His proposed testimony would not help the jury to understand the evidence or determine any fact at issue in this case. He accepts at face value the inaccurate representations of Plaintiff's counsel to opine that Plaintiff was hurt by UVA to the tune of $847,308 to $3,276,383 for lost earning capacity because she has never gone to law school to fulfill her aspiration of becoming a lawyer.

At bottom, Verzilli's proffered opinions are irrelevant, unreliable, not based on sufficient facts or data, and would only confuse the jury and be unfairly prejudicial. This Court should exclude Verzilli's proffered testimony and report for failure to meet the requirements of Federal Rule of Evidence 702 and the standards established by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## FACTUAL BACKGROUND

On May 17, 2020, Plaintiff graduated from UVA with a Bachelor of Arts, majoring in Religious Studies and Foreign Affairs. ECF No. 67-21, UVA Academic Tr. In Fall 2018, Plaintiff transferred to UVA, after completing two years at Northern Virginia Community College. ECF No. 67-1, Pl. Dep. 9:10-18. Prior to college, Plaintiff attended high school in northern Virginia and in Peru, where she earned As, Bs, and Cs. Ex. 2 – High School Tr.

While attending UVA from 2018 to 2020 and as of the date of her deposition in June 2024, Plaintiff claimed her "ideal" career plans include becoming a human rights attorney, getting a Ph.D., and becoming a professor. ECF No. 67-1 at 28:1-29:16. Despite Plaintiff's ideal aspirations, she has never taken the LSAT or applied to law school. ECF No. 67-1 at 198:6-7; ECF No. 67-37, Pl.'s Father Dep. 92:20-93:3. Plaintiff has not drafted a personal statement for law school. Ex. 1 - at 93:6-8. Plaintiff claims that she gave up her dream of going to law school—and she only wanted an Ivy League school—because she believed it to be impossible to get accepted since she lost all her possible sources of recommendation since John Roe could no longer recommend her, even though Professor Biemann and another UVA professor wrote Plaintiff supportive letters of recommendation. ECF No. 67-1 at 202:1-204:12; 234:4-235:2; ECF No. 67-2, Biemann Decl. ¶ 37.

Plaintiff is presently studying for the GRE in hopes of going to graduate school for international relations or foreign affairs. ECF No. 67-37 - Pl.'s Father Dep. 86:10-87:11, 90:17-91:13. Plaintiff no longer wants to enter the legal profession and instead desires to work for a non-governmental organization because law school is too costly and time consuming. Ex. 3 – Sept. 10, 2024 P.E. Dep. 24:1-25:3. Since graduating from UVA in Spring 2020, Plaintiff has not applied to any graduate school because of "not being able to focus, not being able to respond properly to

the demands of the preparation of the process[,]" "she wanted to get more job experience[,]" and because finances are an issue, "she wanted to find a job, that she can save money" and because her current mental health is a barrier to going to graduate school in 2024. ECF No. 67-38 at 93:4-94:2.

Since her graduation from UVA more than four years ago, Plaintiff has held three jobs totaling about a year and a half of employment: (1) from February 2021 to December 2021/January 2022, she was an unpaid research assistant, (2) from late May 2022 until July or August 2022, she was a social media consultant, earning $20 an hour, and (3) from June 2023 to October 2023, she earned $10,000 as a paralegal. ECF No. 67-1 at 209:2-211:4; ECF No. 67-43, Verzilli Report 2.

On June 12, 2024, Plaintiff submitted her expert disclosure of Verzilli, which consisted of Verzilli's expert Report, (ECF No. 67-43) and a document with Verzilli's fee schedule, curriculum vitae, and five pages of cases in which Verzilli had testified in during the last four years for plaintiffs.

Performing expert work in litigation is Verzilli's source of income, and he has been doing it for 32 years.[1] Ex. 1 at 32:17-19; 34:8-17. In the 500-plus cases he has testified in during his career, he has never opined that a plaintiff incurred no economic loss because, as he said, "if I'm called to court, obviously I'd opine to some measure of economic loss."[2] Id. at 33:15-34:17.

To reach his opinions, aside from talking to Plaintiff's counsel, Verzilli reviewed only Plaintiff's Amended Complaint, her resume from January 2024, her UVA academic transcript, her 2023 W-2, and various publications, namely data available online from the Bureau of Labor Statistics ("BLS"). Ex. 1 at 49:10-19; 56:1-13; ECF No. 67-43. Verzilli renders his opinions in his

---

[1] Verzilli works 50 hours a week on expert work, and once or twice a year he may do 10 to 15 hours for a small business. Ex. 1 at 20:14-21:22.

[2] In the last four years, Verzilli testified on behalf of a defendant one time out of nearly 200 cases. Ex. 1 at 32:5-13.

Report without reviewing all of Plaintiff's W-2s since her graduation, her father's or her ex-coworker's deposition transcripts, any income data about human rights attorneys, any income data about professors, any data about international relations or foreign affairs jobs, any data about the availability of human rights law jobs, data about the cost of law school, or even Plaintiff's deposition. Ex. 1 at 103:15-106:18, 130:22-132:18; ECF No. 67-43. Verzilli has never interviewed Plaintiff. Ex. 1 at 49:20-22. Verzilli is not a vocational expert, he does not know the criteria to get into law school, and he is unaware of Plaintiff's claimed medical or mental health issues. *Id.* at 70:1-14; 89:6-12; 90:16-21; 116:3-20. Verzilli failed to factor in or offset any of Plaintiff's earnings since her graduation or the costs of law school into his calculations.[3] *Id.* at 66:16-67:5, 130:22-131:2, 131:9-16.

## REPORT OF VERZILLI

Verzilli was retained by Plaintiff to provide an "analysis of the loss in earnings relative to Jane Doe. Ms. Doe suffered injuries relating to sexual harassment and sexual assault while a student at the University of Virginia." ECF No. 67-43 at 1. Based on erroneous information from Plaintiff's attorney, Verzilli assumes Plaintiff intended to enter law school in Fall 2020 but she was unable to because of "injuries," namely an inability to get letters of recommendation from professors. Verzilli now recalls Plaintiff did obtain those letters. Verzilli, however, assumes that Plaintiff would have enrolled in law school in Fall 2020, graduated in May 2023, passed the bar, and entered the labor market as an attorney at age 26. ECF No. 67-43. Verzilli assumes that Plaintiff will enroll at law school by Fall 2025 and enter the labor market at age 31. Verzilli further assumes Plaintiff will work continuously as an attorney until age 67, somewhere in the U.S. *Id.*

---

[3] On September 25, 2024, UVA filed its motion for summary judgment on Plaintiff's remaining Title IX claims. UVA refers the Court to the Statement of Undisputed Facts set out therein and referenced evidence. ECF No. 67 at 3-20.

Verzilli did not take into account that Plaintiff wanted to be a human rights lawyer and how that would affect her potential future income, the fact that she wanted to attend an Ivy League school, which bar she would pass, or the geographic market she would work in after she passed the bar. Verzilli did not consider Plaintiff's equally expressed aspiration of going to graduate school, obtaining a Ph.D. and becoming a professor and how this would impact her future earnings or his assumption that she would work continuously *as an attorney* until age 67. Verzilli also did not analyze potential income loss based on Plaintiff entering a career in the field of international relations or foreign affairs. Verzilli failed to offset the costs of law school, including the price tag of an Ivy League law school, in his calculations, and he does not know the average cost of law school. Verzilli also failed to account for mitigation because he did not factor in any of the Plaintiff's earnings since graduation in his conclusions. Verzilli further seeks to opine about lost earning capacity if Plaintiff becomes a paralegal, even though the record contains no evidence that Plaintiff intends to become a paralegal. Verzilli has not provided a supplement to correct any of the above errors, and his opportunity to do so in a timely manner has long expired.

In summary, Verzilli seeks to offer the following opinions:

1. If Plaintiff works as a paralegal and never goes to law school, she will incur future loss earning capacity damages of $3,276,383.

2. If Plaintiff enrolls in law school in Fall 2025, she will incur future loss earning capacity damages of $847,306.

Verzilli's proffered opinions are basic parroting of Plaintiff's counsel and irrelevant and unreliable conclusions based on national income data that estimates Plaintiff's speculative lost earnings because she did not go to law school in Fall 2020 and she has not gone since, for damages of which she cannot recover under Title IX.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
   (b) the testimony is based on sufficient facts or data;
   (c) the testimony is the product of reliable principles and methods; and
   (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Federal Rules of Evidence assign to the trial judge the task of ensuring that an expert's testimony both is relevant and rests on a reliable foundation. *Nease v. Ford Motor Co.*, 848 F.3d 219, 229-30 (4th Cir. 2017) (citing *Daubert*, 509 U.S. at 597). In response to the Supreme Court's decisions in *Daubert* and *Kumho Tire Co. v. Carmichael*, trial judges must act as gatekeepers to exclude unreliable expert testimony in all regards, not just testimony based in science. 509 U.S. at 589-90; 526 U.S. 137, 147-49 (1999). Assuming a witness is qualified, their testimony "must be the product of reliable principles and methods that are reliably applied to the facts of the case." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 Advisory Committee's note). "Reliable expert testimony is 'based on scientific, technical, or other specialized knowledge and not on belief or speculation, and [any] inferences must be derived using scientific or other valid methods.'" *United States v. Katsipis*, 598 F. Appx 162, 164 (4th Cir. 2015) (citing *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001)). Indeed, when an expert seeks to offer opinions "based on a faulty assumption that is unsupported by the evidence," a trial court abuses its discretion to allow such testimony. *Tyger Const. Co. Inc. v. Pensacola*

*Const. Co.*, 29 F.3d 137, 143 (4th Cir. 1994). Further, the opinion testimony must be relevant. *Daubert*, 509 U.S. at 597. The "touchstone" of the relevance inquiry is "whether the testimony will assist the jury." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011); *cf. United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) (explaining expert testimony is "excludable under Rule 702 if it does not aid the jury").

Further, the proponent of the proposed expert testimony bears the burden of establishing admissibility of the testimony by a preponderance of the evidence. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10). Additionally, under Rule 403, the Court may exclude expert testimony "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Daubert*, 509 U.S. at 595.

## ARGUMENT

### I.  Verzilli's Proffered Opinions Are Irrelevant

Verzilli's proffered opinions are irrelevant, and thus they will not assist the trier of fact, for at least three reasons.

*First*, Plaintiff's claim for lost earning capacity damages based on her "aspiration," as stated by Verzilli, is unavailable pursuant to the Supreme Court's holding in *Cummings v. Premier Rehab Keller*, P.L.L.C., 596 U.S. 212, 220-21 (2022) and Fourth Circuit authority, holding that lost earning capacity damages are not recoverable merely because a plaintiff specifies an aspirational position in breach of contract actions.[4] *Rice v. Cmty. Health Ass'n*, 203 F.3d 283, 289-90 (4th Cir. 2000) (holding consequential damages for lost earning capacity are too speculative

---

[4] UVA refers to and fully incorporates herein its arguments addressing Plaintiff's request for unavailable damages for lost earning capacity pursuant to *Cummings* filed in its Memorandum in Support of its Motion for Summary Judgment. ECF No. 67.

unless plaintiff pleads and proves identifiable professional opportunities that would have been available absent the breach and that were contemplated by the parties when they formed the contract); *B.R. v. F.C.S.B*, No. 1:19-cv-917, 2024 U.S. Dist. LEXIS 57019, at *21-22 (E.D. Va. Feb. 26, 2024).

Plaintiff has never taken the LSAT or applied to law school. She has not drafted her personal statement for law school applications. Verzilli's proffered opinions are based on an assumption that Plaintiff could not pursue her purely theoretical, "ideal" career path, as explained by the Plaintiff herself. She has no plan to become an attorney, and, in any event, her actions demonstrate that her ideal career is just that, a whim, a hope, the perfect situation that she has no real intention of pursuing. Under *Cummings*, such speculative and attenuated damages, of which UVA could never have imagined it would be held liable for when it accepted federal monies, are not available. Accordingly, Verzilli's proffered opinions about Plaintiff's lost income capacity are not relevant to a fact at issue in this case.

*Second*, Plaintiff has not identified a vocational expert to opine that she is qualified or an appropriate candidate for law school and to work in the law profession. Plaintiff also has not identified any expert witness who will opine as to causation. In other words, Plaintiff has no expert witness who will testify that because of UVA's handling of her Title IX complaint, she suffered mental health issues or any other issue that prevented her from going to law school. Verzilli is unaware why Plaintiff has not gone to law school, as he "didn't ask." Ex. 1 at 96:3-16. To the extent Plaintiff intends to maintain, as Verzilli assumed, that she did not go to law school because she could not get letters of recommendation after pursuing a Title IX complaint against Roe, the evidence shows that when Plaintiff requested letters, UVA's professors, gave her glowing letters of recommendation. *Id.* at 55:15-22. Plaintiff's speculation and refuted allegations about why she

did not and still cannot go to law school, four-plus-years later, fail to establish the necessary nexus to Verzilli's opinions. Without testimony to establish causation, Verzilli's opinions about speculative lost earning capacity damages are irrelevant. Telling the jury how much money Plaintiff would have made had she gone to law school in Fall of 2020 will not assist the trier of fact to determine any issue in this case.

*Third*, Verzilli's proffered opinions are irrelevant because Plaintiff has no plan of going to law school in Fall 2025 or anytime. Plaintiff's latest aspiration is going to graduate school and entering the field of international relations or foreign affairs, and because of this, she is studying for the GRE. Verzilli's conclusions about Plaintiff's lost earning capacity *as an attorney* will not assist the jury with any fact at issue.

## II.  Verzilli's Proffered Opinions Are Unreliable

Verzilli's proffered opinions are rooted in speculation, flawed assumptions, and hearsay, and he fails to reliably apply any principles or methods to the facts of this case.

"'[T]he test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *Wilson*, 484 F.3d at 274 (quoting *Kumho Tire Co.*, 526 U.S. at 141-42). The test for reliability necessarily varies depending on the nature of the proffered testimony. If the testimony is scientific in nature, then the typical *Daubert* analysis applies. *See id.* If, however, the testimony is experiential, then the district court must require the expert to "explain how his experience leads to the conclusion reached, why his experience is a sufficient basis for the opinion, and how his experience is reliably applied to the facts." *Id.* (citing *Daubert,* 509 U.S. at 593). Merely proffering credentials and conclusions "supplies nothing but a bottom line." *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419–20 (7th Cir. 2005) (holding that a witness

who invokes 'my expertise,' but cannot explain how her conclusions comport with Rule 702 requirements, is "not entitled to give expert testimony").

Here, Verzilli's opinions also do not satisfy Rule 702 of the Federal Rules of Evidence, requiring the testimony to be based on sufficient facts, the product of reliable principles and methods, and that the expert has reliably applied the principles and methods to the facts of the case. Verzilli admits that most of his information comes from Plaintiff's attorney, who told him that Plaintiff still aspires to become an attorney, and it is from Plaintiff's counsel that he received the "attorney assumption" that lacked any "kind of facial input" that Plaintiff had the potential to work as an attorney. Ex. 1 at 87:9-88:13; 96:3-16. Verzilli decided Plaintiff's counsel's attorney assumption about Plaintiff's qualifications was reasonable because Plaintiff graduated from UVA with a 3.9 G.P.A. *Id.* Verzilli, however, did not consider Plaintiff's high school grades, which showed she that she earned Bs and Cs in addition to As. Ex. 2. He did not ask for or review Plaintiff's high school grades, and he refused to explain why those high school grades would not change his opinions. Ex. 1 at 87:9-88:13.

Verzilli's opinion is also based on the assumption that Plaintiff intends to go to law school, and the evidence shows that she intends to go graduate school and pursue a career other than law. Verzilli admitted that "[i]f you change that assumption [Plaintiff's plan to go to law school], then obviously my opinion would change." Ex. 1 at 58:1-8. Similarly, even after admitting that Plaintiff received the letters of recommendation that he had assumed were why Plaintiff did not go to law school, he refused to change his conclusions. *Id.* at 56:22-59:6; 91:19-92:5. Verzilli's opinions are not based on sufficient facts.

Verzilli also did not consider all of Plaintiff's earnings since her graduation. Verzilli deemed it relevant that Plaintiff earned $10,000 from a law firm as shown in her W-2 from 2023,

but he did not subtract those earnings from his calculations on claimed damages for mitigation. *Id.* at 65:10-67:21. Likewise, Verzilli did not review or ask for Plaintiff's other W-2s and thus he consider or even know that Plaintiff had earned wages at Atlantic Council. *Id.* Verzilli could not say if Plaintiff's wages at Atlantic Council would change his opinions in his Report but then he claimed that he had assumed that Plaintiff would have earned something similar during the summers in law school, even though his Report makes no mention of any such assumption and thus must be struck for failure to comply with Rule 26(a)(2)(B). Verzilli retorted: "I mean if you want to take out ten grand, you can. I don't know what she earned at Atlantic Council, but that may – you know, if that's considered to be mitigation, you could subtract it." *Id.* at 67:18-22. This demonstrates that Verzilli's proffered testimony fails to comply with the reliability requirements of Rule 702.

Moreover, Verzilli's proffered expert opinion does not reflect a reliable application of the principles and methods to the facts of this case. Verzilli relies on national income data for attorneys available online at BLS.gov. He does not take into account that Plaintiff aspired to become a human rights attorney. He does not know how being a human rights attorney would affect Plaintiff's projected earnings, but he agrees that the type of law an attorney practices and where they work affects average salaries. *Id.* at 103:4-22. He does not know the job market for human rights attorneys. He does not consider that Plaintiff wanted to then get a Ph.D. and become a professor. He does not consider how this would affect her earnings, although he admits careers in academia garner lower salaries on average than salaries for lawyers and have to be evaluated differently because of the career progression for professors. *Id.* at 117:12-120:16. He did not consider or offset the cost of law school in his conclusions, and he does not know the average cost of law school, including at an Ivy League. He does not apply reliable principles to Plaintiff's case.

He does not know where the Plaintiff would like to go to law school and if this would affect her opportunities post-graduation. He does not know which bar exam she would take. He does not know or consider where she would live and practice, even though he admits geography impacts salaries. *Id.* at 101:10-102:6. None of these facts were considered in his opinions. Instead, he uses blanket national data that is not specific to the Plaintiff to claim general lost earnings for some kind of attorney who would practice for the next 36 years continuously.

To be sure, Verzilli assumes without any reasonable justification that Plaintiff will work continuously from age 31 to age 67. His assumption that Plaintiff would work until normal retirement is unreasonable given the facts of the case and in light of his admission that he does not know why Plaintiff has not been employed in any capacity for nearly a year. *Id.* at 75:19-76:2.. Not only does Plaintiff state she wants to be a professor, but given her sporadic work history, it is unclear why Verzilli believes it would be reasonable to assume she will work until normal retirement age.

In sum, Verzilli's proffered opinions are inherently unreliable and thus should be excluded pursuant to Rule 702.

## III.   Verzilli's Opinions Would Confuse the Jury and Be Unfairly Prejudicial

Plaintiff seeks to employ Verzilli to sway the jurors by telling her story through "an expert," thereby bolstering her credibility, which is wholly improper. The entirety of Verzilli's facts, as told to him by Plaintiff's attorney, is hearsay and inadmissible if offered through Verzilli. Moreover, Verzilli's testimony is likely to unfairly prejudice UVA by giving the weight and veneer of the truth and credibility to that of which this proposed expert knows nothing other than what the Plaintiff's attorney may have told him. Any probative value of Verzilli's proposed testimony

is substantially outweighed by its prejudicial effect. Accordingly, Verzilli's anticipated testimony should be excluded.

## **CONCLUSION**

Plaintiff cannot satisfy her burden to show, by a preponderance of the evidence, that her expert's opinions satisfy reliability requirements of Federal Rule of Evidence 702. While Verzilli's Report and opinions attempt to invoke his "expertise" as an economist, his deposition testimony confirms that he cannot square his conclusions with the requirements of Rule 702. For the foregoing reasons, UVA respectfully requests that the Court grant its motion to exclude Verzilli as an expert witness in this case.

Respectfully submitted,

**THE RECTOR AND VISTORS OF THE UNIVERSITY OF VIRGINIA**

By Counsel: */s/ Christopher P. Bernhardt*
Christopher P. Bernhardt* (VSB No. 80133)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone:(804) 371-0977
Facsimile: (804) 371-2087
Email: cbernhardt@oag.state.va.us
*Counsel of Record for Defendant*

Amy E. Hensley* (VSB No. 80470)
Associate University Counsel/Assistant Attorney General
1827 University Avenue
Charlottesville, Virginia 22904
Telephone: (434) 924-3685
Email: aehensley@virginia.edu
*Counsel of Record for Defendant*

Jason S. Miyares
Attorney General of Virginia

Thomas J. Sanford
Deputy Attorney General

Jacqueline C. Hedblom
Senior Assistant Attorney General/ Trial Section Chief

### **CERTIFICATE**

I hereby certify that on September 25, 2024, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system.

*/s/ Christopher P. Bernhardt*
Christopher P. Bernhardt* (VSB No. 80133)
Assistant Attorney General

15