**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RECTOR AND VISITORS OF THE** | ) | |
| **UNIVERSITY OF VIRGINIA,** | ) | |
| | ) | **Case No. 3:23-cv-00018-RSB** |
| **Defendant.** | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY**
**JUDGMENT**

## TABLE OF CONTENTS

ARGUMENT ....................................................................................................................... 1

I.    Plaintiff abandons her Title IX claim based on Biemann's alleged actual knowledge in January 2019 .................................................................................................................... 1

II.   The undisputed material facts establish that Plaintiff's December 2018/January 2019 Title IX claim is time-barred ................................................................................................... 3

   a.   Plaintiff's Title IX deliberate indifference claim based Biemann's alleged actual knowledge accrued in January 2019, not on August 6, 2021 ............................................. 3

   b.   Plaintiff was sent and received the exhibits to the Draft Report, including Biemann's interview transcript, on August 26, 2020 .......................................................................... 5

   c.   Biemann's deposition testimony and declaration statements have no bearing on when Plaintiff's claim accrued and are not contradictory ..................................................... 7

   d.   UVA's training of Biemann on its Title IX Policy is irrelevant to the timeliness of Plaintiff's claim ............................................................................................................ 10

III.  The undisputed record evidence demonstrates that UVA was not deliberately indifferent to Plaintiff's March 2020 Title IX complaint ..................................................................... 11

IV.   Plaintiff cannot be awarded any of the damages she seeks ............................................. 16

   a.   *Cummings* is binding on this Court ............................................................................... 16

   b.   Plaintiff cannot prove any damages ............................................................................... 20

   c.   Plaintiff's failure to comply with Rule 26(a)(1)(A)(iii) requires exclusion of her damages evidence ........................................................................................................... 22

   d.   There is no dispute of material fact on Plaintiff's damages ........................................... 25

CONCLUSION ................................................................................................................... 25

CERTIFICATE ................................................................................................................... 26

The record establishes that Plaintiff is entitled to summary judgment as a matter of law. Indeed, the record shows that Plaintiff's Title IX deliberate indifference claim based on events during the J-Term trip in December 2018 and January 2019 accrued in January 2019 and is barred by the statute of limitations. In addition, Plaintiff abandoned this claim, conceding she cannot establish the requisite element of actual notice or knowledge because Professor Biemann did not witness any interaction that could objectively be construed as sexual harassment. Moreover, once UVA received Plaintiff's Title IX complaint in March 2020, the undisputed record evidence shows that UVA provided Plaintiff with counseling resources, academic accommodations, and support and also swiftly responded with a fair, thorough, and impartial Title IX investigation. To be sure, the investigation was large-scale and extensive, growing from one report of nonconsensual contact to 11 occurring over 13 months and mostly while Plaintiff and her abuser were in a sexual and romantic relationship. The investigation resulted in a final report totaling 319 pages with exhibits of 1,737 pages. At its completion, UVA found Plaintiff's abuser responsible and sanctioned him. Plaintiff graduated on time with a perfect GPA in her final semester. The record shows that Plaintiff cannot establish that UVA acted with deliberate indifference as a matter of law, and thus, there is no genuine issue as to any material fact. Finally, Plaintiff cannot recover any of the damages she seeks because they are barred by Supreme Court precedent and her damages evidence should be stricken for failure to comply with the federal rules. Accordingly, Defendant is entitled to summary judgment on all of Plaintiff's remaining claims.

## **ARGUMENT**

### I. **Plaintiff abandons her Title IX claim based on Biemann's alleged actual knowledge in January 2019**

By failing to respond to UVA's arguments that there is no evidence that Asher Biemann ("Biemann") witnessed any interaction between Plaintiff and John Roe ("Roe") during the J-Term

1

trip that can be objectively construed as sexual harassment, Plaintiff has abandoned her Title IX deliberate indifference claim arising from the J-Term trip. The undisputed material facts about January 11, 2019, when Roe and Biemann came to Plaintiff and her roommate's hotel room door on the last night of the J-Term trip, cannot objectively be construed as sexual harassment. ECF No. 67 at ¶ 5. Similarly, the December 27, 2018 dinner, during which Roe interacted normally with Plaintiff, did not touch Plaintiff, and did not say anything sexually suggestive to her, could not objectively be construed as sexual harassment. *Id.* at ¶ 2. As such, Plaintiff cannot show UVA had actual notice or knowledge of sexual harassment in December 2018 or January 2019, which is necessary to impute liability to UVA. *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 263-64 (4th Cir. 2021). UVA argued these points at length in its memorandum, ECF No. 67 at 24-26, and Plaintiff replied with silence.

Courts in the Fourth Circuit require plaintiffs to oppose summary judgment on each claim they wish to preserve. *See Orbit Corp v. FedEx Ground Package Sys.*, No. 2:14cv607, 2016 U.S. Dist. LEXIS 155212, at *53-54 (E.D. Va. Nov. 8, 2016) (collecting cases). "Failure to raise issues in opposition to summary judgment functions as a waiver." *Johnson v. United States*, 861 F. Supp. 2d 629, 634 (D. Md. 2012) (citation omitted); *see Kairgadam v. Bell Atl. Corp.*, 46 F. Appx 194, 195 (4th Cir. 2002); *Whitlock v. McCarthy*, No. 1:21-cv-008, 2021 U.S. Dist. LEXIS 249461, at *20 n.5 (E.D. Va. Dec. 28, 2021) (holding plaintiff "effectively waived or abandoned" claims by not meaningfully opposing dismissal in opposition to summary judgment).

It is unsurprising that Plaintiff abandoned this claim—her own testimony about the December 27, 2018 dinner and the January 11, 2019 interaction outside the hotel room could not objectively be construed as sexual harassment to put Biemann, and thus UVA, on actual notice that Roe was sexually harassing her. Accordingly, UVA is entitled to summary judgment on this claim.

## II. The undisputed material facts establish that Plaintiff's December 2018/January 2019 Title IX claim is time-barred

### a. Plaintiff's Title IX deliberate indifference claim based on Biemann's alleged actual knowledge accrued in January 2019

The record shows that Plaintiff's 2018/2019 deliberate indifference claim accrued no later than January 2019 when she asserts Roe sexually harassed her in Biemann's presence and Biemann did not intervene or report the harassment to UVA. Witnessing an objective act of sexual harassment, as viewed through the lens of a reasonable official, satisfies the actual notice requirement. *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th at 267-68. Plaintiff does not dispute that she saw Biemann standing next to Roe during the January 11, 2019 event when they came to the door of Plaintiff and her roommate's hotel room. ECF No. 67-1 at 148:7-14, 163:6-19. It is undisputed that Biemann did not intervene or report this incident to UVA. ECF No. 67-2 at ¶ 18.

Although Plaintiff previously admitted that her "Title IX claim did not accrue until she knew or had reason to know that a UVA official with the authority to take corrective action—such as Biemann—knew of Roe's harassment and failed to respond appropriately,"[1] she now asserts, relying on inapplicable law, that this claim did not accrue until August 6, 2021 when she learned that the Provost affirmed the Review Panel's findings and imposed sanctions on Roe. Pl.'s Opp., ECF No. 88 at 7-9. *Reid v. James Madison University*, which Plaintiff relies on for her new legal position, was a Title IX *employment discrimination* claim, where the plaintiff-faculty member was accused of violating the university's Title IX policy. 90 F.4th 311, 314 (4th Cir. 2024). The university investigated and found that Reid had violated the policy. *Id.* The Fourth Circuit held that Reid's employment discrimination claim based on the Title IX investigation did not accrue

---

[1] Pl.'s Resp. to Defs.' Mot. to Dismiss, ECF No. 31 at 8.

until the university made a final decision in the Title IX proceeding against Reid, which was when the provost denied her appeal pursuant to the university's Title IX policy. *Id.* at 323.

The *Reid* court's analysis of claim accrual of a Title IX employment discrimination claim is inapplicable to Plaintiff's deliberate indifference claim based on Biemann's alleged failure to respond to witnessing Roe's sexual harassment. Plaintiff had a "complete and present cause of action" in January 2019 when she knew Biemann had witnessed the January 11, 2019 hotel door interaction and did nothing. *Id.* at 319 (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

Plaintiff does not dispute any of the material facts regarding Roe and Biemann stopping by her and her roommate's hotel room on January 11, 2019. ECF No. 67 at ¶ 5. It is undisputed that Plaintiff could see both Biemann and Roe during this event. ECF No. 67-1 at 148:7-14, 163:6-19. It is equally undisputed that Biemann did not report this incident to UVA. ECF No. 67-2 at ¶ 18. Accordingly, the undisputed facts are that Plaintiff's claim accrued on January 11, 2019 when she believed she had been sexually harassed and Biemann, a UVA employee, took no action. *Nasim v. Warden, Md. House of Corr.*, 64 F. 3d 951, 955 (4th Cir. 1995).

Even though she was on inquiry notice and had a duty to inquire about reasonably discoverable details, Plaintiff asserts, for the first time, that her claim did not accrue on January 11, 2019 because she did not know about UVA's Title IX Policy. ECF No. 88 at 21. Plaintiff cites no authority to show that a claim does not accrue until a plaintiff reviewed a Title IX policy. This is because none exists. The Fourth Circuit does not require a plaintiff to have complete knowledge of her legal claim before it accrues. A plaintiff need only possess "sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim*, 64 F.3d at 955.

This claim is time-barred because Plaintiff filed this action more than two-years after January 2019.

**b. Plaintiff was sent and received the exhibits to the Draft Report, including Biemann's interview transcript, on August 26, 2020**

Plaintiff argues that there is a genuine issue of material fact as to whether her December 2018/January 2019 Title IX deliberate indifference claim is timely because of information she learned in the April 30, 2021 Final Investigation Report ("Final Report"). ECF No. 88 at 9-11. This argument is wrong legally and factually and cannot make her claim timely.

Since Plaintiff knew on January 11, 2019, that Biemann witnessed when Roe allegedly harassed her and he took no action, what she learned in the Draft Investigation Report ("Draft Report") and Final Report is irrelevant to when her claim accrued—she already knew that she had been hurt and who inflicted the injury on January 11, 2019. *Nasim*, 64 F. 3d at 955.

Even if Plaintiff did not know Biemann witnessed the January 11, 2019 event, which is refuted by the record, on August 26, 2020, Plaintiff received the transcript of the Title IX Investigators' interview of Biemann when she received the Draft Report and its exhibits, and she cannot create a genuine issue of material fact by stating she does not recall receiving it. ECF No. 88 at 10-11. On August 26, 2020, Tosha Barnes, one of the Title IX Investigators, sent Plaintiff the Draft Report and its exhibits, which included the transcript of Biemann's interview, by providing a link to an electronic folder that contained them. ECF No. 67-19 at ¶ 40; Ex. 1 - Barnes Reply Decl. at ¶¶ 4-5. Barnes placed the Draft Report and all of its exhibits into the folder that she then shared with Plaintiff on August 26, 2020. *Id.* at ¶ 5. In addition to attaching Biemann's interview transcript as an exhibit, the Investigators cited it and quoted from it in the Draft Report.[2] ECF No. 67-26 at 52-53, 173, 414-31 (UVA000075-76, 196, 437-454). Indeed, on September 7, 2020, Plaintiff responded to the Draft Report and referenced information contained in Biemann's

---

[2] The record refutes that Plaintiff "had no idea what Biemann had said about the J-Term trip" until she received the Final Report on April 30, 2021. ECF No. 88-4 at ¶ 84.

interview transcript. ECF No. 67-4 at 1978 (UVA004423) ("I would like to state that I believe the testimonies given by [other individuals interviewed], and Professor Biemann discredit [a student's] story . . . ."). Plaintiff told the Investigators, "You have already heard from Professor Biemann that I also stayed late after his classes to talk with him," referencing information from the following line in Biemann's interview transcript, "[Plaintiff] would sometimes stay after class just to walk through the corridor with more questions." *Compare* ECF No. 67-4 at 1978 (UVA004423) *with* ECF No. 67-26 at 424 (UVA000447). Notably, Plaintiff, in her declaration and at her deposition, did not deny receiving the transcript of Biemann's interview, nor could she do so truthfully, since the record shows she commented on its contents in early September 2020. ECF No. 88-4 at ¶ 54.

In an odd and doomed attempt to establish the timeliness of her December 2018/January 2019 claim, Plaintiff claims she learned two pieces of "new information" in the Final Report: the Investigators were not going to assess Biemann's failure to report or his credibility; and the Investigators determined Biemann's description of Plaintiff's J-Term behavior was insufficient to prove that Roe had sexually harassed her. ECF No. 88 at 10. Neither is relevant to her claim's accrual analysis. The undisputed evidence proves that Plaintiff possessed sufficient facts about the harm done to her in January 2019 to reveal a cause of action. Moreover, UVA's investigation did not include the alleged January 11, 2019 event nor was Biemann being investigated for Plaintiff's Title IX complaint against Roe. Indeed, UVA's three notices of investigation, which Plaintiff received, defined the scope of UVA's investigation. ECF Nos. 67-17, 67-22, 67-28. Plaintiff's "new information" fails to save her untimely claim.[3]

---

[3] Notably, Plaintiff does not argue that there is anything in the Final Report that establishes that Biemann knew in December 2018 or January 2019 that Roe was sexually harassing her during the J-Term. *See* ECF No. 67-19 at ¶ 74 (stating that there is no such information in the Final Report).

In short, even if, on January 11, 2019, Plaintiff had not seen that Biemann was standing next to Roe when he came to Plaintiff and her roommate's hotel room, which is refuted by the record, Plaintiff received the information about what Biemann knew about the J-Term trip on August 26, 2020 when she received the Draft Report and its exhibits, which included the transcript of Biemann's interview. Accordingly, even if the Court accepts that Biemann's interview transcript provided Plaintiff with necessary knowledge for her claim to accrue, which it did not, Plaintiff's claim accrued on August 26, 2020 and is barred by the two-year statute of limitations.

### c.   Biemann's deposition testimony and declaration statements have no bearing on when Plaintiff's claim accrued and are not contradictory

Plaintiff argues that alleged contradictions between Biemann's deposition testimony and his declaration create a genuine issue of material fact as to his credibility, which she asserts must be analyzed to determine if UVA, through Biemann, had actual notice of Roe's sexual harassment in December 2018/January 2019. ECF No. 88 at 11, 20. Plaintiff is mistaken because the identified differences, which are not factual contradictions, do not refute the undisputed evidence that shows Plaintiff's claim accrued in January 2019.[4]

First, Biemann's credibility has no bearing on the facts relevant to Plaintiff's claim accrual, namely when Plaintiff knew that Biemann witnessed behavior by Roe towards Plaintiff that could objectively be construed as sexual harassment and did nothing. Those facts come primarily from Plaintiff's own deposition testimony regarding the December 27, 2018 dinner and the January 11, 2019 incident when Roe and Biemann came to the hotel room door.

---

[4] Plaintiff argues that two of Biemann's declaration statements consist of inadmissible hearsay. ECF No. 88 at 17-18, 20. Plaintiff is mistaken. First, Biemann stating that Roe contacted him to say he would not be involved in the J-Term is not hearsay. Biemann can testify to his personal knowledge of Roe contacting him because it is not offered for the truth of what Roe said. Fed R. Evid. 801. Second, Plaintiff telling Biemann that the Title IX process had begun is not hearsay, as an opposing party's statement. Fed R. Evid. 801(d)(2).

Furthermore, almost half of the alleged differences Plaintiff identifies relate to Biemann's actions in February 2020 after Plaintiff told him on February 17, 2020 of her relationship with Roe since the J-Term trip, or his reflections after gaining that knowledge. ECF No. 88 at 14-17, 19-20. These alleged factual discrepancies are irrelevant to the timeliness of Plaintiff's January 2019 claim. Moreover, this Court already ruled that Plaintiff's claim arising from any delay in reporting in February 2020 by Biemann or other UVA employees is barred by the statute of limitations. ECF No. 42 at 8. Accordingly, to the extent that there are any significant factual contradictions, which there are none, these cannot create a dispute of material fact as to the timeliness of Plaintiff's claim.

Second, on their face, the approximately twenty differences that Plaintiff identifies do not consist of "bona fide inconsistencies" where Biemann contradicts his prior testimony such that those parts of his declaration should be excluded. *Clark v. Payne*, No. 3:20-cv-00017, 2024 U.S. Dist. LEXIS 44329, at *16-17 (W.D. Va. Mar. 13, 2024). A court may disregard a subsequent affidavit of a witness that is "inherently inconsistent with deposition testimony." *Loney v. Miles*, No. 98-2826, 2000 U.S. App. LEXIS 8673, at *9 (4th Cir. May 3, 2000) (unpublished) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975-76 (4th Cir. 1990)). However, a subsequent statement that provides additional detail and context is not disregarded. *Jessup v. Barnes Grp., Inc.*, 23 F.4th 360, 367 (4th Cir. 2022).

Instead of identifying statements from Biemann's declaration that are inherently inconsistent with prior testimony, Plaintiff catalogs immaterial differences, such as: Biemann stating in his declaration that he is "generally aware" of the Title IX investigation that is the subject of this lawsuit although he testified in his deposition that he was interviewed for the investigation (ECF No. 88 at 11-12); in his declaration, Biemann stated he taught the J-Term course in Austria

and Hungary with Roe on several occasions but at his deposition he testified that he and Roe had taken four or five study abroad trips together including to Warsaw and Budapest (*id.* at 12).

Many of the purported differences Plaintiff identifies border on the absurd. Plaintiff complains that Biemann testified it was a "surprise" to learn that Roe had a sexual relationship with Plaintiff but in his declaration he states it was a "surprise" *and* a "shock" to learn of the relationship. ECF No. 88 at 14. Although pointing out that difference is inane on its own, Plaintiff omits that she quoted Biemann's pre-deposition Title IX interview testimony where he said learning of the relationship came "by total surprise, by total shock" in her Amended Complaint. ECF No. 21 at 30.[5] Similarly, Plaintiff claims Biemann contradicted himself when he stated in his declaration that Plaintiff shared that she had been at UVA's hospital for suicidal ideation but in his deposition he testified that she ended up in the emergency room. ECF No. 88 at 14.

Indeed, Plaintiff seems intent on willfully misunderstanding Biemann. In his declaration, Biemann stated: "In December 2018 and January 2019, I did not report any incidents from the J-Term Course to UVA's Title IX Coordinator. I was not aware of having witnessed or learned of any acts of sexual harassment or other conduct prohibited by the Title IX policy during the J-Term Course." ECF No. 67-2 at ¶ 18. Plaintiff asserts that Biemann contradicted himself for not including what he learned from Plaintiff in February 2020, despite this declaration statement clearly being limited to what he was aware of during the J-Term trip. ECF No. 88 at 13-14. In this same vein, Plaintiff misquotes Biemann's interview with the Title IX Investigators and misrepresents to the Court that Roe had told Biemann that Plaintiff loved Roe. ECF No. 88 at 19. Rather, Biemann told the Investigators that Roe told him that Biemann was Plaintiff's "favorite

---

[5] On May 21, 2020, Plaintiff herself told the Investigators that Biemann "was shocked" when she told him of her relationship with Roe. ECF No. 67-4 at 881 (UVA003326).

teacher" and Roe would tell Biemann "I'll show you [Plaintiff] love[s] you." ECF No. 67-4 at 573 (UVA003018). At his deposition, Biemann explained Roe's comments were about Plaintiff loving Biemann, not Roe. Ex. 2 - Biemann Tr. at 96:21-98:17. Setting aside Plaintiff's misrepresentation, Biemann only noticed Roe's comments as odd in retrospect after Plaintiff told him of their relationship. None of these alleged inconsistences are relevant to when Plaintiff's claim accrued.

### d. UVA's training of Biemann on its Title IX Policy is irrelevant to the timeliness of Plaintiff's claim

In another muddled attempt to establish the timeliness of her claim, Plaintiff contends that UVA failed to properly train Biemann on its Title IX Policy[6] and that this raises a genuine issue of material fact as to whether Biemann properly understood at the time of the J-Term trip whether Roe's actions constituted violations of UVA's Title IX Policy. ECF No. 88 at 20-21. However, as this Court noted, the actual notice requirement necessary to establish an institution's liability under the deliberate indifference standard is objective. ECF No. 42 at 9 (citing *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th at 264). Accordingly, Biemann's subjective understanding of whether Roe's actions during the J-Term trip constituted sexual harassment is irrelevant to both the analysis of whether UVA was deliberately indifferent and when Plaintiff's claim accrued.

### III. The undisputed record evidence demonstrates that UVA was not deliberately indifferent to Plaintiff's March 2020 Title IX complaint

Confronted with the overwhelming undisputed evidence in the record that UVA responded to Plaintiff's Title IX complaint with an immediate, thorough, and fair investigation and Title IX process, which found her abuser responsible for multiple policy violations and punished him

---

[6] Plaintiff has misrepresented to the Court that UVA has no records of ever training Biemann on its Title IX Policy. ECF No. 88 at 4, 20-21. In discovery, Plaintiff requested documentation of Title IX trainings provided to Biemann and other UVA staff from January 1, 2018, to August 6, 2021. Ex. 3 – Pl.'s 1st Discovery Requests at 3, 14. Accordingly, UVA provided Plaintiff with responsive information for this time period and indicated the same. ECF No. 88-5 at 15-16.

accordingly, Plaintiff flails, responding with three flawed arguments. All fail to demonstrate a dispute of a material fact. Because Plaintiff cannot prove deliberate indifference, an essential element of her March 2020 Title IX claim, summary judgment must be granted.

*First*, whether or not, Plaintiff told Associate Dean of Students Laurie Casteen ("Casteen") about her relationship with Roe and emphasized that it was a consensual romantic relationship on February 24, 2020 fails to create a material fact in dispute. *See* ECF No. 88 at 23-24. This Court dismissed Plaintiff's February 2020 deliberate indifference claim, ECF No. 42, and thus, whether Plaintiff told Casteen in February 2020 "all, if not most of the facts" fails to establish any essential element required to proceed on her claim.[7]

*Second*, Plaintiff's contention that UVA's Title IX process should have moved faster, which she admits is her unsubstantiated "opinion," fails to refute the undisputed record evidence to create a material fact in dispute. Ex. 4 - Pl.'s Dep. at 102:3-103:6. Plaintiff cites a Ninth Circuit decision and argues that a delayed response constitutes deliberate indifference if it prejudices the plaintiff or was a deliberate attempt to sabotage the plaintiff's complaint or its resolution, but points to no evidence in the record establishing either. ECF No. 88 at 24-25. Rather, citing *Karesek v. Regents of the University of California*, 956 F.3d 1093 (9th Cir. 2020), with only a conclusory statement, Plaintiff claims the duration of UVA's response prejudiced her. ECF No. 88 at 25. But *Karasek* and its predecessor, *Oden*, rejected arguments of deliberate indifference and found no prejudice to the plaintiffs in the cases of 13, 9, and 8.5-month delays between reporting and final sanction, as the

---

[7] Even if it is relevant, which it is not, the record shows that Plaintiff and Casteen met on February 24, 2020, and Plaintiff discussed her relationship with Roe at length. Casteen's Title IX report on March 15, 2020 states that Plaintiff, on February 24, 2020, conveyed the relationship as hurtful but entirely consensual. ECF No. 67-4 at 1974-75 (UVA004419-20). The Investigators noted that "[Plaintiff] does not dispute that she initially told both Biemann and Dean Casteen that the parties' sexual activity during J-term was consensual." ECF No. 67-4 at 241 (UVA002686).

universities were not idle during those periods. *Karesek*, 956 F.3d at 1106, 1119-1110; *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089-90 (9th Cir. 2006) (affirming summary judgment to university, and noting "[a]lthough the nine-month delay was 'negligent, lazy, or careless,' it did not amount to deliberate indifference, given the school's actions in the meantime").

In stark contrast, the Eleventh Circuit found that a plaintiff alleged deliberate indifference to survive a motion to dismiss, where she had been gang-raped by members of the basketball team, the police investigated and produced a report corroborating her account within a few months, but the university took no action and by the time the disciplinary hearing was held eleven months later, some assailants no longer attended the university. *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282 (11th Cir. 2007).

To be sure, Plaintiff points to no evidence in the record that establishes that UVA sat idly by or intentionally delayed to sabotage her complaint. The record demonstrates that from start to finish, UVA responded with thoroughness, diligence, and fairness in its extensive investigation and resolution of Plaintiff's complaint as well as with unwavering support to Plaintiff, which included counseling, academic accommodations, and an available support resource in Casteen. Indeed, UVA supported Plaintiff with counseling options after she graduated. ECF No. 67-5 at ¶ 31. Plaintiff points to nothing in the record to dispute these facts, which is fatal to her Title IX claim.[8]

As far as Plaintiff's spaghetti-at-the-wall arguments—none provides her with the salvation she seeks. In response to Plaintiff's claim that the Final Report could have been done faster because

---

[8] Even if she did tell Casteen in February 2020 about "most" of her relationship with Roe, Plaintiff's gripe about having to repeat herself to the Investigators charged with investigating her Title IX complaint fails to establish deliberate indifference. ECF No. 88 at 24. The undisputed evidence shows that Casteen had a supportive role to Plaintiff and did not investigate her Title IX complaint or participate in its adjudication. ECF No. 67-5 at ¶ 29. Plaintiff cites no authority, nor could she, that a funding recipient exhibits deliberate indifference when its investigators interview a complainant, even multiple times, who alleges 11 policy violations over a 13-month period.

it was a copy-paste job from the Draft Report, the reports and their exhibits speak for themselves, and this argument is refuted by the record. ECF No. 88 at 26. Likewise, Plaintiff's conclusory opinion that the Final Report was "unwieldy" and contains irrelevant information fails to establish deliberate indifference. *Id.* at 25-26. In addition, Plaintiff's claim that UVA did not respond after her discussion with Biemann in February 2020 is irrelevant for at least two reasons: (1) this Court dismissed Plaintiff's February 2020 claim, and (2) a funding recipient's duty to respond without deliberate indifference does not trigger until it receives actual notice of a violation and here notice did not occur until March 2020. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). Finally, Plaintiff's qualms with UVA's Title IX Policy and practices designed to ensure a fair and thorough investigation and due process for both parties fail to establish deliberate indifference.[9] ECF No. 88 at 26. At bottom, Plaintiff's preference that her Title IX complaint had been resolved faster fails to establish the required element of deliberate indifference for her claim to survive.

*Third*, in her final argument, Plaintiff argues deliberate indifference for lack of supportive or remedial measures. Again, she misstates the record, and again she fails to demonstrate a material fact in dispute. For starters, UVA provided Plaintiff with supportive measures, including counseling, academic support and accommodations, and a support resource in Casteen. UVA warned Roe against retaliating against Plaintiff for making the Title IX report. ECF No. 67-4 at 394 (UVA002839). There is no evidence in the record that UVA ever refused Plaintiff's request for

---

[9] UVA's Title IX Policy states the parties will have an equal opportunity to be heard, submit information and corroborating evidence, identify witnesses, and submit questions for each other or any witness, during the investigation, including after review of the Draft Report. ECF No. 11-1 at 15, 16. UVA's investigatory practice, which was followed here, provided for parties to have the opportunity to respond to new substantive evidence obtained by the investigators before the investigators prepared the final report. Ex. 1 at ¶¶ 9-11.

any supportive or remedial measure, ever. Similarly, there is no evidence that Plaintiff communicated to UVA that its supportive or remedial measures had been ineffective.

To the extent Plaintiff claims that she told Casteen that she wanted Roe suspended pending the outcome of her Title IX complaint, Title IX does not give Plaintiff entitlement to any specific remedy. Plaintiff also will be hard-pressed to find any authority that Title IX mandates universities to presume guilt and punish a respondent before a finding of responsibility. As far as Plaintiff's claim that she "repeatedly asked Casteen for help to protect herself and from interactions with Roe," ECF No. 88 at 27, the citations to her own deposition tell a different story. ECF No. 88-11 at 47:2-6 (Plaintiff does not remember asking Casteen for any protective measures from March 15, 2020 through the end of August 2021); *id.* at 48:12-22 (When asked about fear of physical safety, Plaintiff did not claim any such fear but voiced a concern for retaliation); *id.* at 49:2-19 (Plaintiff stated sometime early on, February or March 2020, that she was scared of running into Roe on Grounds). The uncontroverted evidence shows that there was no chance Plaintiff would encounter Roe on-Grounds because UVA was operating fully remote because of COVID from the time that Plaintiff filed her Title IX complaint in March 2020 through her graduation on May 17, 2020.

Although Plaintiff talks out of both sides of her mouth arguing whether there was or was not a no-contact directive—and the record establishes there was not[10]—it is not a material fact in dispute. ECF No. 88 at 27-28. To the extent UVA issued a mutual no-contact directive *after* Plaintiff graduated, it would have been unenforceable against Plaintiff because, as UVA's former Title IX Coordinator testified, UVA could not enforce a no-contact directive against a student or

---

[10] In addition to the Title IX Coordinator testifying that she did not issue a no-contact directive in this matter, ECF No. 67-9 at 64:15-16, UVA cannot locate a no-contact directive for Plaintiff or Roe. Ex. 5 – Kidd Decl. ¶¶ 9-11.

employee not affiliated with UVA.[11] ECF No. 67-9 at 88:7-19. To the extent UVA did not issue a no-contact directive, the record evidence proves that decision does not equate to deliberate indifference under the circumstances known at the time: the parties made no such request, the initial Title IX complaint in March 2020 was for a single incident of non-consensual sexual conduct that had occurred over a year before and not a violent altercation, UVA was fully remote because of COVID, Roe was on academic leave in the Spring 2020 semester, and Plaintiff graduated on May 17, 2020. A no-contact directive would have made no difference here, and certainly it did not cause Plaintiff to undergo further harassment or make her more vulnerable to it, where the record shows that Plaintiff did not have any contact with Roe after February 16, 2020. *Davis*, 526 U.S. at 644-45; ECF No. 67-1 at 51:14-52:5; ECF No. 67-4 at 230 (UVA002675).

As far as Plaintiff's complaints regarding her own attorney, ECF No. 88 at 27, who she selected and participated with her at every point in UVA's Title IX process, UVA's list with numerous resources for potential advisors speaks for itself. ECF No. 88-2.

Plaintiff's misguided focus on her dismissed-February-2020-Title-IX claim to argue a no-contact directive should have been in place after she spoke to Biemann in February 2020, likewise fails to establish a material fact in dispute on her remaining claims. ECF No. 88 at 27. For Plaintiff's rescheduled May 2021 graduation ceremony, UVA confirmed that Roe would not attend, and Plaintiff never asked for further assurances. Plaintiff's decision to go to Charlottesville but not to attend the ceremony fails to create a material fact in dispute. ECF No. 88-11 at 14:17-15:5.

Plaintiff's dissatisfaction with the $5,000 that UVA offered to pay for counseling and holistic services also fails to establish deliberate indifference. Moreover, Plaintiff does not argue, nor can she cite any evidence in the record, that she ever requested a remedial measure that was

---

[11] This Court also dismissed Plaintiff's constitutional claims. ECF No. 42.

denied. Even if she had made a particular remedial demand, UVA would not have been required to provide it to avoid liability here or to comply with federal regulations. *Davis*, 536 U.S. at 644-45; *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291-92 (1998). Plaintiff's conclusory retort that UVA failed to provide "appropriate remedial measures" fails to save her claim.

In sum, the record shows that UVA's response was not clearly unreasonable in light of known circumstances. The uncontroverted evidence demonstrates that upon actual notice in March 2020, UVA promptly launched a thorough and extensive investigation, which included 23 witness interviews and the review of hundreds of pages of evidence, held a hearing, and sanctioned Roe. The record further shows why the investigation took the time it took to complete, none of which suggests, much less proves, sabotage of Plaintiff's complaint or prejudice to the Plaintiff. Plaintiff's preferences about the speed of the investigation and her arguments about the no-contact directive fail as a matter of law. Plaintiff cannot establish the essential elements of her Title IX deliberate indifference claim, and thus, UVA is entitled to summary judgment.

## IV. Plaintiff cannot be awarded any of the damages she seeks

This Court can provide Plaintiff no redress. Plaintiff does not request nor can she prove any damages available under Title IX. UVA's motion for summary judgment should be granted.

### a. *Cummings* is binding on this Court

Confronted with the massive problem of no available damages, Plaintiff asks this Court to ignore binding Supreme Court precedent and award her emotional distress damages based on three unsupported and flawed arguments.

*First*, Plaintiff asserts that *Cummings* is not binding in Title IX actions because it involved the availability of damages under the Rehabilitation Act and the Affordable Care Act, not Title IX. ECF No. 88 at 30. For this, Plaintiff cites *Cummings* without a pincite. *Id.* at n.134. This is plainly wrong. In 2022, the Supreme Court in *Cummings* held that emotional distress damages are not

available in claims brought under antidiscrimination statutes enacted under the Spending Clause, which includes Title IX. *Cummings v. Premier Rehab Keller*, *P.L.L.C.*, 596 U.S. 212, 216-18, 230 (2022). Without a doubt, Supreme Court precedent is binding in this District, and Plaintiff's emotional distress damages are not available pursuant to *Cummings* and its progeny.[12]

*Second*, in another wildly flawed assertion, Plaintiff claims that the Supreme Court gave itself notice of the availability of emotional distress damages in Title IX actions in *Guardians Association v. Civil Service Commission of City of New York*, a case it decided nearly 40 years before *Cummings*. ECF No. 88 at 30-31. To be clear, the Supreme Court did not address emotional distress damages in *Guardians*, much less hold as Plaintiff claims. The Supreme Court's holding in *Guardians* – that damages are only available for intentional violations of Title VI – does not grant authority to this Court to award emotional distress damages to save Plaintiff's claims. 463 U.S. 582, 607 (1983). As the Supreme Court stated in *Cummings*, "[i]t is hornbook law that 'emotional distress is generally not compensable in contract' [. . .] just as 'punitive damages . . . are generally not available for breach of contract.'" 596 U.S. at 221-22 (internal citations omitted). The Court concluded that "we therefore cannot treat federal funding recipients as having consented to be subject to damages for emotional distress," and thus, emotional distress damages are not recoverable under Spending Clause statutes, such as Title IX. *Id.* at 222 (citing *Barnes v. Gorman*, 536 U.S. 181, 187 (2002)).

*Third*, Plaintiff claims that even if the Court finds she is wrong about her first two arguments—and she is wrong—emotional distress damages are available because Title IX is also authorized by Section 5 of the Fourteenth Amendment to the U.S. Constitution. ECF No. 88 at 32-

---

[12] *E.g.*, *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-00614, 2023 U.S. Dist. LEXIS 13886, at *9-10 n.1 (E.D. Va. Jan. 25, 2023) (collecting cases and holding emotional distress damages are unavailable under Title IX after *Cummings*).

33. For this proposition, Plaintiff cites the Fourteenth Amendment, which nowhere states that it authorizes Title IX. ECF No. 88 at 32 n.140. Not only does Plaintiff's Fourteenth Amendment theory contradict *Cummings*, where all nine justices, including three in the dissent, identified Title IX as one of the four Spending Clause statutes covered by the Court's ruling, but it also runs afoul of a line of precedent that goes back twenty-six years in which the Supreme Court has held "repeatedly" that Congress enacted Title IX pursuant to the Spending Clause.[13] Earlier this year, the Eastern District of Virginia rejected a Fourteenth Amendment argument identical to that of Plaintiff, holding "this Court declines to depart from the language of *Cummings* itself, which categorized Title IX as a Spending Clause authority statute to which *Cummings* would apply, or from every other court to have analyzed the issue." *B.R. v. F.C.S.B.*, No. 1:19-cv-917, -- F. Supp. 3d --, 2024 U.S. Dist. LEXIS 57019, at *10 (E.D. Va. Feb. 26, 2024).

Not surprisingly, Plaintiff cites no case in which any court, anywhere, held that Title IX was authorized by the Fourteenth Amendment. This is because none exists. Instead, Plaintiff cites a decision that pre-dates *Jackson*, *Davis*, and *Gebser*, *Franklin v. Gwinnet County Public Schools*, where the Supreme Court declined to decide which power Congress used to enact Title IX. 503 U.S. 60, 75 n.8 (1992); ECF No. 88 at 32 n.141. The out-of-circuit cases that Plaintiff further relies on only show that the Sixth and Eighth Circuits recognized that Congress *could* have enacted Title IX under the Fourteenth Amendment to abrogate Eleventh Amendment immunity, but neither circuit has ever held Congress actually did. ECF No. 88 at 32; *see e.g. Franks v. Ky. Sch. for the*

---

[13] *See, e.g., Cummings*, 596 U.S. at 217-18, 231; *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 181 (2005) ("Title IX was enacted as an exercise of Congress' powers under the Spending Clause"); *Davis*, 526 U.S. at 640 (stating the Supreme Court has "repeatedly treated Title IX as legislation enacted pursuant to Congress' authority under the Spending Clause"); *Gebser*, 524 U.S. at 287 (noting Title IX's contractual nature has implications on the scope of available remedies and "Congress attaches conditions to the award of federal funds under its spending power, U.S. Const. Art. I, § 8, cl. 1, as it has in Title IX . . ..").

*Deaf*, 142 F.3d 360, 363 (6th Cir. 1998) (stating that abrogation of sovereign immunity inquiry asks only "whether Congress could have enacted the legislation at issue" under the Fourteenth Amendment, not "whether [Congress] had the specific intent to legislate pursuant to that authority") (citing *Crawford v. Davis*, 109 F.3d 1281, 1283 (8th Cir. 1997)). Moreover, Plaintiff neglects to inform this Court that both the Sixth and Eighth Circuits held that emotional distress damages are unavailable in Title IX actions pursuant to *Cummings*.[14] Nevertheless, Plaintiff argues in reliance on *Bell v. Hood*, 327 U.S. 678, 684 (1946), a nearly 80-year-old-case about whether money damages are available in Fourth and Fifth Amendment claims, that she can be awarded any *available* remedy, including emotional distress damages for Title IX claims. ECF No. 88 at 32. Plaintiff's arguments are the definition of wishful thinking. The Supreme Court has held "repeatedly" that Title IX was enacted pursuant to the Spending Clause, and thus, Plaintiff's far-fetched arguments fail to save her emotional distress damages from dismissal.

### b. Plaintiff cannot prove any damages

Plaintiff's desperate pivot, a conclusory assertion that her damages are economic, rather than emotional distress, and that she brought viable claims for compensatory, consequential, and nominal damages, is controverted by the record. ECF No. 88 at 33-34.

Additionally, because Plaintiff fails to respond to UVA's arguments in its summary judgment motion that her claims for compensatory and consequential damages for lost earning capacity must be dismissed, ECF No. 67, pp. 36-38, she has conceded these arguments.[15]

---

[14] *See e.g., S.C. v. Metro. Gov't of Nashville & Davidson Cnty.*, 86 F.4th 707, 718 (6th Cir. 2023) (holding "*Cummings* leaves little doubt that emotional distress damages are no longer permitted for violations of Title IX"); *Gross v. Weber*, 186 F.3d 1089, 1092 (8th Cir. 1999) (citing *Davis*, 526 U.S. 629) (stating "[c]oncerns of notice and fairness are particularly relevant for Title IX, which was enacted pursuant to the Spending Clause").

[15] Plaintiff's conclusion that her "expenses" and "economic losses" entitle her to recovery fails to respond to, much less refute, UVA's argument that her requested damages are unavailable. *See* ECF No. 88 at 36.

*Amazon.com, Inc. v. WDC Holdings LLC*, No. 1:20-cv-484, 2023 U.S. Dist. LEXIS 61285, at *31-32 (E.D. Va. Apr. 6, 2023) (plaintiff's opposition did not respond to arguments about the lack of evidence to satisfy the damages element, and therefore, conceded the point on summary judgment) (citing *Butler v. United States*, No. 5:20-cv-00480-BO, 2022 U.S. Dist. LEXIS 184913, at *1 (E.D.N.C. Aug. 3, 2022) ("[A] failure to address the arguments by moving party, amounts to a concession that summary judgment is appropriate on that issue"); *Roman v. Spilman Thomas & Battle, PLLC*, No. 7:23-cv-00749, 2024 U.S. Dist. LEXIS 91888, at *10 (W.D. Va. May 22, 2024) (construing failure to address argument as concession).

Plaintiff's lengthy string cite with cases about damages post-*Cummings* with no analysis about how those cases apply here fails to salvage her claims for unavailable damages. ECF No. 88 at 36 nn.162-63. The cases about lost educational opportunities are inapplicable. Plaintiff never requested compensatory damages for lost educational opportunities in her Amended Complaint, (ECF No. 21), or identified any such damages in response to UVA's specific request to state her damages.[16] Moreover, the record shows that Plaintiff graduated from UVA on schedule and during her final semester when she filed a Title IX complaint, she obtained a perfect 4.0 GPA for her five classes, including one A+. ECF No. 67-21. To the extent Plaintiff relies on *Thomas v. E. Carolina Univ.*, a North Carolina case, to claim that out-of-pocket reliance claims can proceed post-

---

[16] Interrogatory No. 6 asked Plaintiff to "[s]tate the specific nature of any damages you claim were caused by the University and the amount you claim for such damages, including a detailed statement of how you arrived at such an amount, and identify all documents upon which you rely in determining such damage." Plaintiff responded Verzilli's report contains economic damages on lost income and education and she awaits medical expense documents. Ex. 6 - Pl.'s June 24, 2024 Disc. Resp. at 8-9. Plaintiff's expert does not opine about loss for education. Ex. 7 - Verzilli Dep. at 45:22-46:17. On the final day of discovery, Plaintiff produced 2,546 pages of medical records without any facial connection to this case, including care that pre- and post-dates her enrollment at UVA. ECF No. 67-42. These records do not establish educational opportunity damages. In her Rule 26(a)(1) disclosures, Plaintiff listed educational experience but never provided any explanation or documentation, and thus she cannot do so now. ECF No. 67-39.

*Cummings*, this attempt also falls flat, as *Thomas* was decided at the motion to dismiss, before discovery fleshed out if the alleged costs were recoverable, and here, the record shows that Plaintiff's costs are mere proxies for emotional distress damages, and thus, barred by *Cummings*. No. 4:22-cv-00030, 2023 U.S. Dist. LEXIS 1688664, at *18-19 (E.D.N.C. Sept. 21, 2023); *see Doe v. Fairfax Cnty. Sch. Bd.*, 2023 U.S. Dist. LEXIS 13886, at *15-16; *B.R.*, 2024 U.S. Dist. LEXIS 57019, at *13. Indeed, Plaintiff conceded this when she made no attempt to dispute this point in her Opposition. The remainder of the cases that Plaintiff cites are distinguishable on their face, and thus, fail to refute UVA's arguments or salvage her claims for damages.

As to Plaintiff's *new* claim for nominal damages, Plaintiff cannot be awarded nominal damages because she cannot prove that she is legally entitled to such damages based on the record. Plaintiff also did not request nominal damages in her Amended Complaint. *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, (4th Cir. 2021) (finding plaintiff could not be awarded nominal damages, as boilerplate request for "other and further relief as the Court deems just and proper" failed to preserve a nominal damages claim when "there is absolutely no specific mention in the Complaint for nominal damages") (internal quotations and citation omitted); *Volvo Group North Am., LLC v. Truck Enters.*, No. 7:16-cv-00025, 2017 U.S. Dist. LEXIS 50264, at *40 (W.D. Va. Mar. 31, 2017) (denying plaintiff's motion for summary judgment as to request for injunctive relief, as such relief was not requested in the complaint but only in plaintiff's brief); *Akula v. Airbee*, No. 1:08cv421, 2009 U.S. Dist. LEXIS 41182, at *2-4 (E.D. Va. Mar. 3, 2009) (recommending denial of plaintiff's pre-judgment interest claim because it was not requested in complaint), *adopted by*, 2009 U.S. Dist. LEXIS 37222, at *1 (E.D. Va. Apr. 30, 2009); *Caroline Cnty. Branch of the NAACP v. Town of Federalsburg*, 702 F. Supp. 3d 410, 415-18 (D. Md. 2023) (internal quotations and citations omitted) (granting defendant summary judgment, where court

declined to "infer nominal damages in a cause of action solely to breathe life into a moribund dispute" as plaintiffs' belated request for nominal damages could not defeat mootness in a § 1983 action where plaintiffs never sought to amend complaint); *compare with Grimm v. Gloucester Cnty. Sch. Bd*, 972 F.3d 586, 593-94, 602 (4th Cir. 2020) (affirming award of nominal damages where plaintiff requested nominal damages in complaint). Plaintiff's conclusory argument that she can be awarded nominal damages as a consolation prize is unsupported by the record and established precedent. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 290-93 (2021).

Because none of Plaintiff's requested damages are available, UVA should be granted summary judgment.

### c. Plaintiff's failure to comply with Rule 26(a)(1)(A)(iii) requires exclusion of her damages evidence

Plaintiff concedes that she did not provide computations for her claimed damages and documentation on which each computation is based as required by Rule 26(a)(1)(A)(iii). ECF No. 88 at 37. Plaintiff also essentially concedes that her expert's report about lost earnings for an "aspirational," "ideal" profession that she never held will not satisfy her disclosure obligations.[17] *See id.* To be sure, an expert report may not replace a plaintiff's required 26(a)(1)(A)(iii) disclosures. *Jaguar Land Rover Ltd. v. Bentley Motors Ltd.*, No. 2:18-cv-320, 2020 U.S. Dist. LEXIS 219825, at *14 (E.D. Va. Oct. 28, 2020) (finding plaintiff must disclose "computation" with supporting documentation, not just potential theories) (citing *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-cv-275-D, 2012 U.S. Dist. LEXIS 63707, at *1 (E.D.N.C. May 7, 2012); *Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 3:15-cv-01300-JMC, 2016 U.S. Dist. LEXIS 82356, at *2 (D.S.C. June 24, 2016)). Indeed, Plaintiff misrepresents the holding in *Silicon*, as there, the court excluded the plaintiff's damages evidence for failure to comply with

---

[17] ECF No. 88-11 at 28:2-29:16, 198:6-17.

Rule 26(a)(1)(A)(iii). 2012 U.S. Dist. LEXIS 63707, at *31, *compare with*, ECF No. 88 at 37. Here, Verzilli's report cannot satisfy Plaintiff's obligations because it does not state the types of damages that Plaintiff seeks, contain specific computations of those damages, or provide documentation to support those computations. Accordingly, Plaintiff violated Rule 26(a)(1)(A)(iii).

Based on the five-factor test in *Southern States Rack & Fixture, Inc., v. Sherwin-Williams Co.*, Plaintiff's failure is not substantially justified or harmless and she must be sanctioned pursuant to Rule 37(c)(1). 318 F.3d 592, 596-97 (4th Cir. 2003). The five factors are: (1) surprise to the party against whom the evidence would be offered, (2) the ability of that party to cure the surprise, (3) the extent to which allowing the evidence would disrupt trial, (4) the importance of the evidence, and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *Id.*

Plaintiff focuses on the first factor, claiming there is no surprise because UVA understands her damages from Verzilli's report and her prescription documentation. ECF No. 88 at 37-38. For the reasons stated *supra*, Verzilli's report about a lump sum ranging from $847,308 to $3,276,383 for speculative lost earning capacity cannot satisfy Rule 26(a)(1)(A)(iii). Moreover, Plaintiff's prescription documentation—understandably Plaintiff did not want to draw the Court's attention to it—consists of seven pages of prescriptions that date from January 12, 2018 to August 19, 2024, pre- and post-UVA enrollment, and includes prescriptions for eye drops and the like, which lack any facial connection to this case. To be sure, the prescription list was accompanied by more than 1,200 pages of medical records, but Plaintiff never identified which prescriptions are her damages or provide computations with documentation. Ex. 8 - Pl.'s Pharmacy Copay Report. UVA does not

know which prescriptions Plaintiff claims are her damages or what category of damages the prescriptions constitute.[18]

Moreover, UVA cannot cure the surprise. On September 10, 2024, discovery closed, and despite UVA's requests, Plaintiff never provided information that could cure the surprise.[19] With its summary judgment motion pending and a jury trial a little over 45 days away, UVA cannot cure the surprise it would endure if Plaintiff is allowed an additional opportunity to state the nature and amount of her damages and explain what prescriptions and medical records constitute her damages. Equally, allowing Plaintiff to rely on all of her medical records for a 6-year span to prove damages would surprise UVA and deprive it of a meaningful opportunity to challenge such records.

As far as the importance of damages evidence, damages evidence is generally important, but here, prescriptions for emotional distress damages are barred by *Cummings*, and Plaintiff's speculative lost earning capacity damages, likewise, are unavailable.

With respect Plaintiff's excuse for failing to comply, she claims that she could not comply because "she could not have done so without, at a minimum, speculation or, worse, whole-cloth fabrication." ECF No. 88 at 37. This does not excuse Plaintiff. Moreover, this concession – that the record contains no evidence that proves any of Plaintiff's damages absent speculation or lying – without a doubt shows that UVA would be harmed if Plaintiff is allowed to produce evidence

---

[18] Plaintiff also failed to identify any health care provider that could testify that any particular prescription was necessitated by any particular action by UVA or Roe.

[19] UVA asked Plaintiff to state the nature of her damages, the amount claimed, computations and supporting documents. Ex. 6 at 8-9. Plaintiff responded that Verzilli's report contains her economic damages, and she awaits proof for medical expenses. *Id.* On August 16, 2024, UVA asked Plaintiff to cure her deficient response, which Plaintiff did in part on August 29, 2024. Ex. 9 – Pl.'s Response to Deficiency Letter. On the final day of discovery, without further explanation, Plaintiff produced 2,546 pages of medical records that show care before and after her enrollment at UVA. ECF No. 67-42.

rooted in speculation and lies.[20] Accordingly, Plaintiff's evidence of damages should be struck for failure to comply with Rule 26(a)(1)(A)(iii). For the reasons stated *supra*, Plaintiff cannot recover any damages, including nominal damages, and thus, her case should be dismissed in its entirety.

### d.  There is no dispute of material fact on Plaintiff's damages

Plaintiff argues that there is a dispute of material on her damages, citing her Charge of Discrimination filed against a former employer, which underscores another of Plaintiff's damages problems – she claims that both UVA and her former employer are liable for the same lost earnings and emotional distress damages. ECF No. 67-41 at 4; ECF No. 88-16.

In any event, there is no disputed material fact here, as the uncontroverted evidence shows that Plaintiff failed to plead and prove any identifiable professional opportunity that would have been available absent UVA's actions, which was contemplated by UVA and Plaintiff when UVA accepted federal funds. *Rice v. Cmty. Health Ass'n*, 203 F.3d 283, 289-90 (4th Cir. 2000). Plaintiff's claim for damages based on lost earning capacity is fatally flawed, and, as a result, UVA is entitled to summary judgment.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendant the Rector and Visitors of the University of Virginia respectfully requests that this Court grant its Motion for Summary Judgment, dismiss this case with prejudice, and award any and all appropriate relief.

---

[20] In conclusory form, Plaintiff claims she should get a pass because of financial limitations. ECF No. 88 at 37. Plaintiff never moved to amend or objected to her disclosure obligations, nor did she raise a concern because of her financial status until her Opposition.

Respectfully submitted,

**THE RECTOR AND VISITORS OF THE
UNIVERSITY OF VIRGINIA**

By Counsel:___*/s/ Christopher P. Bernhardt*_____
Christopher P. Bernhardt* (VSB No. 80133)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone:(804) 371-0977
Facsimile: (804) 371-2087
Email: cbernhardt@oag.state.va.us
*Counsel of Record for Defendant*

Amy E. Hensley* (VSB No. 80470)
Associate University Counsel/Assistant Attorney
General
1827 University Avenue
Charlottesville, Virginia 22904
Telephone: (434) 924-3685
Email: aehensley@virginia.edu
*Counsel of Record for Defendant*

Jason S. Miyares
Attorney General of Virginia

Thomas J. Sanford
Deputy Attorney General

Jacqueline C. Hedblom
Senior Assistant Attorney General/ Trial Section Chief

## CERTIFICATE

I hereby certify that on October 23, 2024, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system.

/s/ Christopher P. Bernhardt
Christopher P. Bernhardt* (VSB No. 80133)
Assistant Attorney General

26