UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| **JANE DOE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | ) Case No. 3:23-cv-00018-RSB |
| **THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA,** | ) ) ) |
| **Defendant.** | ) ) ) |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO EXCLUDE PLAINTIFF'S EXPERT ANDREW C. VERZILLI**

Plaintiff's Brief misstates the applicable law and points to no evidence in the record to establish damages for lost educational opportunities or future lost earnings. As a matter of law, Plaintiff has failed to plead and prove any identifiable lost opportunity, rendering her damages for future lost earnings for an aspirational career she never held unavailable and her expert's opinions on the same irrelevant, unreliable, not based on sufficient facts or data, and unfairly prejudicial. At bottom, Plaintiff cannot recover for lost educational opportunities or future earnings in this case, and Verzilli's proffered testimony and report must be excluded.

**I.  Plaintiff's Claimed Damage of Lost Educational Opportunity for Not Attending Law School is a Proxy for Unavailable Emotional Distress Damages**

Plaintiff argues that "her claim is effectively for a denial of educational opportunities in law school, the lost income from which Verzilli reasonably and conservatively estimates." ECF No. 89, Pl.'s Br. in Opp'n to Def.'s Mot. to Exclude Pl.'s Expert Andrew C. Verzilli ("Pl.'s Br.") at 9. While citing no authority, she misconstrues the standard under Title IX and its available remedies and argues that she can "recover damages to her education and earnings due to delayed or lost educational opportunities." *Id.* at 1.

Title IX prohibits students from being denied access to educational benefits and opportunities on the basis of gender. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). Funding recipients may only be held liable where they are deliberately indifferent, that is, they "must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable'" to sexual harassment, to which they have actual knowledge, that deprived the students "*of access to educational opportunities or benefits provided by the school*." *Id.* at 645, 650 (citations omitted) (emphasis added); *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 274 (4th Cir. 2021) (holding a funding recipient may be held liable if its response or lack thereof was clearly unreasonable and thereby made the plaintiff more vulnerable to future harassment or further contributed to the deprivation of the plaintiff's access to educational opportunities). A university "must merely respond" to known harassment "in a manner that is not clearly unreasonable." *Davis*, 526 U.S. at 649. This is the standard in the Fourth Circuit.

Thus, while a Title IX plaintiff must prove a deprivation of educational opportunities or benefits provided by the defendant funding recipient as an element of her claim, the damages sought to remedy such a deprivation must be "traditionally available in suits for breach of contract." *Cummings v. Premier Rehab Keller*, P.L.L.C., 596 U.S. 212, 230 (2022) (quoting *Barnes v. Gorman*, 536 U. S. 181, 187 (2002)). Damages for breach of contract—like all economic losses—must "be established with reasonable certainty." Restatement (Second) of Contracts § 352 cmt. a (1981). Indeed, "there must be evidence of their existence and extent, and some data from which they may be computed." 24 Williston on Contracts § 64.12 (4th ed. 2022). To be sure, traditional contract law "*excludes* those elements of loss that *cannot* be proved with reasonable certainty." Restatement (Second) of Contracts § 352 cmt. a (1981) (emphasis added). Indeed, courts have granted summary judgment in Title IX cases post-*Cummings* because the plaintiffs

2

presented no evidence of pecuniary harm, despite that they all had necessarily alleged that they had suffered the loss of educational benefits and opportunities. *See, e.g.*, *Doe v. Moravian Coll.*, No. 5:20-CV-00377-JMG, 2023 U.S. Dist. LEXIS 4027, at *21 (E.D. Pa. Jan. 10, 2023) ("We need not address the question of whether a reasonable jury could return a verdict in Plaintiff's favor based on the evidence presented thus far, because the damages that Plaintiff seeks with respect to her Title IX claim are barred following the recent Supreme Court decision *Cummings v. Premier Rehab Keller, P.L.L.C.*") (citations omitted); *K.G. v. Woodford Cnty. Bd. of Educ.*, No. CV 5:18-555-DCR, 2022 U.S. Dist. LEXIS 233069, at *7 (E.D. Ky. Dec. 29, 2022) (granting summary judgment to school board in Title IX case where plaintiffs claimed "a right to compensatory damages unrelated to emotional distress, but provide[d] no evidence of injuries except 'anxiety, depression, diet, anger, fear, obsessive thoughts,' and 'stress,' which are emotional distress injuries").

In her Brief, Plaintiff misstates the standard and claims damages for "delayed or lost educational opportunities" after her graduation from UVA—specifically, attending law school. The record shows, however, that Plaintiff cannot point to any evidence in the record that shows she was deprived access to any educational opportunity or benefit provided by UVA. Plaintiff graduated from UVA on schedule and during her final semester when she filed a Title IX complaint, she obtained a perfect 4.0 GPA for her five classes, including one A+. ECF No. 67-21. Plaintiff also neither requested compensatory damages for lost educational opportunities in her Amended Complaint, (ECF No. 21), nor identified any such damages in response to UVA's specific request to state her damages. ECF No. 96-6 at 8-9. Plaintiff never provided any computation of damages for lost educational opportunities as required by Rule 26. ECF No. 67-39. Verzilli's report also does not contain data about or seek to opine about lost educational opportunities, nor would

3

Verzilli be qualified to do so, as he conceded. Ex. 1 - Verzilli's Dep. Tr. at 45:22-46:17; 63:16-64:9; ECF No. 67-43.

Moreover, Plaintiff's attempt to repackage her emotional distress damages as lost educational opportunities for law school should be rejected as not authorized by applicable law. Initially, Plaintiff claimed she could not go to law school because she could not obtain letters of recommendation (ECF No. 21 at ¶¶ 268-69), a fact refuted by the record. ECF No. 67-1 at 208:17-20; ECF No. 67-2 at ¶ 37. In her Brief, Plaintiff now claims she did not go to law school because of suicidal ideation and because of the "stress and exhaustion of this lawsuit." Pl.'s Br. at 1, 3. Neither are compensable post-*Cummings*.

Even if Title IX allowed a plaintiff to recover for a lost educational opportunity other than the one provided by the funding recipient, which it does not, the evidence shows that Plaintiff's claim is entirely speculative: four years after her graduation, she has never applied, never taken the entrance exam, and never been accepted to any law school. Plaintiff fails to prove a lost educational opportunity of law school, much less any economic loss for a lost educational opportunity of law school. Accordingly, because Plaintiff cannot recover emotional distress damages disguised as lost earning capacity and there is no evidence that Plaintiff's claimed "delayed or lost educational opportunities" for law school are recoverable lost educational opportunities that caused her any economic loss, there is no basis on which a jury could award her damages under this theory here.

## II. Plaintiff Cannot Recover Damages for Unidentified Lost Professional Opportunities

The Fourth Circuit has made clear that lost earning capacity damages are not recoverable merely because a plaintiff specifies an aspirational position in a breach of contract action. *Rice v.*

4

*Cmty. Health Ass'n*, 203 F.3d 283, 289-90 (4th Cir. 2000). None of Plaintiff's flawed arguments demonstrate that she is entitled to speculative future lost earnings in this case.

First, Plaintiff fails to distinguish her case from *B.R. v. F.C.S.B.*, where the Eastern District of Virginia held earlier this year that the plaintiff's damages for lost earnings for a career in law or medicine were "too speculative and attenuated" to be recoverable under Title IX. No. 1:19-cv-917, 2024 U.S. Dist. LEXIS 57019, at *20-23 (E.D. Va. Feb. 26, 2024). To be sure, the *B.R.* court's decision to preclude the plaintiff from recovering generalized and speculative lost earning capacity damages, which were not compensable under the law, is on point here. *Id.* at *23. Plaintiff argues that her case is distinguishable from *Rice* because her "identifiable opportunity loss" is the delay of her planned law school enrollment and subsequent attorney career. Pl.'s Br. at 8. Plaintiff's proposed testimony about basic precursor steps to applying to law school, however, does not establish the loss of an identifiable professional opportunity, which the parties could have reasonably anticipated as a matter of law. As the Fourth Circuit stated in *Rice*, lost earning capacity damages are not recoverable merely because a plaintiff specifies an aspirational position in a breach of contract action. *Rice*, 203 F.3d at 289-90. This is exactly what Plaintiff proposes to do here.

Furthermore, the two out-of-circuit Title IX cases cited by Plaintiff confirm why the evidence in this case fails to support an award of lost earnings. Both cases involve plaintiffs that did not complete their planned education at the defendant funding recipients and incurred damages as a result of seeking alternative educational arrangements. The plaintiff-law student in *Rullo v. University of Pittsburgh* claimed she was forced to leave law school prematurely and complete her degree at a lower-tier, less competitive, law school. No. 17-1389, 2021 U.S. Dist. LEXIS 29882, at *8 (W.D. Penn. Feb. 18, 2021). There, the plaintiff presented an expert report calculating the

effect on her future earnings as a lawyer graduating from a less prestigious law school than the defendant's school and opining on the difference in her earning capacity because of the switch in law school and diminished ability to become a health care attorney. *Id.* at *7. In *J.C v. Bd. of Regents of the Univ. Sys. of Ga.*, the plaintiff withdrew from the defendant-university, and incurred economic losses associated with not completing her education on time as planned at the defendant school. No. 1:20-CV-4445-JPB, 2023 U.S. Dist. LEXIS 133599, at *4 (N.D. Ga. Aug. 1, 2023). Neither *Rullo* nor *J.C.* dictate what may be recovered in this case. Here, Plaintiff was not in law school nor had she been accepted into law school when UVA allegedly violated Title IX. Rather, Plaintiff graduated on time from UVA with almost a perfect cumulative 4.0 GPA.[1]

      The record establishes that Plaintiff fails to plead or prove the loss of any "identifiable professional opportunities," *Rice*, 203 F.3d at 289, or that UVA's alleged breach adversely influenced or affected job opportunities. *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-00614-MSN-IDD, 2023 U.S. Dist. LEXIS 13886, at *16-18 (E.D. Va. Jan. 25, 2023) ("Absent allegations of a specific employment opportunity that was foreclosed by Defendant's alleged violations, Plaintiff cannot recover for diminished earning capacity or lost future earnings."). Rather, at most, Plaintiff, through Verzilli's report, relies on generic legal jobs she may have obtained had she gone directly to law school after graduation from UVA. Without such pleading and proof, "such consequential damages are simply too speculative and the contracting parties cannot reasonably be presumed to have anticipated such damages at the time they entered into a contract." *Rice*, 203 F.3d at 288-89.

---

[1] Plaintiff's gripes with UVA's response to her Title IX complaint filed in March 2020 prior to her graduation in May 2020 pertain to the duration of UVA's Title IX process and a no-contact order that, irrespective of whether one was issued or not, did not cause the Plaintiff to undergo further harassment or make her more vulnerable to it as a matter of law.

6

Thus, it would be plain error to allow Plaintiff to seek damages for "lost earning capacity," even if it was not a proxy for unavailable emotional distress damages.

For these same reasons, Verzilli's proffered opinions and report are irrelevant and must be excluded. Expert testimony about future lost earnings premised on unrecoverable alleged damages will not assist the trier of fact to determine any issue in this case.

### III.  Verzilli's Conclusions Are Irrelevant, Unreliable, Not Based on Sufficient Facts or Data and Are Unfairly Prejudicial

Plaintiff claims that UVA is conflating Verzilli's "reasonable inferences" with the foundation of his opinions, "which will be premised upon Doe's proof of loss or delay of those opportunities to a jury's satisfaction at trial." Pl.'s Br. at 11. Because Plaintiff identifies no proof of loss of any identifiable professional opportunity in the record, nor does she identify any in her Brief, Plaintiff effectively concedes that Verzilli's opinions lack a reliable foundation and relevancy to the instant case. It is an abuse of discretion to allow an expert to offer opinions "based on a faulty assumption that is unsupported by the evidence." *Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 143 (4th Cir. 1994).

Plaintiff also cannot establish a reliable foundation for Verzilli's opinions. Plaintiff argues that "she will present the evidence that tie[s] her delay in applying to and enrolling in law school specifically to her injuries from UVA's breaches as a matter of fact and necessity." Pl.'s Br. at 9. Plaintiff further states that "[i]t is probable and not speculative that with her qualifications, plans, and steps taken already, she would, but for the injury, have enrolled in law school in Fall 2020, and pursued an entry-level attorney career thereafter." *Id.*

There are at least three problems with Plaintiff's arguments. *First*, because Plaintiff cannot recover for suicidal ideation allegedly "due to the trauma of [the] abusive relationship with her professor John Roe" and the stress of *this* lawsuit under *Cummings* and *Rice*, she, likewise, cannot

7

recover for future lost earnings because of those same unrecoverable emotional distress damages. *See B.R.*, 2024 U.S. Dist. LEXIS 57019, at *13; *M.R. v. Burlington Area Sch. Dist.*, No. 21-CV-1284, 2023 U.S. Dist. LEXIS 129829, at *5 (E.D. Wis. July 27, 2023) (recognizing "that the mental health treatment costs sought to be recovered are mere proxies for emotional distress damages and therefore unrecoverable").

*Second*, Plaintiff, with a history of preexisting mental health issues pre-enrollment at UVA, cannot testify as a lay witness that her suicidal ideation was caused by the trauma and abuse of her relationship with Roe, and, in turn, the suicidal ideation and the stress of this lawsuit caused her to be unable to go to law school and become an attorney. *See* Pl.'s Br. at 2-3; ECF No. 67-40 at 4-7. Plaintiff has not identified any expert who will testify as to causation. In addition, under Plaintiff's theory, Roe caused the trauma, which caused the suicidal ideation, at some point from December 2018 until their breakup and final communication on February 15-16, 2020. As argued in UVA's Memorandum in Support of its Motion for Summary Judgment, ECF No. 67, Plaintiff's December 2018/January 2019 deliberate indifference claim is time-barred. Accordingly, Plaintiff will not be able to establish causation to link her claimed damages with Verzilli's opinions.

*Third*, as a lay witness, Plaintiff cannot testify that she is qualified to be an attorney or even a law student. Because Plaintiff did not disclose herself as an expert, she is limited in what testimony she can offer in the form of an opinion. F.R.E. 701. Under the Rules of Evidence, Plaintiff cannot testify that she possesses the qualifications necessary to become an admitted law student, and, subsequently, a licensed attorney, because such an opinion would not be based on her own perceptions and would require specialized knowledge about law school and lawyer admission standards. *Id.* Moreover, she cannot opine that given her stated mental health issues, which Verzilli knows nothing about, that she would be able to become an attorney and work

8

continuously until age 67. Despite these limitations, Plaintiff did not identify any expert, such as a vocational expert, to provide any individualized data about Plaintiff's qualifications for law school or a career in law and upon which Verzilli could rely, in conjunction with his use of generalized national income data to opine on Plaintiff's lost earning capacity.

With no testimony as to her qualifications or causation, the assumptions on which Verzilli bases his future lost earnings opinions for a career in law are patently unreliable and thus must be excluded.

In addition, despite Verzilli's numerous failures to apply the facts of this case to his conclusions, Plaintiff argues that Verzilli should be allowed to testify because the court denied the motion in limine for the plaintiff's economist expert in *Musick v. Dorel Juvenile Group, Inc.*, 818 F. Supp. 2d 960 (W.D. Va. 2011). Pl.'s Br. at 16. The court's holding in *Musick*, where the court applied Virginia law in a products liability personal injury action to determine the admissibility of expert opinions, has no application here on the availability of breach-of-contract damages to Plaintiff.[2] The same goes for *Bulala v. Boyd*, a medical malpractice case, in which the Virginia Supreme Court held that in a personal injury action, statistical averages alone cannot form a sufficient evidentiary foundation for such damages. 239 Va. 218, 233 (1990) (internal citations omitted). Here, under *Rice* and *Cummings*, Plaintiff must plead and prove an identifiable lost professional opportunity that would have been available absent the defendant's breach and that were in contemplation of UVA at the time of its contract to receive federal funds. *Rice*, 203 F.3d

---

[2] If anything, *Musick* underscores Verzilli's failure to apply facts specific to the Plaintiff to his lost earnings analysis based on national data. In *Musick*, plaintiff's vocational expert developed individualized data from facts personal to the plaintiff by her academic reports, medical records, familial educational and vocational background, and personal interviews with the plaintiff and her family, and then her economist applied that individualized data to national statistics. 818 F. Supp. 2d at 963-64. In the instant case, Plaintiff skips the individualized data step and jumps to her economist's conclusions based on general statistical averages, not tailored to the Plaintiff.

9

at 289; *see Cummings*, 596 U.S. at 230; *see also B.R.*, 2024 U.S. Dist. LEXIS at *20. Expert testimony for lost earning capacity for an identifiable lost professional opportunity in Title IX claims must comply with Rule 702 of the Federal Rules of Evidence.

Because Verzilli cannot meet the standard set forth in FRE 702, his testimony must be excluded. To be sure, Plaintiff's arguments, including that Verzilli had to begin with some assumptions to project the duration of loss "in a situation where the future was not certain," Pl.'s Br. at 14, underscore the unreliability of his methodology and irrelevance of his conclusions. Plaintiff's retort is that UVA's arguments go to the weight of Verzilli's testimony not its admissibility, but this, too, misses the mark. At its core, Verzilli's proposed testimony will not assist the trier of fact understand the evidence or determine any fact at issue. Indeed, Verzilli's failure to consider facts specific to Plaintiff, to include her mental health issues, complete work history, and her stated aspiration of going to an Ivy League law school, becoming a human rights lawyer, obtaining and PhD and then teaching as a professor, renders his speculative lost earning capacity opinions that she would work without interruption as an attorney until age 67 wholly speculative and unreliable. Likewise, Plaintiff's claim that Verzilli's opinions are solid because mitigation is an affirmative defense also misses the point. The issue is that Verzilli's opinions and calculations are not based on sufficient facts or data because they do not account for the facts specific to the Plaintiff and are based on an incomplete review and understanding of her work and earning history. Based on such insufficient facts, Verzilli's opinions are unreliable and will not assist the jury here.

At bottom, Verzilli's proposed testimony must be excluded because damages for emotional distress are not recoverable under Title IX. Plaintiff cannot link Verzilli's conclusions to her claimed damages. Verzilli's conclusions are also based purely on generalized national income

data, and thus fails to apply reliable principles to the facts of this case. Verzilli's testimony will not assist the trier of fact to determine any issue in this case, and if allowed, it will surely confuse the jury and unfairly prejudice UVA. Accordingly, Verzilli's testimony must be excluded.

## CONCLUSION

Plaintiff cannot satisfy her burden to show, by a preponderance of the evidence, that her expert's opinions satisfy reliability requirements of Federal Rule of Evidence 702. For the foregoing reasons and those set out in its Memorandum of Law in Support of its Motion to Exclude UVA respectfully requests that the Court grant its motion to exclude Andrew C. Verzilli as an expert witness in this case.

Respectfully submitted,

**THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA**

By Counsel: */s/ Amy E. Hensley*
Amy E. Hensley* (VSB No. 80470)
Associate University Counsel/Assistant Attorney General
1827 University Avenue
Charlottesville, Virginia 22904
Telephone: (434) 924-3685
Email: aehensley@virginia.edu
*Counsel of Record for Defendant*

Christopher P. Bernhardt* (VSB No. 80133)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone:(804) 371-0977
Facsimile: (804) 371-2087
Email: cbernhardt@oag.state.va.us
*Counsel of Record for Defendant*

Jason S. Miyares
Attorney General of Virginia

Thomas J. Sanford
Deputy Attorney General

Jacqueline C. Hedblom
Senior Assistant Attorney General/ Trial Section Chief

# CERTIFICATE

I hereby certify that on October 30, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

*/s/ Amy E. Hensley*
Amy E. Hensley* (VSB No. 80470)
Associate University Counsel/Assistant Attorney General