**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RECTOR AND VISITORS OF THE** | ) | |
| **UNIVERSITY OF VIRGINIA,** | ) | |
| | ) | **Case No. 3:23-cv-00018-RSB** |
| **Defendant.** | ) | |
| | ) | |
| _____ | ) | |

<u>**BRIEF IN SUPPORT OF DEFENDANT'S OMNIBUS MOTION IN LIMINE**</u>

**TABLE OF CONTENTS**

Page

A.    MIL #1: Plaintiff's Health Care Providers..........................................................................1

B.    MIL #2: Information About John Roe Appearing on UVA's Website................................7

C.    MIL #3: Damages Not Properly Disclosed under Fed. R. Civ. P. 26(a)(1)(A)(iii) ............7

D.    MIL #4: Plaintiff's Treatment and Expenses for Emotional Distress Damages .................9

E.    MIL #5: Plaintiff's Medical/Mental Health Diagnoses ....................................................10

F.    MIL #6: Law School Admission and Why Plaintiff Has Not Gone to Law School .........11

G.    MIL #7: Dismissed Claims ..............................................................................................12

H.    MIL #8: John Roe's Sexual Assaults ...............................................................................13

I.    MIL #9: UVA's Title IX Policies and Federal Regulations Not Applicable to
      Plaintiff's Title IX Complaint and UVA's Actions Under Not Applicable Policies in
      Other Title IX Matters that Do Not Involve the Plaintiff   ................................................14

J.    MIL #10: UVA's Training of Employees on Title IX Policy ............................................15

K.    MIL #11: Any Romantic Relationships Between UVA Employees and Former
      Employees with Any Student Other than the Plaintiff.......................................................16

L.    MIL #12: Plaintiff's Attorney for the Title IX Investigation............................................17

M.    MIL #13: UVA's Treatment of Faculty and Students in Title IX Investigations.............18

N.    MIL #14: UVA's Liability Under Title IX for its Response
      Before Plaintiff Filed Her Title IX Complaint on March 15, 2020 ..................................18

O.    MIL #15: John Roe's Contact with UVA Employees After the Title IX Proceedings
      Concluded .........................................................................................................................18

P.    MIL #16: Letters Submitted to Provost Magill.................................................................19

Q.    MIL #17: Plaintiff's Bulk-Designated Medical Records ..................................................20

R.    MIL #18: Improperly Disclosed Witnesses ......................................................................20

Defendant the Rector and Visitors of the University of Virginia ("UVA") respectfully files this Brief in Support of its Omnibus Motion *in Limine*.

The "main purpose of a motion *in limine* is to streamline the trial by keeping irrelevant or improper evidence out of the courtroom." *TecSec v. Adobe, Inc.*, No. 1:10-cv-115-LO, 2018 WL 11388472, at *7 (E.D. Va. Nov. 21, 2018). Under Federal Rule of Evidence ("FRE") 402, irrelevant evidence is not admissible. FRE 401 defines "relevant" evidence as evidence having "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FRE 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of" "unfair prejudice," "confusing the issues," and "misleading the jury." Motions *in limine* "serve important gatekeeping functions by allowing the trial judge to eliminate from consideration evidence that should not be presented to the jury." *Cougill v. Prospect Mortg., LLC*, No. 1:13-cv-1433, 2014 WL 348539, at *1 (E.D. Va. Jan. 31, 2014). Accordingly, it is also "proper at the motion *in limine* stage for a court to preclude from trial arguments 'without factual or legal support.'" *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-614, 2023 WL 424265, at *1 (E.D. Va. Jan. 25, 2023) (quoting *TecSec*, 2018 WL 11388472, at *7). The decision to grant or deny a motion *in limine* is within the district court's discretion. *Id.; United States v. Moore*, 27 F.3d 969, 974 (4th Cir. 1994).

## A.    MIL #1: Plaintiff's Health Care Providers

Plaintiff should be precluded from presenting testimony and evidence from her health care providers, including her mental health care providers, about the purported adverse effects of her relationship with John Roe and UVA's Title IX investigation on her mental health. Plaintiff identified Eleanore Gubitosa, Owen Gentry, Dr. Katherine Sznajder, and Dr. Farimah Farahani ("Health Care Providers") as witnesses that she expects to call at trial. ECF No. 106 at 1-2.

Plaintiff, likewise, should be precluded from introducing her medical records from these Health Care Providers, and any other health care provider, in her case in chief and to seek reimbursement for out-of-pocket expenses and expenses for her medical and psychological needs. *See* Pl.'s Response to Request for Production #1, ECF No. 96-6; Pl.'s Initial Disclosures, ECF No. 67-39.

This evidence must be excluded because: (1) Plaintiff did not disclose the Health Care Providers as experts under Federal Rule of Civil Procedure 26(a)(2); (2) Plaintiff may not elicit causation testimony from her Health Care Providers by calling them as fact or lay-opinion witnesses; (3) testimony and evidence about Plaintiff's emotional distress damages or proxies for emotional distress damages is irrelevant and unfairly prejudicial; (4) testimony and evidence about Plaintiff's medical care from Dr. Sznajder and Dr. Farahani in 2023 is irrelevant and unfairly prejudicial; and (5) Plaintiff never disclosed her medical records under Rule 26 until November 10, 2024, when she stated she may introduce about 4,000 pages of records, and she has never specifically identified any of her medical records relating to treatment allegedly caused by UVA in discovery.

Rule 37(c)(1) of the Federal Rules of Civil Procedure "generally requires exclusion of evidence that a party seeks to offer but has failed to disclose." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). A party is prohibited from using information or a witness at trial if that party did not disclose the information or witness – through Rule 26(a) initial, expert, or pretrial disclosures or through Rule 26(e) supplementation of disclosures or discovery – unless the failure to disclose "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The non-disclosing party must demonstrate substantial justification or harmlessness, considering (1) surprise to the adverse party, (2) that party's ability to cure the surprise, (3) any disruption of the trial in allowing the evidence, (4) the evidence's importance,

and (5) the non-disclosing party's explanation for its failure to disclose. *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014).

The Federal Rules of Evidence "forbid[] the admission of expert testimony dressed in lay witness clothing." *United States v. Johnson*, 617 F.3d 286, 293 (4th Cir. 2010) (quoting *United States v. Perkins*, 470 F.3d 150, 156 (4th Cir. 2006)). Lay opinion is limited to matters "rationally based on the witness's perception," Fed. R. Evid. 701(a), while expert opinion must come from a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" and whose "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a). In addition, "hybrid" witnesses, "fact witnesses with expertise that will inform their testimony" may testify to facts or lay opinion based on personal and nonexpert perceptions and give expert testimony, only if appropriately disclosed and qualified as an expert. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 253-54 (4th Cir. 2022). Thus, testimony on causation is expert opinion. *E.g.*, *Morris v. Bland*, 666 F. Appx 233, 238-39 (4th Cir. 2016).

Plaintiff's Health Care Providers are hybrid witnesses that required disclosure under Rule 26(a)(c)(2), as this Court ordered in its Scheduling Order. ECF No. 30 at 5. Plaintiff's failure to disclose the Health Care Providers precludes their expert testimony at trial. Rule 37(c)(1).

"The purpose of Rule 26(a) is to allow the parties to adequately prepare their cases for trial and to avoid unfair surprise." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). "If a party wants to present opinion evidence through a hybrid witness, it still must disclose: '(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify.'" *Timpson by & through Timpson*, 31 F.4th at 253 (quoting Fed. R.

Civ. P. 26(a)(2)(C)). As this Court has observed, sufficient "summary disclosures must contain more than a passing reference to the care a treating [professional] provided" such that they "clearly identify the witness, state the subject matter of the expected testimony, and summarize actual opinions." *O'Donnell v. Majors*, No. 7:19-CV-54, 2019 WL 3414402, at *1 (W.D. Va. July 29, 2019) (citing *Marr v. Abercrombie & Fitch Stores, Inc.*, No. 5:14-CV-00123, 2015 WL 3827326, at *4 (E.D.N.C. 2015)). Failure to either state the subject matter or provide the summary of facts and opinions "typically will result in mandatory exclusion" of the expert testimony. *Timpson by & through Timpson*, 31 F.4th at 253.

Plaintiff did not disclose the subject matter of the Health Care Providers' expertise or a summary of the facts and opinions expected in their testimony. Plaintiff's Health Care Providers are hybrid witnesses. Gubitosa and Gentry provided psychiatric and mental-health treatment and counseling to Plaintiff. Dr. Sznajder and Dr. Farahani are Obstetrics and Gynecology ("OBGYN") physicians who provided care to Plaintiff in 2023. ECF No. 67-42 at 6. Plaintiff does not identify or seek relief for any physical injury she sustained when John Roe sexually assaulted her. Instead, she alleges she contracted a sexually transmitted disease ("STD") from a stranger due to emotional distress and abusing alcohol and she had an abortion in October 2023. *Id.* at 4-5; ECF No. 67-41 at 4.

The Health Care Providers' testimony on these and any other matters beyond "the realm of common experience" constitute expert witness testimony based on their "special skill and knowledge." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000) (internal citation omitted). In consideration of the five factors addressed below, *Wilkins*, 751 F.3d at 222, Plaintiff's failure to make a Rule 26(a)(2)(C) disclosure should not be excused as "substantially justified" or "harmless," Fed. R. Civ. P. 37(c)(1).

4

*First*, Defendant will learn at trial, to its surprise, the "subject matter," "facts," and "opinions" to which the Health Care Providers will testify. Fed. R. Civ. P. 26(a)(2)(C). Although Plaintiff's interrogatory answers forecast that some of the Health Care Providers' testimony will be expert opinion, *see* Plaintiff's Answers to Def.'s Interrogs. Nos. 3 & 4, ECF Nos. 67-40, 96-6, these answers were, at most, a "passing reference to the care a treating [professional] provided" and the purported cause of the treated conditions. *O'Donnell*, 2019 WL 3414402, at *1. They do not suffice to "state the subject matter of the expected testimony" or "summarize actual opinions." *Id*. *Second*, with trial in less than a month, there is no cure for the surprise of the Health Care Providers' expert testimony. Cross-examination is not a "cure" because UVA would still be denied the opportunity "to examine an expert opinion for flaws and *to develop counter-testimony* through that party's own experts." *Gomez v. Haystax Tech., Inc.*, 761 F. Appx 220, 232-33 (4th Cir. 2019) (quoting *S. States Rack & Fixture, Inc.*, 318 F.3d at 598). *Third*, the Health Care Providers' expert testimony would disrupt the proceedings insofar as it could require UVA, with the Court's approval, to engage one or more experts for a trial less than a month away. "The deadlines set forth in a court's case management order serve an important function in the flow of litigation[,]" *Benjamin v. Sparks*, 986 F.3d 332, 344 (4th Cir. 2021), and Plaintiff's failure to disclose her experts "unfairly inhibits [Defendant's] ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278 (4th Cir. 2005). *Fourth*, any importance in the Health Care Providers' expert testimony "highlights the seriousness of not [disclosing] it in a timely fashion." *Divens v. Maust Trucking, Inc.*, No. 4:19CV00001, 2020 WL 6060888, at *4 (W.D. Va. Oct. 14, 2020); *S. States Rack & Fixture, Inc.*, 318 F.3d at 598-99. But here, the Health Care Providers' testimony is not relevant because it relates only to unavailable emotional distress damages, including speculative

and attenuated proxy emotional distress damages without a causal nexus to Plaintiff's claims. Indeed, Plaintiff intends to call her OBGYN doctors to testify about an abortion that occurred more than three years after she graduated from UVA and ended her relationship with John Roe. This testimony is not relevant to Plaintiff's claims. *Fifth*, there is no justification for Plaintiff's failure to disclose her Health Care Providers, as required by the Court's September 27, 2023 Scheduling Order. ECF No. 30.

Moreover, Plaintiff's Health Care Providers' testimony is not relevant, and even if it were relevant, its probative value would be substantially outweighed by the dangers of unfair prejudice and misleading the jury. The Health Care Providers' treatment is irrelevant to any issue of whether UVA was deliberately indifferent to actual notice or knowledge of John Roe's sexual harassment of her. Plaintiff's treatment is also irrelevant, as emotional distress damages and proxy emotional distress damages are barred under *Cummings*. Def.'s Memo. in Support of Mot. for Summary Judgment, ECF No. 67 at 39-43. Without expert testimony on causation, the Health Care Providers' expected testimony and corresponding medical records regarding when they treated Plaintiff, the subject and nature of that treatment, and any diagnoses they made of Plaintiff, is irrelevant because it will have no tendency to make it "more or less probable" that her claimed emotional distress damages, which are unrecoverable under Title IX, were caused by UVA. Fed. R. Evid. 401. Therefore, the Health Care Providers' testimony and evidence related to this treatment, namely the medical records and bills, should be excluded as irrelevant pursuant to Rule 402. However, even if relevant, any probative value of Plaintiff's treatment would be substantially outweighed by the dangers of unfair prejudice and misleading the jury and should be excluded under Rule 403. Indeed, if the Health Care Providers testify to Plaintiff's treatment since the J-

Term trip, including four years post-graduation from UVA, jurors would assume a connection between the treatment and UVA's Title IX response even with no expert testimony.

Accordingly, the Court should preclude the Health Care Providers from testifying at trial, including expert testimony, to include causation testimony, and "non-expert" testimony, and exclude any records of their treatment of Plaintiff.

**B.      MIL #2: Information About John Roe Appearing on UVA's Website**

Plaintiff should be precluded from presenting testimony, evidence, and argument that John Roe appeared on UVA's website for a period of time after he resigned two-days after receiving the Review Panel's recommendation that he be terminated. The record shows that John Roe was sanctioned by being ineligible for emeritus status or to work or even volunteer at UVA ever again.

*First*, Plaintiff's testimony regarding what appeared on UVA's website on certain dates is inadmissible hearsay. Fed. R. Evid. 801-802. *Second*, the record contains no evidence regarding why John Roe was on the website after his resignation or why it was later removed. Plaintiff cannot offer her speculation to the jury. *Third*, this testimony and argument is not relevant to her claims or any recoverable damages. If allowed, UVA will be unfairly prejudiced, as Plaintiff will testify that UVA did not severely sanction John Roe when the evidence in the case proves the opposite.

**C.      MIL #3: Damages Not Properly Disclosed under Fed. R. Civ. P. 26(a)(1)(A)(iii)**

This Court should preclude Plaintiff from presenting testimony, evidence, and argument about any financial damages because her disclosures, which she provided on April 24, 2024, failed to comply with Rule 26(a)(1)(A)(iii). Pl.'s Initial Disclosures, ECF No. 67-39 at 4. UVA incorporates the arguments on this issue set out in its Motion for Summary Judgment and supporting Memorandums. ECF Nos. 66, 67, 96.

"A party that fails to provide [Rule 26] disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case." *Saudi*, 427 F.3d at 278. Rule 26(a)(1)(iii) requires that a party must provide to the other parties "a computation of each category of damages claimed by the disclosing party," and must also "make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii); *Jaguar Land Rover Ltd. v. Bentley Motors Ltd.*, No. 2:18-CV-320, 2020 WL 6817060, at *4 (E.D. Va. Nov. 3, 2020) ("a party's Rule 26(a)(1)(A)(iii) disclosure must state the types of damages that the party seeks, must contain a specific computation of each category, and must include documents to support the computations").

Here, Plaintiff never provided any computation of her damages, and she never supplemented this disclosure with any computations. Plaintiff did not provide computations of damages through her expert, who only opines as to lost earning capacity for a career never held, nor did she provide any computations in discovery, even though UVA requested it. Instead, Plaintiff referred UVA to her expert's report and her medical bills,[1] but neither satisfy her obligations under Rule 26. ECF No. 96-6 at 9. "[W]here a party only discloses a lump sum or merely refers to documents from which the opposing party can presume damages, **the disclosing party has not met its obligation**." *Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, No. 19-CV-505, 2020 WL 4574493, at *4 (E.D. Va. Aug. 7, 2020) (emphasis added); *Silicon*

---

[1] Even now, in her Rule 26(a)(3) Pretrial Disclosures, Plaintiff lists her pharmacy copay report that covers a six-year period—January 2018 through August 2024. ECF No. 96-8; ECF No. 106 at 4. This report includes copays prior to Plaintiff's enrollment at UVA, copays over four years after she graduated from UVA, and copays for eyedrops.

*Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2012 WL 1596722, at *5 (E.D.N.C. May 7, 2012) (interrogatory answers that do not contain specific computations of damages supported by documentary evidence do not fulfill a party's Rule 26(a)(1)(A)(iii) obligations). Plaintiff's failure to supplement her Rule 26 disclosures was not harmless and is not subject to remedy now, less than 30 days before trial. The Court should preclude Plaintiff from presenting any evidence of, or eliciting any testimony, of any financial damages for failure to comply with Rule 26(a)(1)(A)(iii). Fed. R. Civ. P. 37(c).

**D.    MIL #4: Plaintiff's Treatment and Expenses for Emotional Distress Damages**

Plaintiff should be precluded from presenting evidence, testimony, and argument about emotional distress treatment and expenses for the same, including proxy emotional distress damages. For the reasons stated in its Motion for Summary Judgment and supporting Memorandums and in its Motion to Exclude Plaintiff's Expert and supporting Memorandums (ECF Nos. 66-69, 96, 103), these damages are unavailable. *Cummings v. Premier Rehab Keller*, P.L.L.C., 596 U.S. 212, 220-21 (2022); *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-cv-00614, 2023 U.S. Dist. LEXIS 13886, at *6, 8-10, 16-17 (E.D. Va. Jan 25, 2023); *B.R. v. F.C.S.B*, No. 1:19-cv-917, 2024 U.S. Dist. LEXIS 57019, at *10 (E.D. Va. Feb. 26, 2024).

Here all of Plaintiff's damages are emotional distress damages or lost earning capacity damages, which are unavailable. Plaintiff identifies her damages as: pain and suffering, eating disorder, mental and emotional distress, i.e. anxiety, mental anguish, humiliation, and embarrassment, damage to her good name, and loss of ordinary pleasures of everyday life. Am. Compl., ECF No. 21 at ¶ 286. In discovery, Plaintiff explained that her damages are generalized anxiety disorder and major depressive disorder, an eating disorder, PTSD, engagement in risky sexual behavior resulting in an STD that she "believe[s] left [her] with Pelvic Inflammatory

9

Disease" after sexual intercourse with a stranger in France in summer of 2019, and an October 2023 abortion because she lacks a stable career and employment. ECF No. 67-40 at 4-7; ECF No. 67-41 at 4; ECF No 67-42 at 4-5. She also generically claimed damages for "details of the harms caused to Plaintiff are included in [her] medical records." ECF No. 96-6 at 7. In her Rule 26(a)(1) disclosures she identified reimbursement for unidentified out-of-pocket expenses and expenses for "medical, psychological, and educational needs, and services." ECF No. 67-39. Plaintiff also was treated at UVA's Medical Center for a complaint of suicidal ideation after breaking off her relationship with John Roe in February 2020 *before she filed a Title IX complaint* with UVA. As evident, all of the damages Plaintiff seeks are unavailable under Title IX. Plaintiff should be precluded from introducing irrelevant evidence, testimony, and argument on the same, which would only confuse the jury and unduly prejudice UVA.

**E.    MIL #5: Plaintiff's Medical/Mental Health Diagnoses**

Plaintiff should be precluded from offering testimony, evidence, or argument through herself or any other lay witness regarding diagnoses of her claimed medical or mental health conditions. A plaintiff's (or other lay witness') account of what she was told by a medical provider is inadmissible hearsay to prove the existence of such a condition. *See, e.g., McCoy v. Robinson,* No. 3:08CV555, 2011 WL 5975277, at *2 (E.D. Va. Nov. 28, 2011) (holding that Plaintiff's affidavit restating what a doctor and nurse told her was inadmissible hearsay); *Wilson v. Bd. of Educ. of Prince George's Cnty.*, No. 12-CV-02092-AW, 2013 WL 12246628, at *2 (D. Md. Oct. 30, 2013) (doctor's notes and testimony about their contents excluded as inadmissible hearsay). Neither Plaintiff nor her lay witnesses are qualified to render medical diagnoses or testify about causation. Fed. R. Evid. 701. Indeed, expert testimony is required to establish causation where the connection between an event and an injury is not obvious or its etiology is complex. *See, e.g.,*

10

*Taylor v. Shreeji Swami, Inc.*, 820 Fed. Appx. 174, 176 (4th Cir. 2020) (expert testimony necessary

to establish causation for exacerbation of claustrophobia, PTSD, depression, anxiety, and GERD);

*Moody v. Me. C. R.* Co., 823 F.2d 693, 696 (1st Cir. 1987) (expert testimony needed for emotional

trauma). Here, Plaintiff had mental health diagnoses and received mental health treatment pre-and-

post enrollment at UVA, and her claimed injuries do not present a nexus between event and injury

that would be obvious to the layman. To be sure, aside from the absolute speculation of it all,

Plaintiff is not qualified to testify that her emotional distress damages caused her to engage in risky

sexual behavior, which caused her to contract a STD after sexual intercourse with a stranger in a

foreign country, which *she believes* caused her to develop Pelvic Inflammatory Disease, and these

alleged damages are the fault of UVA under Title IX. Thus, to the extent there is a recoverable

medical condition (and Plaintiff has never identified any such injury thus far), Plaintiff and her lay

witnesses should be limited to testifying only about any symptoms experienced or exhibited, and

precluded from relaying or rendering any medical diagnoses or offering any opinions on causation.

**F.     MIL #6: Law School Admission and Why Plaintiff Has Not Gone to Law School**

In this same vein, Plaintiff and/or Plaintiff's lay witnesses cannot testify or present

evidence that she is qualified to be an attorney or even a law student. Plaintiff should also be

precluded from testifying she lost her dream of becoming an attorney because of UVA. Under the

Rules of Evidence, Plaintiff cannot testify that she possesses the qualifications necessary to

become an admitted law student, and, subsequently, a licensed attorney, because such an opinion

would not be based on her own perceptions and would require specialized knowledge about law

school and lawyer admission standards. Fed. R. Evid. 701. In addition, any testimony that Plaintiff

would offer about her lost aspirations is based solely on speculation, where the evidence shows

she has never taken the LSAT/GRE, never applied to law school, never been accepted to any law

school, and never passed any bar exam. This testimony and evidence are not relevant to any issue in this case because Plaintiff cannot establish an identifiable lost professional opportunity, which is required in the Fourth Circuit to recover lost earning capacity damages. *Rice v. Cmty. Health Ass'n*, 203 F.3d 283, 288-89 (4th Cir. 2000). To be sure, if allowed, UVA will be unduly prejudiced.

## G.    **MIL #7: Dismissed Claims**

The Court should preclude Plaintiff from presenting any argument, testimony, or evidence about her dismissed claims, to include her February 2020 deliberate indifference claim (ECF No. 42) and due process, equal protection, and First Amendment claims against individually named defendants. ECF Nos. 37, 38. Pursuant to her Rule 26(a)(3) disclosures (ECF No. 106), she intends to introduce by deposition transcript testimony solely related to the dismissed February 2020 deliberate indifference claim through Asher Biemann.[2] Testimony and evidence about dismissed claims is not relevant to the claims remaining in this case and would be unduly prejudicial to UVA. *Maine v. Becerra*, No. 23-1521, 2024 U.S. App. LEXIS 21643 (4th Cir. Aug. 27, 2024) (unpublished) (affirming the granting of a motion *in limine* to preclude plaintiff from introducing evidence of dismissed claims at trial because it would have been irrelevant); *cf. Ferebee v. Gilley*, No. 7:19-cv-00629, 2022 U.S. Dist. LEXIS 153117, at *4 (W.D. Va. Aug. 25, 2022) (ruling defendants' discovery responses relating to dismissed claim not relevant to remaining claim). Likewise, if any of Plaintiff's claims survive UVA's Motion for Summary Judgment, which they should not as a matter of law, Plaintiff must also be excluded from presenting testimony, evidence, and argument on any future dismissed claims.

---

[2] Plaintiff designates Asher Biemann's deposition testimony at 69:7-15, 71:12-21, 72:9-21, 73:3-20, 74:2-21, 75:4-21, 78:8-14, and 80-81. ECF No. 106 at 2-3. This testimony only relates to the dismissed February 2020 claim and thus is irrelevant. Biemann Tr., ECF No. 88-13.

**H.**    <u>**MIL #8: John Roe's Sexual Assaults**</u>

Plaintiff should be precluded from testifying about the sexual assaults. UVA's Title IX investigation into Plaintiff's complaint involved 11 instances of alleged nonconsensual sexual contact occurring over a 13-month period and mostly while Plaintiff and John Roe were engaged in a sexual relationship. UVA investigated each of these instances and found John Roe responsible for five instances of sexual assault in violation of UVA's Title IX Policy, including three incidents during the J-Term. The Title IX Investigators recommended finding that the evidence was insufficient as to the other six allegations. Plaintiff never appealed the recommended findings on these six nor claimed within this lawsuit that those recommended findings violated Title IX.

Plaintiff brings deliberate indifference claims. Thus, to prevail she must prove that after UVA received actual knowledge in December 2018/January 2019[3] and/or March 2020 that UVA caused her to undergo further harassment or made her more vulnerable to further harassment. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644-45 (1999). Testimony about Plaintiff's sexual encounters with John Roe are not relevant to Plaintiff's claims against UVA, which necessarily pertain to UVA's response. To be sure, John Roe is not a named defendant, and UVA agreed with Jane Doe that John Roe violated its Title IX Policy. UVA found John Roe responsible and severely sanctioned him. Presenting testimony and argument about specific sexual encounters would certainly suggest to the jury that UVA should be found liable simply because the encounters happened in the first place. This is not the law. UVA can *only* be held liable under Title IX for responding to known harassment in a manner that was clearly unreasonable, which the evidence refutes here as a matter of law. *Davis*, 526 U.S. at 648. Moreover, allowing testimony about these

---

[3] This claim is barred by the statute of limitations as a matter of law.

sexual encounters is highly likely to inflame the passions of the jurors, creating the danger of unfair prejudice to UVA.

I.    **MIL #9: UVA's Title IX Policies and Federal Regulations Not Applicable to Plaintiff's Title IX Complaint and UVA's Actions Under Not Applicable Policies in Other Title IX Matters that Do Not Involve the Plaintiff**

The Court should preclude Plaintiff from offering testimony, evidence, and argument about UVA's Title IX policies and procedures that were not applied in the investigation and resolution of Plaintiff's Title IX complaint. UVA investigated and resolved Plaintiff's Title IX complaint pursuant to its Policy on Sexual and Gender-Based Harassment and other Forms of Interpersonal Violence ("Title IX Policy") in effect from July 1, 2015 to August 14, 2020.[4] Accordingly, Plaintiff should be precluded from introducing and offering testimony and evidence about any UVA policy not applied to her complaint, as such testimony, evidence, and argument is not relevant here.

Likewise, Plaintiff should be precluded from offering evidence, testimony, and argument about federal regulations and guidance from the Department of Education not applicable to her Title IX complaint and response thereto, as this is also not relevant to her claims. After the March 31, 2020 Notice of Investigation in Plaintiff's case, the Department of Education amended the Title IX regulations in May 2020 and April 2024. *See* 34 C.F.R. §§ 106.45-106.46. The May 2020 amendments, which took effect on August 14, 2020, *id.*, were not retroactive. *Questions and*

---

[4] On August 14, 2020, UVA amended its Title IX Policy and changed its name to the "Sexual Misconduct Policy," to comply with new Title IX regulatory requirements mandated by the Department of Education. At the same time, UVA issued revised procedures for investigating and resolving reports under the Sexual Misconduct Policy. Because the conduct at issue in Plaintiff's Title IX complaint was alleged to have occurred before August 14, 2020 and the Notice of Investigation was issued before August 14, 2020, UVA's Title IX Policy was applied throughout the investigation and the resolution procedures for matters prior to August 14, 2020 were followed. ECF No. 67-31 at 1 (UVA004538).

*Answers on the Title IX Regulations on Sexual Harassment (July 2021) (Updated June 28, 2022)*,

https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf at p. 10 (last visited Nov.

12, 2024). UVA notified Plaintiff that the amended Title IX regulations did not apply retroactively

and thus her Title IX complaint would be resolved through the procedures in place at the time the

March 31, 2020 Notice of Investigation was issued. ECF No. 67-4 at 1 (UVA002446).

Too, for the same reasons, Plaintiff should be precluded from presenting testimony,

evidence, or argument about actions UVA took in other Title IX matters not involving the Plaintiff,

including actions under other UVA policies and procedures and federal regulations not applicable

to Plaintiff's Title IX complaint. For instance, Plaintiff should be precluded from introducing

evidence of UVA's issuance of no-contact directives in other Title IX matters under different

policies adopted pursuant to federal regulations not applicable to Plaintiff's complaint. Similarly,

Plaintiff should be precluded from offering evidence, testimony, and argument about any remedial

measures that UVA provided to other complainants during later time periods and under not-

applicable Title IX policies because it would not be relevant to Plaintiff's claims. Plaintiff intends

to offer testimony by a former UVA student who was a complainant in a Title IX proceeding in

2021 and 2022. Thus, there, the Title IX Policy was not applied. Even if testimony about a Title

IX matter that occurred after Plaintiff's and under a different policy were relevant, and it is not, it

should be excluded because it will mislead the jury, waste time by creating a side trial about the

reasonableness of UVA's actions in an entirely different case, and be unfairly prejudicial to UVA.

Fed. R. Evid. 403.

**J.    MIL #10: UVA's Training of Employees on Title IX Policy**

The Court should preclude Plaintiff from presenting evidence, testimony, and argument

that UVA's training of its employees on its Title IX Policy was/is insufficient and improper. This

is not relevant to Plaintiff's deliberate indifference claims about UVA's response. Plaintiff is not

bringing a claim based on insufficient or improper training, nor does she have sufficient evidence

to do so. In discovery, Plaintiff only requested documentation of Title IX trainings provided to

certain UVA staff from January 1, 2018, to August 6, 2021. ECF No. 96-3. Moreover, Plaintiff

has not identified any expert to opine about the sufficiency of Title IX training for university

employees. Such testimony would undoubtedly require specialized knowledge. Plaintiff and her

lay witnesses cannot offer such opinions, and they should be prevented from speculating that UVA

improperly or insufficiently trained its employees on Title IX.

Moreover, any argument or testimony that UVA employees would have understood sooner

that John Roe was sexually harassing Plaintiff if they had been properly trained is irrelevant.

Objective, not subjective, actual notice or knowledge of acts constituting sexual harassment is

necessary to establish an institution's liability under the deliberate indifference standard. *Doe v.*

*Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 264 (4th Cir. 2021).

Argument and testimony about UVA's training of its employees on its Title IX policy

should be precluded as not relevant, inadmissible, and likely to unfairly prejudice UVA.

**K.     MIL #11: Any Romantic Relationships Between UVA Employees and Former
        Employees with Any Student Other than the Plaintiff**

The Court should preclude testimony, evidence, and argument about any romantic

relationships held by UVA employees and former UVA employees with students other than the

Plaintiff. This is not relevant to Plaintiff's claims and offers no probative value of a fact of

consequence in determining the action and should therefore be excluded under Rule 401.

Plaintiff does not allege that UVA was aware of any previous relationship between any

current or former UVA employee and another student. Plaintiff also does not allege, nor can she

prove, any connection between any such relationship and UVA's response to her Title IX

complaint. Even if any such relationship had any probative value for Plaintiff's Title IX claims (and it does not), it would be inflammatory and unduly prejudicial to UVA to allow Plaintiff to introduce evidence and argument about any relationships with employees and students, not the Plaintiff. Thus, it should be excluded under Rule 403. *See Nave v. Indep. Sch. Dist. No. 2 of Leflore Cnty.*, No. CIV-17-096, 2018 WL 6445476, at *1 (E.D. Okla. Dec. 10, 2018) (granting motion *in limine* to exclude evidence of teacher's sexual relationship with any student other than plaintiff in absence of any evidence that school district had knowledge of such relationships).

## L.    MIL #12: Plaintiff's Attorney for the Title IX Investigation

The Court should also preclude argument and testimony that Plaintiff's attorney-advisor in the Title IX investigation, Palma Pustilnik, was somehow in cahoots with UVA or failed to adequately advocate for Plaintiff. Plaintiff's Opposition to Defendant's Motion for Summary Judgment states that the list of potential advisors provided to Plaintiff contained only one name, Palma Pustilnik, but fails to mention that the list also included contact information for the Virginia State Bar Lawyer Referral Service and the Charlottesville Albemarle Bar Association, along with an express disclaimer that "the University does not endorse any advisor." ECF No. 88 at 4; ECF No. 88-2. Indeed, Plaintiff confirmed that it was her choice to retain Ms. Pustilnik and she "went with her" because she did not have to pay anything for her services. Pl.'s Dep. Tr. at 95:3-14.

To the extent that Plaintiff is dissatisfied with Ms. Pustilnik, it is irrelevant and improper to take that up here. Any claim or implication that UVA had a vested interest in Plaintiff retaining Ms. Pustilnik to receive favorable treatment is unfounded in the evidence and thus is inadmissible speculation, which would be unduly prejudicial to UVA and should be excluded under Rule 403.

**M.     MIL #13: UVA's Treatment of Faculty and Students in Title IX Investigations**

Plaintiff should be precluded from presenting testimony, evidence, and argument that UVA treats faculty/staff Title IX respondents more favorably than student Title IX respondents or complainants. Claims of favoritism to faculty/staff in Title IX proceedings is not supported by any evidence in the record and is based solely on speculation. There is also no evidence in the record that UVA sabotaged Plaintiff's Title IX complaint or caused the process to take longer than it required because John Roe was a faculty member. This testimony is inadmissible, misleading, and unfairly prejudices UVA. Fed. R. Evid. 401, 403.

**N.     MIL #14: UVA's Liability Under Title IX for its Response Before Plaintiff Filed Her Title IX Complaint on March 15, 2020**

Plaintiff's December 2018/January 2019 deliberate indifference claim based on Professor Biemann's alleged failure to report is untimely and thus barred by the statute of limitations. UVA hereby incorporates its arguments on the untimeliness of this claim from its Motion for Summary Judgment and supporting Memorandum. ECF Nos. 66, 67, and 96. Accordingly, the Court should preclude Plaintiff from introducing evidence, testimony, or argument that Title IX liability attaches based on conduct of any UVA employee/official that occurred before she provided UVA with actual notice of John Roe's non-consensual sexual conduct on March 15, 2020.

**O.     MIL #15: John Roe's Contact with UVA Employees After the Title IX Proceedings Concluded**

The Court should preclude argument, testimony, and evidence about any contact that John Roe had with UVA employees after completion of the Title IX investigation and proceedings on August 6, 2021. Plaintiff intends to offer evidence regarding an off-Grounds dinner that occurred after John Roe resigned from UVA on July 9, 2021 and after the Title IX investigation concluded on August 6, 2021. Testimony and evidence about this dinner, or any similar gathering, that

occurred after the relevant period of Plaintiff's claims is not relevant to her claims of deliberate indifference in this case and offers no probative value of a fact of consequence in determining the action and should therefore be excluded under Rule 401. It is undisputed that John Roe was banned from any employment or volunteer role at UVA and that he has not worked anywhere since his resignation.

Even if Roe's post-Title IX investigation dinner with former colleagues had any probative value for Plaintiff's Title IX claim (and it does not), it would be unduly prejudicial to the defense, mislead the jury, and be a waste of time to allow Plaintiff to introduce evidence of it. The off-Grounds dinner could improperly suggest UVA has a continued connection with John Roe. Thus, it should be excluded under Rule 403.

P.     **MIL #16: Letters Submitted to Provost Magill**

Plaintiff should be precluded from presenting testimony, evidence, and argument regarding letters submitted to UVA's executive vice president and provost, M. Elizabeth Magill ("Provost"), in July 2021 regarding John Roe. In July and August 2021, the Provost, in fulfilling her responsibility to determine an appropriate sanction, reviewed the Review Panel's determination and sanction recommendation along with the Final Report and its exhibits. Magill Decl., ECF No. 67-32. The Provost did not read, nor did she consider, correspondence sent to her by John Roe's advisor at any time, before or after, reaching her decision. *Id.* at ¶ 18-19. Any claim that the Provost inappropriately considered letters submitted to her by John Roe's attorney, including a letter from Jeffrey Grossman, is not supported by any evidence in the record and is based solely on speculation. There is also no evidence in the record that the Provost delayed her review of the Review Panel's sanctioning recommendation to benefit John Roe in any way. Accordingly, this

testimony and evidence should be excluded because it is inadmissible and if admitted would

unfairly prejudice UVA and mislead the jury. Fed. R. Evid. 401, 403.

**Q.     MIL #17: Plaintiff's Bulk-Designated Medical Records**

Plaintiff should be precluded from offering in bulk thousands of pages of her medical

records at the trial of this matter. Pursuant to her Rule 26(a)(3) disclosures, Plaintiff designated

4,050 pages of her medical records as exhibits she may offer if the need arises. ECF No. 106 at 5.

These records span from January 2018 to September 2024 and consist of Plaintiff's health care

records from her health insurer in their entirety for this period. As discussed in Motion *in Limine*

#1, Plaintiff's health care treatment for emotional distress and its proxies is not relevant or

admissible regarding her Title IX deliberate indifference claims. Plaintiff's other treatment,

including treatment before her enrollment at UVA and treatment received over four years after her

graduation, for a wide range of medical issues over six years is irrelevant. Even if the 4,050 pages

of medical records were relevant, any probative value is substantially outweighed by the time that

will inevitably be wasted by this volume of records and the risk of confusion to the jury. Jurors

may improperly conclude that the volume of the records indicates a significant injury caused by

UVA. Accordingly, these records should be excluded pursuant to Rules 401 and 403.

**R.     MIL #18: Improperly Disclosed Witnesses**

The Court should preclude Plaintiff from presenting evidence and testimony from

witnesses who were not disclosed, or who were not properly disclosed under Rule 26(a)(1)(A)(i).

Under Rule 26(a)(1)(A)(i), a party must provide "the name and, if known, the address and

telephone number of each individual likely to have discoverable information—along with the

subjects of that information—that the disclosing party may use to support its claims or defenses,

unless the use would be solely for impeachment." Rule 37(c)(1) provides that "[i]f a party fails to

provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The sanction of exclusion is "self-executing" and "automatic." Fed. R. Civ. P. 37(c), Advisory Comm. Note to 1993 Amendment, ¶¶ 9-10. The burden of establishing substantial justification or harmlessness lies with the non-disclosing party. *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017).

In this case, Plaintiff was required by Rule 26(a)(1) to disclose each individual likely to have discoverable information that she "may use to support [her] claims." Fed. R. Civ. P. 26(a)(1). She was also requested by UVA's Interrogatory No. 2 to identify all witnesses who may have information or knowledge of any of the facts about her alleged injuries and damages, and to provide the contact information for each such individual. ECF No. 67-42. In Interrogatory No. 4, UVA also asked Plaintiff to identify all persons who examined or treated her concerning the nature and extent of her claimed damages as claimed in ¶ 286 of her Amended Complaint, giving the dates of each examination, treatment, and/or consultation. *Id.*

Until filing her Rule 26(a)(3) pretrial disclosures on November 10, 2024 (ECF No. 106), Plaintiff had never identified Eleanore Gubitosa and Owen Gentry as witnesses under Rule 26. Plaintiff only identified Dr. Sznajder and Dr. Farahani as being "expected to have information related to Plaintiff's damages" at 8:16 p.m. on September 10, 2024, the final day of discovery (ECF No. 30). Ex. 1 – Pl.'s Supp. Initial Disclosures. Until that point, Plaintiff had never listed any of her health care providers by name in her Rule 26(a)(1) disclosures. ECF No. 67-39. While Plaintiff listed Gubitosa and Gentry as her therapists and Dr. Farahani as her OBGYN in discovery, with the same last-minute tactic, Plaintiff did not provide any contact information for them until

September 10, 2024. OBGYN physician Dr. Sznajder was never identified in discovery until September 10, 2024.

Instead, until the final day of discovery, Plaintiff referred UVA to approximately 2,900 pages of medical records for details of who had treated her.[5] To the extent Plaintiff believes that the four Health Care Providers are critical to her claims, she effectively hid that information in discovery in violation of Rule 26(a)(1). Now Plaintiff springs Gubitosa and Gentry as witnesses on UVA with less than a month before trial, despite previously listing only her OBGYN physicians as the health care providers likely to have discoverable information that Plaintiff may use to support her claims.

In addition, Plaintiff never identified Arya Royal until 8:16 p.m. on the final day of discovery in her supplemental Rule 26(a)(1) disclosures, Ex. 1, and she did not provide her contact information until November 11, 2024, two months after the close of discovery.

For the reasons stated in Motion *in Limine* #1, UVA will sustain surprise without any remedy if these undisclosed and improperly disclosed Health Care Providers are allowed to testify. The same argument applies to Arya Royal. Allowing testimony by these additional five witnesses for a 3-day trial will disrupt the trial. To the extent this testimony was important to the Plaintiff, she knew her duty to disclose, which she failed to do without any justification. The Court should preclude Plaintiff from calling these witnesses at trial for failure to comply with Rule 26.

## **CONCLUSION**

UVA respectfully requests that the Court grant each of its motions *in limine*.

---

[5] Defendant brought this discovery issue to the attention of the Magistrate Judge. *See* ECF No. 53.

Respectfully submitted,

**THE RECTOR AND VISITORS OF THE
UNIVERSITY OF VIRGINIA**

By Counsel:  */s/ Christopher P. Bernhardt*
Christopher P. Bernhardt* (VSB No. 80133)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone:(804) 371-0977
Facsimile: (804) 371-2087
Email: cbernhardt@oag.state.va.us
*Counsel of Record for Defendant*

Amy E. Hensley* (VSB No. 80470)
Associate University Counsel/Assistant Attorney
General
1827 University Avenue
Charlottesville, Virginia 22904
Telephone: (434) 924-3685
Email: aehensley@virginia.edu
*Counsel of Record for Defendant*

Jason S. Miyares
Attorney General of Virginia

Thomas J. Sanford
Deputy Attorney General

Jacqueline C. Hedblom
Senior Assistant Attorney General/ Trial Section Chief

## CERTIFICATE

I hereby certify that on November 12, 2024, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system.

*/s/ Christopher P. Bernhardt*
Christopher P. Bernhardt* (VSB No. 80133)
Assistant Attorney General